# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| New York Immigration Coalition, and J.V., individually and as next friend to her future child,<br><br>   *Plaintiffs*<br><br>     v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity;<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, Kristi Noem, Secretary of the U.S. Department of Homeland Security, in her official capacity;<br><br>U.S. DEPARTMENT OF STATE, Marco Rubio, Secretary of State, in his official capacity;<br><br>U.S. DEPARTMENT OF JUSTICE, Pamela Jo Bondi, Attorney General of the United States, in her official capacity;<br><br>THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, Stephanie Carlton, Acting Administrator of the Centers for Medicare and Medicaid Services, in her official capacity; | CIVIL ACTION NO: 25-cv-1309<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

> SOCIAL SECURITY
> ADMINISTRATION, Michelle King,
> Acting Commissioner for Social
> Security, in her official capacity.
>
> *Defendants*.

## <u>NATURE OF THE CASE</u>

1.      "Citizenship is man's basic right for it is nothing less than the right to have rights. Remove this priceless possession and there remains a stateless person. . ."[1] Organizational Plaintiff, New York Immigration Coalition, whose constituents include expectant parents with temporary immigration status or who are undocumented, and individual Plaintiff J.V., for herself and as next friend to her future child, an expectant parent with temporary immigration status, bring this action challenging President Trump's Executive Order purporting to end birthright citizenship because it strips away "priceless" citizenship rights from U.S.-born children and renders them "stateless person[s]."[2]

2.      Ratified in 1868 after the Civil War, the first sentence of the Fourteenth Amendment—the Citizenship Clause—declares "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. CONST. amend.

---

[1] *Perez v. Brownell*, 356 U.S. *44*, 66 (1958) (Warren, C. J., dissenting).
[2] *Id.*

2

XIV, § 1. Thirty years after ratification, upholding the plain text of the Citizenship Clause and affirming the ancient and fundamental rule of *jus soli*—citizenship by virtue of place of birth— the Supreme Court ruled that the Citizenship Clause guarantees citizenship to U.S.-born children irrespective of parental alienage, race, or immigration status. *See U.S. v. Wong Kim Ark*, 169 U.S. 649 (1898).

3.    Defying nearly 127-year-old settled law, on January 20, 2025, President Trump issued an Executive Order purporting to strip U.S.-born children of their citizenship if at the time of birth the child's "mother was unlawfully present in the United States" or her presence "was lawful but temporary" and the father of the child was not a U.S. citizen or lawful permanent resident.[3] The Executive Order ("birthright citizenship ban") directs federal agencies not to issue documents recognizing U.S. citizenship or accept documents issued by any state, local, or other governments recognizing U.S. citizenship of U.S.-born children whose parents have temporary immigration status or who are undocumented.

4.    The Fourteenth Amendment also guarantees equal protection.[4] But in clear defiance of well-established Equal Protection Clause jurisprudence, such as

---

[3] Exec. Order 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025).
[4] The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In 1954, the Supreme Court made explicit that the principles of equal protection also bind the federal government, through the Due Process Clause of the Fifth Amendment. U.S. CONST. amend. V; *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see also U.S. v. Paradise*, 480 U.S. 149, 166 n.16 (1987) (reiterating that the Fifth Amendment contains an "equal protection guarantee" that is "coextensive with that of the Fourteenth [Amendment]...").

*Oyama v. California*,[5] the birthright citizenship ban invidiously discriminates against future U.S.-born children because of their parental alienage—a burden that falls harshly and disproportionately on Latinos—like plaintiff J.V.—who are a majority of the immigrants with statuses targeted by the Executive Order.

5.      President Trump's contempt for birthright citizenship and immigrants is in plain view. He derided birthright citizenship as "ridiculous," and vowed to end it.[6] He tweeted that birthright citizenship "costs our country billions of dollars and is very unfair to our citizens [and] will be ended one way or the other."[7] Ten days after he signed the birthright citizenship ban, the President claimed—contrary to settled law—that birthright citizenship was "meant for the children of former[ly enslaved people] and not meant for the whole world to come and pile into the United States of America. Everybody coming in and totally unqualified people and with perhaps unqualified children. [Birthright citizenship] wasn't meant for that."[8] President Trump pledged to end birthright citizenship, and Executive Order 14160 delivers on that promise.

---

[5] 332 U.S. 633 (1948).

[6] Jonathan Swan & Stef W. Knight, *Exclusive: Trump Targeting Birthright Citizenship with Executive Order*, AXIOS (Oct. 30, 2018), https://www.axios.com/2018/10/30/trump-birthright-citizenship-executive-order.

[7] @realDonaldTrump, X [formerly known as TWITTER] (Oct. 31, 2018, 1:25 PM), https://x.com/realDonaldTrump/status/1057624553478897665.

[8] Bart Jansen, *President Trump Expects to End Birthright Citizenship with Support from Supreme Court*, USA TODAY (Jan. 30, 2025), https://www.usatoday.com/story/news/politics/2025/01/30/trump-supreme-court-will-uphold-ending-birthright-citizenship/78060886007/.

6.      Stripping birthright citizenship will have deleterious consequences. It will render stateless thousands of children born to immigrants residing in the United States who have temporary immigration status or are undocumented. It will force U.S.-born children into the shadows of society without the benefits and opportunities of citizenship. It will put them at risk of deportation because they are stateless. It will deprive U.S.-born children of their identity as Americans; deny them access to critical legal documents like U.S. passports and social security cards; and may deprive them of essential health care, nutrition, and early childhood education—benefits they need to nurture their health and development.

7.      Stripping birthright citizenship will adversely impact about 53 percent of undocumented Latinos, between the ages of 25 and 44, who are in their prime childbearing years and whose U.S.-born children will be stripped of the privileges and immunities of citizenship.

8.      Plaintiffs challenge the birthright citizenship ban as unconstitutional violations of the Citizenship and Equal Protection Clauses of the Fourteenth Amendment, and as a violation of the Immigration and Naturalization Act, 8 U.S.C. § 1401(a). Plaintiffs ask that the birthright citizenship ban be declared unconstitutional and in violation of federal statutory law.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 because this action seeks to redress the deprivation of a right or privilege of a citizen of the United States and to secure equitable and other relief under any Act of Congress providing for the protection of civil rights.

10.     Plaintiffs seek declaratory and injunctive relief, and any other appropriate relief, pursuant to 28 U.S.C. §§ 2201 and 2202; Federal Rules of Civil Procedure 57.

11.     Venue is proper under 28 U.S.C. § 1391(e)(1) because a substantial part of the events and omissions giving rise to the claim occurred and have impacts in this district and organizational Plaintiff has its principal place of business in this district.

## PARTIES

**Plaintiffs**

12.     Individual Plaintiff, J.V., is a 31-year-old Venezuelan national.[9] She has Temporary Protected Status ("TPS") through April 2, 2025. J.V. has a pending asylum petition. J.V. is five months pregnant. She has temporary housing in New York State.

---

[9] J.V. has moved this Court to appear in this matter under a pseudonym because she fears retaliation.

13.     Organizational Plaintiff, New York Immigration Coalition ("NYIC"), is a 37-year-old tax-exempt nonprofit organization with a principal place of business in New York, New York. NYIC is a member-led coalition of immigrant and refugee organizations that strengthens and builds its members' power, organizes and educates immigrant communities and the public, and uses the collective voice of its constituents to advocate for opportunity and justice.

**Defendants**

14.     Defendant Donald J. Trump is the President of the United States of America. He is sued in his official capacity. As President, he signed and issued Executive Order 14160—birthright citizenship ban—which is challenged in this lawsuit.

15.     Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). She is sued in her official capacity. In that capacity, she administers and enforces Defendant Department of Homeland Security's activities and responsibilities, including the responsibility of ensuring DHS complies with the Executive Order. DHS houses the immigration enforcement agencies U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services ("USCIS").

16.     Defendant Marco Rubio is the Secretary of the U.S. Department of State. He is sued in his official capacity. In that capacity, he administers and enforces Defendant Department of State's activities and responsibilities, including the responsibility of ensuring the Department of State complies with the Executive Order. The U.S. Department of State is an executive department of the United States responsible for, among other duties, granting and issuing passports to American citizens.

17.     Defendant Pamela Jo Bondi is the Attorney General of the United States. She is sued in her official capacity. In that capacity, she administers and enforces Defendant Department of Justice's activities and responsibilities, including the responsibility of ensuring the Department of Justice complies with the Executive Order.

18.     Defendant Stephanie Carlton is the Acting Administrator of the Centers for Medicare and Medicaid Services ("CMS"). She is sued in her official capacity. In that capacity, she administers and enforces Defendant Centers for Medicare and Medicaid Services' activities and responsibilities, including the responsibility of ensuring CMS complies with the Executive Order. CMS is a federal agency of the United States responsible for providing healthcare coverage to U.S. citizens and some eligible non-U.S. citizens.

19.     Defendant Michelle King is the Acting Commissioner for Social Security. She is sued in her official capacity. In that capacity, she administers and enforces Defendant Social Security Administration's ("SSA") activities and responsibilities, including the responsibility of ensuring SSA complies with the Executive Order. SSA is an independent agency in the executive branch of the United States. Among other duties, SSA is responsible for administering benefits, such as retirement and disability benefits, managing Supplemental Security Income, and issuing Social Security numbers and cards to U.S. citizens.

## LEGAL FRAMEWORK

### The Fourteenth Amendment's Citizenship and Equal Protection Clauses Proscribe the Discriminatory Treatment Meted out by the Birthright Citizenship Ban

#### A) The Citizenship Clause

20.     By the mid-eighteenth century, citizenship by virtue of place of birth irrespective of parental nationality—known as *jus soli*—was firmly established in U.S. law.[10] After its ratification in 1868, the Fourteenth Amendment guaranteed formerly enslaved people and their descendants U.S. citizenship. U.S. CONST. amend. XIV, § 1.

---

[10] *See* Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 GEO. L.J. 405, 413-14 (2020); *see also*, *Lynch v. Clarke*, 1 Sand.Ch. 583, 663 (N.Y. Ch. 1844) (deciding that children born in the U.S. to Irish citizens visiting the U.S. were U.S. citizens).

21.    The first sentence of the Fourteenth Amendment—the Citizenship

Clause—pronounces

> [a]ll persons born or naturalized in the United States, and subject to the
> jurisdiction thereof are citizens of the United States and of the State wherein
> they reside. *Id.*[11]

22.    The plain text of the Citizenship Clause guarantees U.S. citizenship to

children born on U.S soil.[12] The Clause eviscerated grant of citizenship based on

race, caste, hereditary, or ancestry. *United States v. Wong Kim Ark* erased any

doubt confirming that a U.S.-born child of Chinese immigrants was a U.S.

citizen.[13] It is thus well-settled that U.S.-born children, irrespective of their

parents' alienage, nationality, or immigration status, are U.S. citizens.[14]

## B) <u>The Equal Protection Clause</u>

23.    The Equal Protection Clause commands that "[n]o state shall deny to

any person within its jurisdiction the equal protection of the laws." U.S. CONST.

amend. XIV, § 1. The Supreme Court has construed the Clause to forbid

discrimination against a U.S.-born citizen because of parental alienage. *See Oyama*

*v. California*, 332 U.S. 633, 646–47 (1948); *see also Lewis v. Thompson*, 252 F.3d.

---

[11] Like the Citizenship Clause, by statute, "a person born in the United States, and subject to the jurisdiction thereof" is a U.S. citizen. 8 U.S.C § 1401(a).
[12] The concept of *jus soli* does not apply to the children of diplomats and foreign military personnel. *See, e.g.* Ramsey, *supra* note 10 at 416.
[13] 169 U.S. 649, 700-01 (1898).
[14] *See, e.g. Acosta v. Gaffney*, 558 F.2d 1153, 1158 (3d Cir. 1977) (recognizing U.S. citizenship of a 22-month-old infant whose Colombian parents were "deportable aliens").

567, 591 (2d Cir. 2001) (invalidating a statute denying healthcare benefit to future U.S.-born children because of the undocumented status of their mothers).

24.    Under the Equal Protection Clause, a classification based on alienage or national origin—both suspect classifications—is subject to strict scrutiny and must be narrowly tailored to serve a compelling governmental interest. *See Nyquist v. Mauclet*, 432 U.S. 1, 7 (1977); *Graham v. Richardson*, 403 U.S. 365, 372 (1971). Similarly, a facially neutral policy that has an adverse effect on the basis of alienage or national origin and was motivated by discriminatory animus is also subject to strict scrutiny. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

25.    The Equal Protection Clause is construed broadly to afford protection to all persons, including immigrants with temporary status or who are undocumented and who suffer unconstitutional differential treatment because of alienage or national origin.[15] The birthright citizenship ban subjects U.S.-born children and their immigrant parents with temporary or undocumented status to discriminatory treatment on account of alienage and national origin. Additionally, the ban was motivated by discriminatory animus and disparately impacts immigrants from Latin American countries.

---

[15] *See, e.g. Deide v. Day*, 676 F.Supp.3d 196, 222, 225 (S.D.N.Y. 2023) (subjecting policy denying housing to migrant and asylum-seekers to strict scrutiny and declaring the policy unconstitutional).

## FACTUAL ALLEGATIONS

### A)    The Birthright Citizenship Ban Discriminates Against Plaintiffs on Account of Alienage and National Origin

26.    Individual Plaintiff, J.V., is a 31-year-old Venezuelan national who entered the United States in 2023. She has Temporary Protected Status ("TPS") through April 2, 2025. The Trump Administration has revoked TPS,[16] ending the program for more than 300,000 Venezuelans.[17] J.V. has a pending asylum petition. J.V.'s partner, who is the father of her child, is also a Venezuelan whose TPS will soon expire.

27.    J.V. is five months pregnant. She believes the birthright citizenship ban is cruel and unjust. The ban denies her future U.S.-born child U.S. citizenship. Even assuming J.V. could obtain identity documents for the child from her home country, there is no longer any Venezuelan consulate in the United States and the United States has severed diplomatic relations with Venezuela.[18] The precarious citizenship status of her unborn child puts J.V. under enormous stress. The

---

[16] *DHS Terminates the 2023 Designation of Venezuela for Temporary Protected Status*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Feb. 3, 2025), https://www.uscis.gov/newsroom/alerts/dhs-terminates-the-2023-designation-of-venezuela-for-temporary-protected-status#.

[17] Hamed Aleaziz, Maggie Haberman, *Trump Administration Moves to End Protections for Venezuelans in the U.S.*, N.Y. TIMES (Feb. 2, 2025), https://www.nytimes.com/2025/02/02/us/politics/trump-venezuela-temporary-protected-status.html [on file with LatinoJustice PRLDEF].

[18] Jennifer Hansler, *Venezuelan Embassy Run by Opposition in US Closes after Guaido Ouster*, CNN (Jan. 6, 2023), https://www.cnn.com/2023/01/06/politics/venezuelan-opposition-embassy-us-closes/index.html.

birthright citizenship ban will render J.V.'s child a stateless nomad without a home country.

28.    The birthright citizenship ban also will render J.V.'s future child ineligible for Medicaid, denying the child critical postnatal care. J.V. is currently receiving prenatal care through Medicaid. J.V.'s future child will be denied a U.S. passport, a social security number, an unrestricted social security card, and access to essential health care and housing—all of which she would receive, given her family's economic circumstances, but for the birthright citizenship ban. Defendants' actions and failure to act cause harm to J.V. and her future U.S.-born child. Defendants' birthright citizenship ban discriminates against J.V. and her future U.S.-born child on account of alienage and national origin.

29.    Organizational Plaintiff New York Immigration Coalition ("NYIC") is a tax-exempt non-profit organization headquartered in New York City. It has offices in Albany, Buffalo, Hempstead, Newburg, Rochester, and Syracuse. NYIC is a statewide member-led coalition of over 170 immigrant and refugee-rights groups throughout New York. Its mission is to strengthen and build its members' power, organize and educate immigrant communities and the public, and use the collective voice of its constituents to advocate for opportunity and justice.

30.    NYIC's membership includes immigrant-led and immigrant-serving groups, and it directly serves immigrants from diverse communities. Among the

services it provides to immigrants are low-cost immigration legal services and assistance with accessing vital health services. In 2024, NYIC assisted over 400 immigrants with petitions for asylum, Temporary Protected Status, Employment Authorization Documents, and Motions to Reopen immigration cases.

31.    Among those NYIC serves are immigrant expectant parents who have immigration statutes targeted by the birthright citizenship ban. Two examples are illustrative. In November 2024, NYIC assisted an expectant mother who is due in June 2025 and has a temporary immigration status. The expectant mother came to the United States in search of a better life. She is deeply concerned that her future child will be denied the benefits of American citizenship. NYIC also served a couple who fled violence in their home country with their children. Both parents are TPS holders who are expecting their first U.S.-born child in August 2025. They believe it is wrong to deny their unborn child the benefits of American citizenship.

32.    Besides the expectant parents that NYIC has assisted, its immigrant-led member groups also are aware of at least six immigrants who are pregnant and hold immigration statuses targeted by the birthright citizenship ban. The immigrant families that NYIC serves as well as those served by its member organizations will be harmed by the birthright citizenship ban.

33.    In addition to the harm that the birthright citizenship ban will inflict on NYIC's constituents, NYIC itself will be injured. NYIC is diverting resources

14

away from its provision of legal assistance to immigrants seeking help with TPS, Employment Authorization Documents, Motion to Reopen immigration cases, and the services it provides to connect immigrants to mental health, employment, and other stability services to combat the impacts of the birthright citizenship ban.

34.    Given the palpable fear and anxiety the birthright citizenship ban has wreaked in the immigrant community, NYIC will have to divert resources away from its core mission to create and develop new training materials, FAQs (Frequently Asked Questions), and presentations that explain the far-reaching consequences of the ban. NYIC will reassign legal and administrative staff to meet the urgent needs that the ban has needlessly created. The new training materials will explain how immigrant parents should navigate the precarious status of their U.S.-born children who will now be stripped of U.S. citizenship.

35.    Defendants' actions and omissions harm NYIC itself and its constituents including asylees, applicants for asylum, TPS holders, recipients of student and work visas, and undocumented immigrants—some of whom are presently expectant parents or plan to have children in the future. Defendants' birthright citizenship ban discriminates against NYIC and its constituents on account of alienage and national origin.

B)    **The Birthright Citizenship Ban Was Motivated By Discriminatory Animus**

36.    On January 20, 2025, President Trump's first day in office, he signed

Executive Order 14160—birthright citizenship ban—declaring

> the privilege of the United Staes citizenship does not automatically extend to
> persons born in the United States: (1) when that person's mother was
> unlawfully present in the United States and the father was not a United
> States citizen or lawful permanent resident at the time of the said person's
> birth, or (2) when that person's mother's presence in the United States at the
> time of said person's birth was lawful but temporary (such as, but not
> limited to, visiting the United States…or visiting on a student, work, or
> tourist visa), and the father was not a United States citizen or a lawful
> permanent resident at the time of said person's birth.[19]

37.    The birthright citizenship ban directs federal agencies not to "issue

documents recognizing United States citizenship or accept documents issued by

state, local, or other governments or authorities purporting to recognize United

States citizenship to persons" identified in section 1 of the Order. *Id.* at § 2. The

birthright citizenship ban becomes effective February 19, 2025. *Id.* at § 2(b).

38.    On December 8, 2024, six weeks before the President signed the

birthright citizenship ban, he inaccurately claimed "[w]e're the only country that

has [birthright citizenship]," and vowed "to end it."[20] The President said the

guarantee of birthright citizenship was "ridiculous."[21] He said there were "record

---

[19] 90 Fed. Reg. at 8449.
[20] Jane C. Timm, *Fact-Checking Trump's Interview with 'Meet the Press'* NBC NEWS (Dec. 8,
2024), https://www.nbcnews.com/politics/donald-trump/fact-check-trump-interview-meet-the-
press-rcna182995.
[21] Swan & Knight, *supra* note 6.

numbers of migrants crossing the border" and that birthright citizenship was a "magnet" pulling many migrants to do so.[22]

39.    The President claimed there was a "migrant crime" wave blaming "MS-13 and Venezuelan gangs [who are] the worst in the world."[23] He claimed they were "literally taking over apartment complexes and doing it with impunity."[24]

40.    Four months before the President's birthright citizenship ban, he claimed Haitian migrants were stealing and "eating people's dogs and cats."[25]

41.    And nine months before the ban, the President said immigrants were "poisoning the blood" of the nation.[26] He contended that migrants crossing the southern border are "criminals flooding in from prisons and mental institutions."[27] He referred to migrants as "animals" saying "[t]hey are not people in my opinion."[28]

---

[22] Ted Hesson, *Trump Vows to End Birthright Citizenship for Children of Immigrants in US Illegally*, REUTERS (May 30, 2023), https://www.reuters.com/world/us/trump-vows-end-birthright-citizenship-children-immigrants-us-illegally-2023-05-30/.

[23] Timm, *supra* note 20.

[24] *Id.*

[25] Julia Reinstein & Hanna Demissie, *Trump Pushes False Claims that Haitian Migrants Are Stealing and Eating Pets*, ABC NEWS (Sep. 10, 2024), https://abcnews.go.com/Politics/trump-pushes-false-claim-haitian-migrants-stealing-eating/story?id=113570407.

[26] Maggie Astor, *Trump Doubles Down on Migrants 'Poisoning' the Country*, N.Y. TIMES (Mar. 17, 2024), https://www.nytimes.com/2024/03/17/us/politics/trump-fox-interview-migrants.html [on file with LatinoJustice PRLDEF].

[27] *Id.*

[28] *Id.*

42.    Long before he took office, the President repeatedly criticized birthright citizenship, pledging to reinterpret the Citizenship Clause by ending birthright citizenship.[29] He delivered on his promise.[30] The President's contemporaneous statements evince discriminatory animus to immigrants on account of alienage and national origin.

### C)    The Birthright Citizenship Ban Disparately Impacts Latino Immigrants

43.    The United States is quintessentially a nation of immigrants. The first immigrant to arrive in modern day Manhattan in 1613 was Juan Rodriguez—an immigrant from the country now known as Dominican Republic. Some of the Framers of the Constitution were also immigrants. Even prior to the United States's founding, immigrants have been a staple of its cultural tapestry.

44.    Immigrants from Latin American and other countries have been and remain vital to America's economic development. For example, in 2019, in the four states with the highest shares of the immigrant population—California, New

---

[29] Ximena Bustillo, *Trump to Make Historic Move Toward Revoking Birthright Citizenship*, NPR (Jan. 20, 2025), https://www.npr.org/2025/01/20/g-s1-43765/trump-inauguration-birthright-citizenship.

[30] In 2016, as a candidate, the President consistently questioned President Obama's birthright citizenship. And in his bid for the Presidency in 2020, he questioned Vice President Harris's eligibility to run for the presidency because her parents had temporary immigration status at the time of her birth. *See, e.g.* Katie Rogers, *Trump Encourages Racist Conspiracy Theory About Kamala Harris*, N.Y. TIMES (Aug. 13, 2020), https://www.nytimes.com/2020/08/13/us/politics/trump-kamala-harris.html [on file with LatinoJustice PRLDEF].

York, Texas, and Florida—the combined spending power of immigrants was $673 billion.[31] Latinos comprise nearly 48 percent of the foreign-born labor force.[32]

45.    In 2022, relying on Individual Tax Identification Numbers, undocumented immigrants paid an estimated $59.4 billion in federal taxes, $25.7 billion in Social Security taxes, and 6.4 billion in Medicare taxes—and yet, they are ineligible to receive federal benefits.[33]

46.    At 72 percent, Latinos constitute the majority of undocumented immigrants living in the shadows while contributing to the federal coffers.[34] More than half of them have lived in the United States for fifteen years or longer.[35] Fifty-three percent are between the ages of 25 and 44—people of prime working and

---

[31] CONGRESSIONAL JOINT ECONOMIC COMMITTEE, IMMIGRANTS ARE VITAL TO THE U.S. ECONOMY 5 (2021), https://www.jec.senate.gov/public/_cache/files/6750b0f0-c851-4fee-9619-295582fd44e8/immigrants-are-vital-to-the-us-economy-final.pdf.

[32] Latino refers to individuals whose origins are from Latin America. *See* Hugo Lopez et al., *Who Is Hispanic?*, PEW RSCH. CTR. (Sept. 23, 2021), https://www.pewresearch.org/fact-tank/2021/09/23/who-is-hispanic/. Latinos can be any race. The term includes Afro-Latinos and Indigenous people who self-identify as Latino. For data on the Latino population, *see Hispanic Heritage Month: 2023*, U.S. CENSUS BUREAU (Aug. 17, 2023), https://www.census.gov/newsroom/facts-for-features/2023/hispanic-heritage-month.html.

[33] Kevin Appleby, *The Importance of Immigrant Labor to the U.S. Economy*, CTR. FOR MIGRATION STUDIES (Sept. 2, 2024), https://cmsny.org/importance-of-immigrant-labor-to-us-economy/.

[34] *See* Evin Millet & Jacquelyn Pavilon, *Demographic Profile of Undocumented Hispanic Immigrants in the U.S.*, CTR. FOR MIGRATION STUDIES (Oct. 2022), https://cmsny.org/wp-content/uploads/2022/04/Hispanic_undocumented.pdf. Undocumented immigrants from Asian countries—who constitute the second largest group after Latinos—as well as undocumented immigrants from Europe, Canada, Africa, and the Middle East will also be impacted by the birthright citizenship ban. *See, e.g.* Jeffrey Passel & Jens Manuel Krogstad, *What We Know About Unauthorized Immigrants Living in the U.S.*, PEW RSCH. CTR. (July 22, 2024), https://www.pewresearch.org/short-reads/2024/07/22/what-we-know-about-unauthorized-immigrants-living-in-the-us/#.

[35] *See* Millet & Pavilon, *supra* note 34.

childbearing age who would be adversely impacted by the birthright citizenship

ban.[36] The largest group of undocumented Latinos comes from Mexico, followed

by El Salvador, Guatemala, Honduras, Venezuela, Dominican Republic, Colombia,

Ecuador, Peru, and Nicaragua. Childbearing immigrants from these Latin

American countries will be disparately impacted by Defendants' birthright

citizenship ban.[37]

47.    Each year, about 250,000 children are born to undocumented

parents.[38] These U.S.-born children live in mixed-immigration status households

and are guaranteed the full benefits of American citizenship. They are entitled to a

U.S. passport, birth certificate, unrestricted social security card, health care,

nutrition, and housing (if they are indigent).[39]

48.    The birthright citizenship ban renders these U.S.-born children

stateless, and denies them American identity and the privileges and immunities of

U.S. citizenship. The ban excludes these U.S.-born children from critical health,

social, economic, and educational benefits, consigns them to living in the shadows

---

[36] *Id.*
[37] *Id.*
[38] *See* Jeffrey S. Passel, et al., *Number of U.S.-Born Babies with Unauthorized Immigrant Parents Has Fallen Since 2007*, PEW RSCH. CTR.(Nov. 1, 2018), https://www.pewresearch.org/short-reads/2018/11/01/the-number-of-u-s-born-babies-with-unauthorized-immigrant-parents-has-fallen-since-2007/.
[39] *See, e.g.* BRUCE LESLEY, FIRST FOCUS ON CHILDREN, *In Harm's Way: The Consequences of Denying Birthright Citizenship for America's Children and Our Future*(Nov. 15, 2024), https://firstfocus.org/wp-content/uploads/2024/11/Birthright-Citizenship-Issue-Brief.pdf.

and in the margins of society, and puts them at risk of deportation or months-long

detention because of their statelessness. Defendants' birthright citizenship ban

discriminates against these U.S.-born children on account of parental alienage,

national origin, and/or immigration status. The ban imposes separate and unequal

treatment.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Violation of the Citizenship Clause
### (All Defendants)

49.     All of the foregoing allegations set forth at ¶¶ 1-48 are repeated and

realleged as if fully set forth herein.

50.     The Citizenship Clause of the Fourteenth Amendment guarantees to

"all persons born … in the United States, and subject to the jurisdiction thereof"

U.S. citizenship. U.S. Const. Amend. XIV, § 1.

51.     The plain text of the Citizenship Clause and Supreme Court precedent

make clear that U.S.-born children are U.S. citizens irrespective of parental

alienage, national origin, and/or immigration status.

52.     By denying U.S. citizenship to the future U.S.-born children of the

individual Plaintiff and similarly situated constituents of organizational Plaintiff

("Plaintiffs") because of parental alienage, national origin, and/or immigration

status, Executive Order 14160—the birthright citizenship ban—violates the

Citizenship Clause.

## SECOND CAUSE OF ACTION
### Violation of the Equal Protection Clause
### (All Defendants)

53.    All of the foregoing allegations set forth at ¶¶ 1-48 are repeated and

realleged as if fully set forth herein.

54.    The Equal Protection Clause commands that "[n]o state shall deny to

any person within its jurisdiction the equal protection of the laws." U.S. CONST.

amend. XIV, § 1.[40] Discrimination against a U.S.-born minor because of parental

alienage violates the Equal Protection Clause. *See Oyama v. California*, 332 U.S.

633, 646-47 (1948).

55.    By denying U.S. citizenship to the future U.S.-born children of the

Plaintiffs because their immigrant parents are classified as immigrants who have

temporary or undocumented status, Executive Order 14160—the birthright

citizenship ban—intentionally discriminates on account of alienage and national

origin in violation of the Equal Protection Clause.

56.    In addition, or, in the alternative, by denying U.S. citizenship to the

future U.S.-born children of the Plaintiffs because their immigrant parents have

---

[40] The Fifth Amendment's Due Process Clause contains an "equal protection guarantee" that is "coextensive with that of the Fourteenth [Amendment]..." *U.S. v. Paradise*, 480 U.S. 149, 166 n.16 (1987).

temporary or undocumented status, Executive Order 14160—the birthright citizenship ban—intentionally discriminates on account of alienage, national origin and/or immigration status in violation of the Equal Protection Clause.

57.    In addition, or, in the alternative, Executive Order 14160—the birthright citizenship ban—was motivated by discriminatory animus and disparately impacts future U.S.-born children whose parents have temporary or undocumented status and are from Latin American countries thereby intentionally discriminating on account of alienage, national origin and/or immigration status in violation of the Equal Protection Clause.

58.    By subjecting Plaintiffs, who have temporary or undocumented status and whose children are future U.S.-born citizens, to differential treatment, Executive Order 14160—the birthright citizenship ban—intentionally discriminates on account of alienage, national origin and/or immigration status in violation of the Equal Protection Clause.

**THIRD CAUSE OF ACTION**
**Violation of 8 U.S.C. § 1401(a)**
**(All Defendants excluding Defendant Trump)**

59.    All of the foregoing allegations set forth at ¶¶ 1-48 are repeated and realleged as if fully set forth herein.

60.    8 U.S.C. § 1401(a) guarantees U.S. citizenship to "a person born in the United States, and subject to the jurisdiction thereof."

61.     By denying U.S. citizenship to the future U.S.-born children of the

Plaintiffs because of parental alienage, national origin, and/or immigration status,

Executive Order 14160—the birthright citizenship ban—violates 8 U.S.C.

§ 1401(a).

## **PRAYERS FOR RELIEF**

WHEREFORE Plaintiffs request that the Court grant the following relief:

a.     Declare Executive Order 14160—the birthright citizenship ban—

unconstitutional and contrary to the laws of the United States;

b.     Permanently enjoin the Defendants from enforcing Executive Order

14160—the birthright citizenship ban;

c.     Require Defendants to pay reasonable attorneys' fees and costs; and

d.     Order such other relief as the Court deems just and proper.


Dated this 13th day of February, 2025

Respectfully submitted,

By: /s/ Francisca D. Fajana
Francisca D. Fajana
Cesar Ruiz
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org

24