# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

New York Immigration Coalition; J.V., individually and as next friend to her future child; D.F., individually and as next friend to her future child; and Rural & Migrant Ministry,

    *Plaintiffs*

v.

DONALD J. TRUMP, President of the United States, in his official capacity;

U.S. DEPARTMENT OF HOMELAND SECURITY, Kristi Noem, Secretary of the U.S. Department of Homeland Security, in her official capacity;

U.S. DEPARTMENT OF STATE, Marco Rubio, Secretary of State, in his official capacity;

U.S. DEPARTMENT OF JUSTICE, Pamela Jo Bondi, Attorney General of the United States, in her official capacity;

THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, Stephanie Carlton, Acting Administrator of the Centers for Medicare and

CIVIL ACTION NO: 25-cv-1309

DATE: March 4, 2025

Medicaid Services, in her official
capacity;

SOCIAL SECURITY
ADMINISTRATION, Leland Dudek,
Acting Commissioner for Social
Security, in his official capacity.

*Defendants*

# PLAINTIFF D.F.'S NOTICE OF UNOPPOSED[1] MOTION TO PROCEED ANONYMOUSLY

PLEASE TAKE NOTICE THAT, based upon the attached Memorandum of
Law in Support of Plaintiff's Motion to Proceed Anonymously, Plaintiff D.F.,
through Counsel, moves to proceed anonymously in the lawsuit filed on February
13, 2025 (the "Complaint") challenging Executive Order 14160 and its
unconstitutional impact on immigrants. Plaintiff D.F. moves to proceed
anonymously pursuant to the judicially established exceptions to Rule 10(a) of the
Federal Rules of Civil Procedure on the grounds that Plaintiff's interest in
anonymity heavily outweighs any public interest in disclosure or possible prejudice
to Defendants.

---

[1] Plaintiffs conferred with Defendants' counsel on March 4, 2025 and Defendants do not oppose Plaintiff D.F.'s motion to proceed anonymously.

Dated this <u>4th</u> day of March, 2025

Respectfully submitted,

By: <u>/s/ Cesar Z. Ruiz</u>

Cesar Z. Ruiz
Francisca D. Fajana
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

New York Immigration Coalition; J.V., individually and as next friend to her future child; D.F., individually and as next friend to her future child; and Rural & Migrant Ministry,

    *Plaintiffs*

v.

DONALD J. TRUMP, President of the United States, in his official capacity;

U.S. DEPARTMENT OF HOMELAND SECURITY, Kristi Noem, Secretary of the U.S. Department of Homeland Security, in her official capacity;

U.S. DEPARTMENT OF STATE, Marco Rubio, Secretary of State, in his official capacity;

U.S. DEPARTMENT OF JUSTICE, Pamela Jo Bondi, Attorney General of the United States, in her official capacity;

THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, Stephanie Carlton, Acting Administrator of the Centers for Medicare and

**CIVIL ACTION NO:** 25-cv-1309

1

Medicaid Services, in her official
capacity;

SOCIAL SECURITY
ADMINISTRATION, Leland Dudek,
Acting Commissioner for Social
Security, in his official capacity.

*Defendants*

## PLAINTIFF D.F.'s MEMORANDUM OF LAW IN SUPPORT OF HER UNOPPOSED MOTION TO PROCEED ANONYMOUSLY

# **Table of Contents**

## **Contents**

Table of Contents ................................................................................. 3

Table of Authorities........................................................................... 4

INTRODUCTION .............................................................................. 7

STATEMENT OF FACTS ................................................................. 7

ARGUMENT ...................................................................................... 10

   I.   Plaintiff D.F. Has a Strong Interest in Anonymity ....................................... 12

     a.   Denying the motion for anonymity will harm Plaintiff under factors two and seven.................................................................................................. 12

     b.   Plaintiff has maintained anonymity thus far, weighing in favor of factor seven ..................................................................................................... 16

   II.  Protecting Plaintiff's Identity from Public Disclosure Would Not Prejudice Defendants. ....................................................................................... 17

   III.  Requiring Disclosure of Plaintiff's Identity Does Not Advance the Public's Interest.......................................................................................... 18

   IV.  Conclusion ................................................................................... 21

## Table of Authorities

**Cases**

*Doe I v. Four Bros. Pizza*, No. 13 CV 1505(VB), 2013 WL 6083414 (S.D.N.Y. Nov. 19, 2013). .................................................................................................. 17

*Doe v. Colgate Univ.*, No. 515CV1069LEKDEP, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016). ............................................................................................. 20

*Doe v. Combs*, No. 24-CV-08810 (LAK), 2025 WL 268515 (S.D.N.Y. Jan. 22, 2025). .................................................................................................. 20

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006). ................................................. 20

*Doe v. Dep't of Homeland Sec.*, No. CV 22-5172, 2023 WL 372085 (E.D. La. Jan. 24, 2023). .......................................................................................... 19

*Doe v. Townes*, No. 19CV8034ALCOTW, 2020 WL 2395159 (S.D.N.Y. May 12, 2020). ................................................................................................... 19

*Does 1-2 v. Hochul*, No. 21CV5067AMDTAM, 2022 WL 836990 (E.D.N.Y. Mar. 18, 2022). ............................................................................................ 20

*EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003). ...................................... 18

*Gastelum-Quinones v. Kennedy*, 374 U.S. 469 (1963). ......................................... 16

*Kiakombua v. McAleenan*, No. 19-CV-1872 (KBJ), 2019 WL 11322784 (D.D.C. July 3, 2019) ............................................................................................. 13

*Lozano v. City of Hazleton*, 496 F.Supp.2d 477 (M.D.Pa 2007) *aff'd in part, vacated in part on other grounds*, 620 F.3d 170 (3d Cir. 2010). ....................... 13

*Michael v. Bloomberg L.P.*, No. 14-CV-2657 TPG, 2015 WL 585592 (S.D.N.Y. Feb. 11, 2015). .......................................................................................... 12

*MM v. Mayorkas*, No. 24-CV-02090 (NSR), 2024 WL 1795766 (S.D.N.Y. Apr. 25, 2024). ................................................................................... 11, 13, 19

*Plaintiffs #1-21 v. County of Suffolk*, 138 F.Supp.3d 264 (E.D.N.Y. 2015). … 17, 19

*Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021). .................................. 17

*R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019). ................... 12, 16, 18, 19

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008). .............. passim

**Other Authorities**

Albinson Linares, *Rise in Hate Crimes Includes a 'Significant Increase' Against Latinos* (Nov. 3, 2023), https://www.nbcnews.com/news/latino/hate-crimes-latinos-see-significant-increase-rcna123211. ...................................................... 15

Allan Smith, *Trump Aims to End Birthright Citizenship, Says American Citizens with Family Here Illegally May Be Deported*, NBC NEWS (Dec. 8, 2024), https://www.nbcnews.com/politics/donald-trump/trump-aims-end-birthright-citizenship-says-american-citizens-family-il-rcna183274. .................................. 9

*Anti-Immigration Ideology: Stephen Miller, David Horowitz Roan Garcia-Quintana*, Southern Poverty Law Center, https://www.splcenter.org/resources/extremist-files/anti-immigrant/. .............. 15

Camilo Montoya-Galvez, *U.S. Sending Nonviolent, "Low-Risk" Migrants to Guantanamo, Despite Vow to Detain "the Worst" There* (Feb. 12, 2025), https://www.cbsnews.com/news/guantanamo-bay-migrants-trump/. ............... 15

Exec. Order 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025). ........................................ 8

Fox 5 New York, *Donald Trump's Long Island Rally FULL SPEECH*, YouTube (Sep. 18, 2024), https://www.youtube.com/watch?v=jGOhIM94zzk. ............ 10

Jane C. Timm, *Fact-Checking Trump's Interview with 'Meet the Press'* NBC NEWS (Dec. 8, 2024), https://www.nbcnews.com/politics/donald-trump/fact-check-trump-interview-meet-the-press-rcna182995. ................................................. 9, 10

Julia Reinstein & Hanna Demissie, *Trump Pushes False Claims that Haitian Migrants Are Stealing and Eating Pets*, ABC NEWS (Sep. 10, 2024), https://abcnews.go.com/Politics/trump-pushes-false-claim-haitian-migrants-stealing-eating/story?id=113570407. .......................................................... 10, 14

Maggie Astor, *Trump Doubles Down on Migrants 'Poisoning' the Country*, N.Y. TIMES (Mar. 17, 2024), https://www.nytimes.com/2024/03/17/us/politics/trump-fox-interview-migrants.html [on file with LatinoJustice PRLDEF]. ............ 10, 14

*Westchester County Executive Clarifies Immigration Policy, Denies Sanctuary Status*, News 12 Westchester (Feb. 19, 2025), https://westchester.news12.com/westchester-county-executive-clarifies-immigration-policy-denies-sanctuary-status. ......................................................15

*Promises Made, Promises Kept: President Trump is Already Securing Our Border and Deporting Criminal Aliens*, Dep't of Homeland Security (Jan. 26, 2025),

https://www.dhs.gov/news/2025/01/26/president-trump-already-securing-our-border-and-deporting-criminal-aliens....................................................................15

Right Side Broadcasting Network, *LIVE REPLAY: President Trump Holds a Rally in Uniondale, New York*, YouTube (Feb. 10, 2009), https://www.youtube.com/watch?v=UPZ9uMQ3z7U. ……………….....…........ 15

Russel Contreras, *Anti-Latino Hate Crime Grew in 2022, Study Shows*, Axios Latino (August. 31, 2023). ...................................................................................16

Ted Hesson, *Trump Vows to End Birthright Citizenship for Children of Immigrants in US Illegally*, REUTERS (May 30, 2023), https://www.reuters.com/world/us/trump-vows-end-birthright-citizenship-children-immigrants-us-illegally-2023-05-30/. ......................................................... 9

**Rules**

Fed. R. Civ. P. 10(a). ........................................................................................ 10, 11

Fed. R. Civ. P. 5.2(c). ........................................................................................... 12

## INTRODUCTION

Individual Plaintiff, D.F., is a 35-year-old Colombian national. She has a pending asylum petition. D.F. is six months pregnant. She, Plaintiff J.V., the New York Immigration Coalition, and Rural & Migrant Ministry bring an action to challenge the constitutionality and legality of Executive Order 14160 ("the birthright citizenship ban"), signed by Defendant Donald J. Trump on January 20, 2025. The birthright citizenship ban would render Plaintiff D.F.'s future child stateless and deny the child all benefits associated with citizenship.

Given Defendant Donald J. Trump's statements against immigrants, his accompanying immigration enforcement actions, and rising anti-Latino hate, Plaintiff D.F. is apprehensive to bring this legal claim vindicating the constitutional rights of herself and her future child. She fears harassment and retaliation, including the denial of her asylum application and the harm of deportation, as she currently has no legal status.

Accordingly, D.F. moves to appear in this matter anonymously to ensure she can protect her constitutional rights, and those of her future child, through this challenge. As with Plaintiff J.V.'s motion for anonymity, D.F.'s interest in anonymity aligns with the public interest and is not prejudicial to Defendants.

## STATEMENT OF FACTS

As fully set forth in Plaintiffs' complaint, Executive Order 14160 ("birthright citizenship ban") defies over a century-old settled law. The birthright citizenship ban, signed on January 20, 2025, by Defendant Donald J. Trump purports to strip U.S.-born children of their citizenship if at the time of birth the child's "mother was unlawfully present in the United States" or her presence "was lawful but temporary" and the father of the child was not a U.S. citizen or lawful permanent resident.[1] The birthright citizenship ban directs federal agencies not to issue documents recognizing U.S. citizenship or accept documents issued by any state, local, or other governments recognizing U.S. citizenship of U.S.-born children whose parents have temporary immigration status or who are undocumented.

Individual Plaintiff, D.F., a Colombian national who entered the U.S. in 2024, will be adversely impacted by the birthright citizenship ban. D.F. is six months pregnant and has a pending asylum claim. D.F.'s partner, the father of her future child, is also a Colombian national with a pending asylum claim. D.F. believes the birthright citizenship ban is cruel and unjust, because the ban discriminates against her future U.S.-born child. The precarious citizenship status of her unborn child puts D.F. under enormous stress at a very delicate time in her

---

[1] Exec. Order 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025).

pregnancy. The birthright citizenship ban will render D.F.'s child a stateless nomad without a home country.

Additionally, the birthright citizenship ban will render D.F.'s future child ineligible for critical medical benefits. D.F.'s future child also will be denied a U.S. passport, a social security number, an unrestricted social security card, and access to essential health care and housing—all of which she could receive but for the birthright citizenship ban. Defendants' birthright citizenship ban discriminates against D.F. and her future U.S.-born child on account of alienage and national origin.

Six weeks before the President signed the birthright citizenship ban, he inaccurately claimed "[w]e're the only country that has [birthright citizenship]," and vowed "to end it."[2] (ECF No. 1 at ¶ 38). The President said the guarantee of birthright citizenship was "ridiculous."[3] (ECF No. 1 at ¶ 38). He said there were "record numbers of migrants crossing the border" and that birthright citizenship was a "magnet" pulling many migrants to do so. (ECF No. 1 at ¶ 38).[4] Leading up to the signing of the ban, the President claimed there was a "migrant crime" wave,

---

[2] Jane C. Timm, *Fact-Checking Trump's Interview with 'Meet the Press'* NBC NEWS (Dec. 8, 2024), https://www.nbcnews.com/politics/donald-trump/fact-check-trump-interview-meet-the-press-rcna182995.
[3] Allan Smith, *Trump Aims to End Birthright Citizenship, Says American Citizens with Family Here Illegally May Be Deported*, NBC NEWS (Dec. 8, 2024), https://www.nbcnews.com/politics/donald-trump/trump-aims-end-birthright-citizenship-says-american-citizens-family-il-rcna183274.
[4] Ted Hesson, *Trump Vows to End Birthright Citizenship for Children of Immigrants in US Illegally*, REUTERS (May 30, 2023), https://www.reuters.com/world/us/trump-vows-end-birthright-citizenship-children-immigrants-us-illegally-2023-05-30/.

blaming "MS-13 and Venezuelan gangs [as] the worst in the world."[5] (ECF No. 1 at ¶ 39). He claimed they were "literally taking over apartment complexes and doing it with impunity."[6] (ECF No. 1 at ¶ 39). Four months before the President's birthright citizenship ban, he claimed Haitian migrants were stealing and "eating people's dogs and cats."[7] (ECF No. 1 at ¶ 40). And nine months before the ban, the President said immigrants were "poisoning the blood" of the nation.[8] (ECF No. 1 at ¶ 41). He contended that migrants crossing the southern border are "criminals flooding in from prisons and mental institutions."[9] (ECF No. 1 at ¶ 41). He referred to migrants as "animals" saying, "[t]hey are not people in my opinion."[10] (ECF No. 1 at ¶ 41). Besides the Presidents' anti-immigrant and anti-Latino statements, there is well documented anti-Latino fervor.[11]

## ARGUMENT

The Federal Rule of Civil Procedure 10(a) provides that "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). The Second Circuit,

---

[5] Timm, *supra* note 17.

[6] *Id.*

[7] Julia Reinstein & Hanna Demissie, *Trump Pushes False Claims that Haitian Migrants Are Stealing and Eating Pets*, ABC News (Sep. 10, 2024), https://abcnews.go.com/Politics/trump-pushes-false-claim-haitian-migrants-stealing-eating/story?id=113570407.

[8] Maggie Astor, *Trump Doubles Down on Migrants 'Poisoning' the Country*, N.Y. Times (Mar. 17, 2024), https://www.nytimes.com/2024/03/17/us/politics/trump-fox-interview-migrants.html [on file with LatinoJustice PRLDEF].

[9] *Id.*

[10] *Id.*

[11] Fox 5 New York, *Donald Trump's Long Island Rally FULL SPEECH*, YouTube (Sep. 18, 2024), https://www.youtube.com/watch?v=jGOhIM94zzk; At approximately 1 hour 4 minutes 58 seconds to 1 hour 6 minutes and 42 seconds.

however, has recognized the need for courts to anonymize the identity of litigants in certain circumstances. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008); *cf.* Fed. R. Civ. P. 10(a). When deciding whether the use of a pseudonym is appropriate, "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. The court provided a list of non-exhaustive factors to be considered in making this determination. No one factor is dispositive but merely aids the court in balancing the interests of the parties and the public. *MM v. Mayorkas*, No. 24-CV-02090 (NSR), 2024 WL 1795766, at *2 (S.D.N.Y. Apr. 25, 2024). The factors include:

> (1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature"; (2) "'whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties"; (3) whether identification presents other harms and the likely severity of those harms . . . ; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . ; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously . . . ; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (internal citations omitted). Based on the totality of these factors, the court should grant Plaintiff D.F.'s motion to proceed anonymously.

## I.    Plaintiff D.F. Has a Strong Interest in Anonymity

Factors one, two, and seven, all factors which implicate Plaintiff's interest in anonymity, weigh in favor of Plaintiff's motion. Plaintiff D.F.'s claims raise highly sensitive matters that put her at substantial risk for retaliation in the form of deportation, detention, harassment, doxxing, and other threats that would cause her physical and mental harm. Moreover, Plaintiff D.F. has remained anonymous to the Defendants, weighing in favor of continued protection of her identity.

   a.   Denying the motion for anonymity will harm Plaintiff under factors two and seven

The first factor weighs in favor of anonymity for Plaintiff D.F. Both the precarious nature of Plaintiff D.F.'s immigration status as well as the fact that this case implicates her status as a pregnant woman raises "matters that are highly sensitive and of a personal nature," which puts a thumb on the scale against disclosure. *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 5.2(c)) ("[I]mmigration matters are treated with sensitivity under the Federal Rules of Civil Procedure. . . . "); *Michael v. Bloomberg L.P.,* 2015 WL 585592 (S.D.N.Y.,2015) ("[T]his the type of unusual case involving matters of a highly sensitive or personal nature—*i.e.*, claims involving sexual orientation,

12

pregnancy, or minor children—in which courts have justified anonymous plaintiffs proceeding pseudonymously.").

Plaintiff D.F. should also be permitted to proceed anonymously because disclosure poses serious and imminent risks of retaliatory mental and physical harm to Plaintiff D.F., as well as innocent non-parties. The second *Sealed Plaintiff* factor is thus satisfied. Courts have held that "asylum seekers are particularly vulnerable to retaliation if their names are revealed." *MM*, 2024 WL 1795766, at *2 (citing *Kiakombua v. McAleenan*, No. 19-CV-1872 (KBJ), 2019 WL 11322784, at *3 (D.D.C. July 3, 2019) ("[A]sylum seekers ... fall within a particularly vulnerable class of migrants for whom confidentiality about the nature and existence of their claims is particularly important.")). Additionally, in *Lozano v. City of Hazleton*, the plaintiffs challenged ordinances impacting the housing and employment of immigrants lawfully and unlawfully present in the United States. 496 F.Supp.2d 477 (M.D.Pa 2007) *aff'd in part, vacated in part on other grounds*, 620 F.3d 170 (3d Cir. 2010). The court ruled that the plaintiffs could proceed anonymously because the trial testimony revealed that "the intense public interest in the ordinances led at times to harassment and intimidation that created fear even among those with a more secure social and legal status than the anonymous plaintiffs." *Lozano*, 496 F.Supp.2d at 490. There is ample evidence of both the uncertainty of her immigration status and "public interest" in immigration policy

13

decisions to make the threat of retaliation significant and well-founded. In light of the recent eruptions in anti-immigrant policies and public statements by Defendant Donald J. Trump, as well as the accompanying anti-immigrant sentiment nationwide, particularly against Latino immigrants and other immigrants of color, Plaintiff D.F., an asylum applicant, faces a risk of being targeted for retaliation and harassment. The harm she risks suffering ranges from widespread public stigmatization to hate crimes, deportation, immigration detention, and denial of her asylum application. These harms will fall not only on Plaintiff D.F. but also on her family members, especially her child, once they are born.

The President, for example, has made false and inflammatory claims about immigrants. He has claimed Haitian migrants were stealing and "eating people's dogs and cats."[12] (ECF No. 1 at ¶ 40). He said immigrants are "poisoning the blood" of the nation and said immigrants crossing the southern border are "criminals flooding in from prisons and mental institutions."[13] (ECF No. 1 at ¶ 41). He also referred to immigrants as "animals."[14] (ECF No. 1 at ¶ 41). At a rally during his presidential campaign, Defendant Donald J. Trump, referring to

---

[12] Reinstein, *supra* note 7.
[13] Astor, *supra* note 8.
[14] *Id.*

migrants, claimed New York was facing "crime at record levels, with terrorists and criminals pouring in."[15]

These statements have been accompanied by threats and actions to detain[16] and deport immigrants[17], a harm that would deeply impact Plaintiff D.F. *See Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) ("[W]here . . . plaintiffs fear extraordinary retaliation, such as deportation, arrest, and imprisonment, plaintiffs do not need to prove that they face a danger of physical injury."). The threat of retaliatory deportation also extends to Westchester County, where local officials will not interfere with federal enforcement of immigration laws.[18]

Nationally, anti-immigrant hate groups have grown in recent years,[19] as have anti-Latino hate crimes in major cities.[20] A study by the Center for the Study of Hate and Extremism at California State University found that anti-Latino hate crimes increased by 41% between 2020 and 2021 and by 2.8% from 2021 to

---

[15] Right Side Broadcasting Network, *LIVE REPLAY: President Trump Holds a Rally in Uniondale, New York*, YouTube (Feb. 10, 2009), https://www.youtube.com/watch?v=UPZ9uMQ3z7U.

[16] *E.g.*, Camilo Montoya-Galvez, *U.S. sending nonviolent, "low-risk" migrants to Guantanamo, despite vow to detain "the worst" there* (Feb. 12, 2025), https://www.cbsnews.com/news/guantanamo-bay-migrants-trump/.

[17] *Promises Made, Promises Kept: President Trump is Already Securing Our Border and Deporting Criminal Aliens*, Dep't of Homeland Security (Jan. 26, 2025), https://www.dhs.gov/news/2025/01/26/president-trump-already-securing-our-border-and-deporting-criminal-aliens.

[18] *Westchester County Executive Clarifies Immigration Policy, Denies Sanctuary* Status, News 12 Westchester (Feb. 19, 2025), https://westchester.news12.com/westchester-county-executive-clarifies-immigration-policy-denies-sanctuary-status.

[19] *Anti-Immigration Ideology: Stephen Miller, David Horowitz Roan Garcia-Quintana*, Southern Poverty Law Center, https://www.splcenter.org/resources/extremist-files/anti-immigrant/.

[20] Albinson Linares, *Rise in Hate Crimes Includes a 'Significant Increase' Against Latinos* (Nov. 3, 2023), https://www.nbcnews.com/news/latino/hate-crimes-latinos-see-significant-increase-rcna123211.

2022.[21] The director of the Center, Brian Levin, pointed out that over the last decade hate crimes against Latinos spike when Latinos are heavily featured in the news and tend to increase in the months before presidential elections, in relation to the narratives that candidates create.[22]

Furthermore, the threat of retaliatory detention and deportation would cause emotional harm to Plaintiff D.F.'s family. Even if D.F.'s asylum claim is granted, the threat of deportation to her future-stateless child will cause deep emotional harm for Plaintiff, her child, and the father of her child. *See Gastelum-Quinones v. Kennedy*, 374 U.S. 469, 479 (1963) ("[D]eportation is a drastic sanction, one which can destroy lives and disrupt families."); *Sealed Plaintiff*, 537 F.3d at 190 (the threat to non-parties may be "more critical[]" than that of parties themselves).

b. <u>Plaintiff has maintained anonymity thus far, weighing in favor of factor seven</u>

The seventh *Sealed Plaintiff* factor also tips the scale in favor of Plaintiff D.F. The seventh factor asks courts to consider whether the plaintiff's identity has remained anonymous. Here, Plaintiff D.F. has not disclosed her identity to the defendants, and thus this factor weighs in her favor. *See Nielsen*, 365 F. Supp. 3d

---

[21] Russel Contreras, *Anti-Latino Hate Crime Grew in 2022, Study Shows*, Axios Latino (August. 31, 2023).
[22] *Id.*

372 ("In this case, the plaintiffs have retained their anonymity, which weighs in favor of allowing the plaintiffs to continue anonymously).

## II.    Protecting Plaintiff's Identity from Public Disclosure Would Not Prejudice Defendants.

Allowing Plaintiff D.F. to proceed pseudonymously causes no prejudice to the defendants, tipping the sixth factor, prejudice to the defendant, in Plaintiff's favor.  Proceeding anonymously presents no harm considering the legal nature of this case and the relief sought. Plaintiff D.F. only raises purely legal claims about the constitutionality and legality of Executive Order 14160, and thus her individual identity will not aid the defendants in this matter. No fact-based inquiry is necessary. *C.f., Doe I v. Four Bros. Pizza*, No. 13 CV 1505(VB), 2013 WL 6083414, at *10 (S.D.N.Y. Nov. 19, 2013) ("Without knowing who has brought suit against them, defendants will be hard-pressed to conduct an internal investigation to develop their defenses . . . ."); *Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 276 (E.D.N.Y. 2015) ("Plaintiffs' identities are of crucial importance to the Defendants in investigating and asserting defenses to those claims. . . . [T]he Court finds that the Defendants will be clearly prejudiced . . . ."). Additionally, all claims against Defendants are in their official capacities, lessening concerns about reputational damage. *See Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021) ("In considering the sixth factor, courts have examined difficulties

17

in conducting discovery, the reputational damage to defendants, and the
fundamental fairness of proceeding anonymously.") (internal quotations and
citations omitted).

### III.    Requiring Disclosure of Plaintiff's Identity Does Not Advance the Public's Interest.

Revealing the plaintiff's identity will not advance the public's interest and is
more likely to cause unnecessary harm.  Factors five, eight, and nine, which raise
issues regarding the public's interest and cases against public entities, all weigh in
favor of Plaintiff D.F.'s motion for anonymity. D.F.'s claims vindicate the rights of
a minority interest. Revealing her identity would be of no value to resolving the
merits of this claim and would only serve to chill similar actions in the future.

The fifth *Sealed Plaintiff* factor weighs in favor of Plaintiff D.F. "[W]here a
plaintiff attacks a governmental activity, for example, a governmental policy or
statute, the plaintiff's interest in proceeding anonymously is considered particularly
strong" and "personal anonymity is more readily granted." *Nielsen*, 365 F.Supp.3d
at 371 (quoting *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111, 112 (E.D.N.Y. 2003)).
The court suggested this is because the plaintiff in these cases likely represents a
minority interest, and there might be a public interest in vindicating the plaintiff's
rights. *Id*. Additionally, the personal identity of the plaintiff is not needed to
resolve the matter. *Id*.

Here, Plaintiff D.F. brings a challenge against government entities, seeking to vindicate her rights and the rights of those similarly situated as well as the rights of her soon-to-be-born child. As a Latina immigrant she represents a distinct minority interest, challenging a policy that will disproportionately impact Latinos. *See Plaintiffs #1-21 v. County of Suffolk*, 138 F.Supp.3d 264, 275 (E.D.N.Y. 2015) ("The Plaintiffs as Latinos represent a minority interest challenging an alleged government policy.") Furthermore, her personal characteristics have no bearing on the ultimate question in the case. Instead, she "'challenges the constitutional, statutory, or regulatory validity of government activity,' which weighs in favor of granting anonymity." *MM*, 2024 WL 1795766, at *2 (citing *Doe v. Dep't of Homeland Sec.*, No. CV 22-5172, 2023 WL 372085, at *3 (E.D. La. Jan. 24, 2023)).

*Sealed Plaintiff* factors eight and nine also weigh in favor of permitting Plaintiff D.F. to proceed anonymously. These factors direct courts to consider whether the public's interest in the litigation is furthered by disclosure of the plaintiff's identity but recognize that if the litigation deals with pure questions of law, the public's interest is weakened. *See Sealed Plaintiff*, 537 F.3d at 190; *see also Doe v. Townes*, No. 19CV8034ALCOTW, 2020 WL 2395159, *6 (S.D.N.Y. May 12, 2020). In *R.F.M. v. Nielsen*, for example, the plaintiffs raised a pure question of law when challenging the policies of the United States Citizenship and Immigration Services,

19

because they argued the policies contravened federal and state law. 365 F.Supp. 3d at 372. The court found that this weighed in favor of the plaintiffs, as the identities of the plaintiffs had "little bearing on the nature of the dispute or the merits of the case." *Id.* at 372 (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006)). Similarly, Plaintiff D.F. raises pure questions of law, arguing that the birthright citizenship ban violates the United States Constitution and federal law. As the case's resolution will be decided on pure questions of law, Plaintiff D.F.'s identity has little to no bearing on the merits, and there is no public interest in knowing the plaintiff's identity.

Moreover, this challenge has been brought against a public figure and thus might deter others from raising similar claims, undermining the public interest by chilling public accountability. The court should consider this "chilling effect," which would "weigh in favor of permitting [the] Plaintiff[s] to continue anonymously." *Does 1-2 v. Hochul*, No. 21CV5067AMDTAM, 2022 WL 836990, at *7 (E.D.N.Y. Mar. 18, 2022); *Doe v. Combs*, No. 24-CV-08810 (LAK), 2025 WL 268515, *4 (S.D.N.Y. Jan 22, 2025); *see also Doe v. Colgate Univ.*, No. 515CV1069LEKDEP, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("The Court is also mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations."). Given the risks of retaliation outlined above, denying Plaintiff D.F.'s request for anonymity

will chill other immigrants with and without temporary protected status from bringing similar challenges to the executive branch's unconstitutional, anti-immigrant orders and policies.

## IV.    Conclusion

The *Sealed Plaintiff* factors overwhelmingly weigh in favor of granting Plaintiff D.F.'s motion to proceed anonymously, as they did for Plaintiff J.V. To deny this motion would risk significant harm against the Plaintiff, particularly given the current climate of animosity towards Latino immigrants. The protection that this pseudonym would provide would not only benefit the named Plaintiff but would also avoid deterring others from vindicating their rights under the Constitution and laws of the United States. The Plaintiff's interests in anonymity far outweigh the potential for prejudice to defendants. For the foregoing reasons, Plaintiff D.F. respectfully asks the court to grant her motion to proceed anonymously.

Dated this 4th day of March, 2025

Respectfully submitted,

By: /s/ Cesar Z. Ruiz
Cesar Z. Ruiz
Francisca D. Fajana
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org

## **WORD COUNT CERTIFICATION**

I hereby certify that this affirmation complies with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 3,718 words.

Dated: New York, New York
         March 4, 2025

Respectfully submitted,

By: /s/ Cesar Z. Ruiz
Cesar Z. Ruiz
Francisca D. Fajana
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org

23