# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

New York Immigration Coalition, *et al.*,

    *Plaintiffs*,

      v.

DONALD J. TRUMP, President of the United States, in his official capacity, *et al*.,

    *Defendants*.

**CIVIL ACTION NO: 25-cv-01309-MMG**

# MEMORANDUM OF LAW IN SUPPORT OF
# <u>PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................2

**PRELIMINARY STATEMENT** ...............................................................5

**FACTUAL BACKGROUND** ...................................................................7

**ARGUMENT** .........................................................................................13

   **I.**   **The Factors for Issuance of a Preliminary Injunction**.............................13

   **II.**   **Plaintiffs Are Directly Injured by the Birthright Citizenship Ban and Have Standing to Challenge It**................................................................14

      **A.**  **Individual Plaintiffs J.V. and D.F. are Expectant Mothers Directly Injured by the Birthright Citizenship Ban** ...................................14

      **B.**  **Organizational Plaintiffs NYIC's and RMM's Membership Include Expectant Mothers and Parents Directly Injured by the Birthright Citizenship Ban**..........................................................................18

   **III.**   **Plaintiffs Easily Satisfy the Requirements for a Preliminary Injunction** ......................................................................................21

      **A.**  **Plaintiffs Are Highly Likely to Succeed on the Merits of their Citizenship Clause Claim** ...................................................................21

      **B.**  **Plaintiffs Are Highly Likely to Succeed on the Merits of their Equal Protection Clause Claim** ................................................................25

      **C.**  **Plaintiffs will Suffer Irreparable Harm** .............................................31

      **D.**  **The Equities Overwhelmingly Favor an Injunction** ...........................33

**CONCLUSION**.......................................................................................34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.H. by & through Hester v. French*, 985 F.3d 165 (2d Cir. 2021). .......................33

*Acosta v. Gaffney*, 558 F.2d 1153 (3d Cir. 1977). ....................................................24

*Agudath Israel of America v. Cuomo*, 983 F.3d 620 (2d Cir. 2020). .............. 13, 33

*Averhart v. Annucci*, No. 21-CV-383 (NSR), 2021 WL 2383556 (S.D.N.Y. June 10, 2021). ...............................................................................................................31

*Bolling v. Sharpe*, 347 U.S. 497 (1954). ...................................................................30

*Caicedo v. DeSantis*, No. 23-cv-2303-JSS-RMN, 2024 WL 4729160 (M.D. Fla. Nov. 8, 2024). ......................................................................................................20

*CASA, Inc. v. Trump*, No. DLB-25-201, 2025 WL 408636 (D. Md. Feb. 5, 2025). .............................................................................................. 16, 22, 24, 25

*City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985). ..............28

*Dandamudi v. Tisch*, 686 F.3d 66 (2d Cir. 2012). ............................................ 28, 29

*Deide v. Day*, 676 F. Supp. 3d 196, 222 (S.D.N.Y. 2023). .............................. 29, 30

*Des Moines Midwife Collective v. Iowa Health Facilities Council*, 735 F. Supp. 3d 1085 (S.D. Iowa 2024). ............................................................................................26

*Doe v. Trump*, No. 25-10139-LTS, 2025 WL 485070 (D. Mass. Feb. 13, 2025). .......................................................................................................... passim

*Dred Scott v. Sanford*, 60 U.S. 393 (1857). ..............................................................23

*Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505 (2d Cir. 2024). .................................................................................................................14

*Elrod v. Burns*, 427 U.S. 347 (1976). ......................................................................31

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). ...........................20

*Fedorenko v. United States*, 449 U.S. 490 (1981). ...................................................16

*Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022). ..............................................................26

*Graham v. Richardson*, 403 U.S. 365 (1971). ..........................................................29

*Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966). .................................27

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977). ................. 18, 21

*Intercommunity Justice and Peace Center v. Registrar, Ohio Bureau of Motor Vehicles*, 440 F.Supp.3d 877 (S.D. Oh. 2020). .....................................................30

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996). ........................................................31

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). ...................................... 26, 31

*Knauer v. United States*, 328 U.S. 654 (1946). .......................................................16

2

*Leebaert v. Huntington*, 332 F.3d 134 (2d Cir. 2003)..............................................26

*Lewis v. Thompson*, 252 F.3d. 567 (2d Cir. 2001)....................................................29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). ..............................................15

*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976). .......................26

*Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 129 (2d Cir. 2020). ...................................................................................................................................15

*Murthy v. Missouri*, 603 U.S. 43 (2024). ...................................................................13

*New Hampshire Indonesia Community Support v. Trump*, No. 25-cv-38-JL-TSM, 2025 WL 457609 (D.N.H. Feb. 11, 2025). .................................................. 15, 22

*Nken v. Holder*, 556 U.S. 418 (2009). ................................................................ 13, 33

*Oyama v. California*, 332 U.S. 633 (1948)....................................... 6, 28, 29, 30

*Padilla v. Kentucky*, 559 U.S. 356 (2010). ...............................................................17

*Perez v. Abbot*, 253 F. Supp. 3d 864 (W.D. Tex. 2017).................................. 18, 20

*Perez v. Brownwell*, 356 U.S. 44 (1958). ..................................................................16

*Schneiderman v. U.S.*, 320 U.S. 118 (1943). .............................................................31

*Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304 (D. Mass. 2013)...........18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). ...........................................................15

*State of Washington v. Trump*, No. 25-cv-0127-JCC, 2025 WL 415165 (W.D. Wash. Feb. 6, 2025)..........................................................................................15

*Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317 (2d Cir. 1999)........................................................................................................................31

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). ...................................17

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). ..................................................14

*Trop v. Dulles*, 356 U.S. 86 (1958)............................................................................32

*Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53 (2001)..................................................17, 31

*U.S. v. Paradise*, 480 U.S. 149 (1987)......................................................................30

*United States v. Wong Kim Ark*, 169 U.S. 649 (1898).........................................5, 24

*Warth v. Seldin,* 422 U.S. 490 (1975)........................................................................21

*Washington v. Glucksberg*, 521 U.S. 702 (1997).......................................................26

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).........................................13

*Zablocki v. Redhail*, 434 U.S. 374 (1978)..................................................................27

## Statutes

8 U.S.C. § 1401(a) ......................................................................................................23

8 U.S.C. § 1401(b). ......................................................................................................22

**Other Authorities**

Exec. Order No. 14160, 90 Fed. Reg. 8449, Jan. 20, 2025 .......................................6

Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 Geo. L.J. 405
(2020)................................................................................................................21

*Trump, et al. v. New Jersey, et al.*, Application No. 24A886 (U. S. Supreme Court,
Mar. 13, 2025). ...........................................................................................6, 23

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1.......................................................................... passim

## PRELIMINARY STATEMENT

The Fourteenth Amendment to the United States Constitution begins with an unmistakable edict—"[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the States wherein they reside." U.S. CONST. amend. XIV, § 1. Neither parental alienage, national origin, nor immigration status is material to the Citizenship Clause's conferral of citizenship to a person born on United States soil. That has been decidedly so for 127 years when the Supreme Court ruled that the U.S.-born child of Chinese nationals was a United States citizen. *See United States v. Wong Kim Ark*, 169 U.S. 649, 688 (1898) (explaining that "the fundamental rule of citizenship by birth within the dominion of the United States, notwithstanding alienage of parents" is the law of the United States).

Yet by executive fiat, President Trump's Executive Order 14160 (Jan. 20, 2025) bans birthright citizenship for U.S.-born children whose mothers have temporary immigration status or are undocumented and whose fathers are not United States citizens or lawful permanent residents. The weight of authority, including recent decisions in the First, Fourth, and Ninth Circuits, repudiates this subversion of firmly enshrined Citizenship Clause jurisprudence. *See, e.g., Doe v. Trump*, No. 25-10139-LTS, 2025 WL 485070, at *7 (D. Mass. Feb. 13, 2025) ("The text [of the Citizenship Clause] is directed at the person born [in the United

States] . . . not . . . the person's parents . . . [nor does the text] expressly condition its grant of citizenship on any characteristic of the parents."). From *Wong Kim Ark* to *Doe*, an unbroken chain of over a century of settled caselaw grounded on the unambiguous text of the Citizenship Clause makes plain that the birthright citizenship ban is blatantly unconstitutional.

The ban also is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment because it infringes a fundamental right—birthright citizenship—guaranteed by the United States Constitution and runs afoul of longstanding Supreme Court precedent proscribing discrimination against U.S.-born children on account of parental alienage or national origin. The Court's 1948 decision in *Oyama v. California*, for example, declared unconstitutional the denial of a benefit to a U.S.-born minor because of parental ancestry. 332 U.S. 633, 647 (1948). It has long been the rule that "[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Id.* at 646 (internal citation and quotations omitted).

Individual Plaintiffs, J.V. and D.F., who are expectant mothers directly injured by the birthright citizenship ban and organizational Plaintiffs, New York Immigration Coalition and Rural & Migrant Ministry, whose constituents and members include expectant parents also directly injured by the ban have standing

6

to pursue, and are nearly certain to prevail on, their Fourteenth Amendment claims that the birthright citizenship ban is plainly unconstitutional.

Plaintiffs will be irreparably harmed. Their U.S.-born children will be denied birthright citizenship—a right that has been guaranteed to children born on United States soil since the Fourteenth Amendment was ratified 157 years ago. Their U.S.-born children will have no legal status, will be rendered stateless and be consigned to the status of nomads without a home country. They also will be denied unrestricted Social Security cards issued to American citizens and will be denied critical healthcare and other benefits available to United States citizens.

Because Plaintiffs will be irreparably harmed, are likely to succeed on the merits of their Fourteenth Amendment claims, and the public interest is served by enjoining the patently unconstitutional Executive Order 14160 banning birthright citizenship, this Court should issue a preliminary injunction stopping the implementation and enforcement of the Executive Order.

## **FACTUAL BACKGROUND**

On January 20, 2025, President Trump's first day in office, he signed Executive Order 14160, which declared:

> the privilege of United States citizenship does not automatically extend to persons born in the United States: (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's

7

birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

*See* Lopez Decl., Ex. A (Exec. Order No. 14160, 90 Fed. Reg. 8449, Jan. 20, 2025) (hereinafter, "birthright citizenship ban"). The birthright citizenship ban directs federal agencies not to "issue documents recognizing United States citizenship or accept documents issued by state, local, or other governments or authorities purporting to recognize United States citizenship" to the persons listed above. *Id.* Although the birthright citizenship ban was set to become effective on February 19, 2025, federal courts have temporarily enjoined its enforcement, including issuing nationwide injunctions. *See, e.g.*, *Doe*, 2025 WL 485070, at *17 (granting universal or nationwide relief). Defendants, however, have appealed these nationwide injunctions to the Supreme Court, putting Plaintiffs at risk of enforcement of an unconstitutional Executive Order. *See Trump, et al. v. New Jersey, et al.*, Application No. 24A886 (U. S. Supreme Court, Mar. 13, 2025).

Individual Plaintiffs J.V. and D.F. are harmed by the birthright citizenship ban. Both are expectant mothers whose statuses are targeted by the birthright citizenship ban and whose soon-to-be U.S.-born children will be deprived of United States citizenship. Individual Plaintiff J.V. is six months

pregnant. J.V. Decl.  at ¶ 7. She is a 31-year-old Venezuelan national who has Temporary Protected Status ("TPS") through April 2, 2025. Am. Compl. ¶ 28, ECF No. 15; J.V. Decl. at ¶ 3. Her partner, the father of her future child, also has TPS that will expire soon.

J.V. believes the birthright citizenship ban is cruel and unjust. Am. Compl. ¶ 29, ECF No. 15; J.V. Decl.  at ¶ 9. The ban will deny her future U.S.-born child United States citizenship. And as there is no Venezuelan consulate in the United States, it will be challenging for her child to obtain identity documents assuming that were feasible from her  home country. Am. Compl. ¶ 29, ECF No. 15. The birthright citizenship ban will render J.V.'s child a stateless nomad without a home country. *Id.* Because her child will not be a U.S. citizen if this ban is enforced, the child will be ineligible for long term Medicaid benefits. J.V.'s child also will be denied a U.S. passport and an unrestricted social security card. *Id.* at ¶ 30.

Similarly, individual Plaintiff, D.F., a Colombian immigrant with a pending asylum application, who is six months pregnant, is also injured by the birthright citizenship ban. Am. Compl. ¶ 31, ECF No. 15; D.F. Decl. at ¶ 3. D.F. and her partner, the father of her future child, who is also a Colombian immigrant with a pending asylum application, believe the birthright citizenship ban is unjust. D.F. Decl. at ¶¶ 4, 9. The birthright

citizenship ban will leave their future child stateless. *Id*. at ¶ 8. The child will be ineligible for critical healthcare benefits. Am. Compl. ¶ 32, ECF No. 15. Defendants' birthright citizenship ban violates J.V. and D.F.'s unborn children's rights under the 14th Amendment, discriminating against them on account of parental alienage and national origin.

Organizational Plaintiffs, the New York Immigration Coalition ("NYIC") and Rural & Migrant Ministry's ("RMM") constituents and members are also injured by the birthright citizenship ban. NYIC is a statewide, member-led coalition of over 170 immigrant and refugee-rights groups, whose mission is to strengthen and build its members' power, organize and educate immigrant communities and the public, and use the collective voice of its constituents to advocate for opportunity and justice. Am. Compl. ¶ 33, ECF No. 15; NYIC Decl. at ¶ 6. NYIC also directly serves immigrants. *Id.* at ¶ 34. Among those NYIC serves are expectant parents. Am. Compl. ¶ 35, ECF No. 15; NYIC Decl. at ¶ 9.

The NYIC and its constituent organizations have served more than twenty expectant parents whose statuses are targeted by the birthright citizenship ban. NYIC Decl. at ¶ 9. For example, NYIC serves M.B.M., a seven-months expectant mother, who is due May 2025. *Id*. at ¶ 10. M.B.M is a 26-year-old Venezuela national with a pending asylum application. *Id*. The

father of her child, who is also Venezuelan, has TPS through April 2025. *Id*. M.B.M. receives prenatal care through Medicaid. *Id*. She is worried that her U.S.-born child will be denied critical long term  healthcare, denied an unrestricted social security card, and subjected to discrimination if the birthright citizenship ban goes into effect. *Id*.

NYIC also serves O.M., a four-months pregnant mother, who with her partner, are expecting their first U.S.-born child in August 2025. *Id*. at ¶ 11. O.M. and her partner fled violence in their home country with their children. *Id*. They have TPS. *Id*. They are very concerned that their U.S.-born child will be denied United States citizenship which would expose the child to discrimination. Am. Compl. ¶ 35, ECF No. 15. Further, at least two of NYIC's constituent organizations have members who are expectant mothers and fathers who are noncitizens with statuses targeted by the ban. NYIC Decl. at ¶ 9. The birthright citizenship ban harms members of the NYIC's constituent organizations. *Id*. at ¶ 14.

Organizational Plaintiff, Rural & Migrant Ministry ("RMM"), is a grassroots nonprofit organization committed to migrant justice, equity, and civic integration. RMM provides essential material and moral support for migrant and immigrant families. Am. Compl. ¶ 40, ECF No. 15; RMM Decl. at ¶ 4. RMM's membership includes immigrants with temporary immigration

11

status or who are undocumented. RMM Decl. at ¶ 5. RMM's programs include a Rural Women's Assembly, which serves over two hundred women, including expectant mothers and those who plan to grow their families, many of whom have statuses targeted by the ban. Am. Compl. ¶ 43, ECF No. 15; RMM Decl. at ¶ 8.

RMM member K.R, who is a Guatemalan national, is five months pregnant. She and the father of her unborn child have statuses targeted by the birthright citizenship ban. *Id*. at 9. K.R. is worried that her soon-to-be U.S.-born child will be denied the benefits of American citizenship, including critical long term healthcare, and that her child will be rendered stateless. *Id.*

RMM believes that its rural members whose immigration statuses are targeted by the birthright citizenship ban already suffer isolation, systemic injustice, and discrimination and will be subjected to further marginalization by excluding their U.S.-born children from the privileges and immunities of American citizenship. Am. Compl. ¶ 44, ECF No. 15; RMM Decl. at ¶ 6.

J.V., D.F., NYIC, and RMM, (collectively, "Plaintiffs"), through the declaration of Mariana Lopez, provide the following documents to substantiate some of the federal benefits that Plaintiffs' soon-to-be U.S.-born children will be deprived of should they be subjected to the harms imposed by the birthright citizenship ban. *See* Lopez Decl., Ex. B- United States

Passport eligibility; Ex. C- Social Security Number for Children eligibility;
Ex. D- Medicare & Medicaid eligibility; Ex. E- Affordable Care Act
eligibility; and Ex F- Supplemental Nutrition Assistance Program for Non-
Citizens eligibility.

## **ARGUMENT**

### I.    The Factors for Issuance of a Preliminary Injunction

Four factors guide this Court's consideration of Plaintiffs' request for a
preliminary injunction: i) Plaintiffs are likely to succeed on the merits of their
claims; ii) Plaintiffs will suffer irreparable harm absent injunctive relief; iii) the
balance of the equities tips in Plaintiffs' favor; and iv) an injunction is in the
public's interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008);
*Agudath Israel of America v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020).

The likelihood of success and irreparable harm factors "are the most
critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009), while the third and fourth
factors "merge when the Government is the opposing party" as it is here. *Id.* at
435. Additionally, Plaintiffs "must make a 'clear showing' that [they are] 'likely'
to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)
(quoting *Winter*, 555 U.S. at 22).

13

Plaintiffs, who are directly injured by the birthright citizenship ban, which denies their soon-to-be U.S.-born children constitutionally guaranteed birthright citizenship and discriminates against them on account of parental alienage and national origin, easily satisfy the standing and preliminary injunction standards. Accordingly,  Plaintiffs ask this Court to enjoin the birthright citizenship ban.

## II.    Plaintiffs Are Directly Injured by the Birthright Citizenship Ban and Have Standing to Challenge It

Plaintiffs have standing to obtain injunctive relief because the denial of birthright citizenship and the invidious discrimination because of parental alienage and national origin that their soon-to-be U.S.-born children will suffer—both of which violate the Fourteenth Amendment—constitute injury in fact. Plaintiffs face actual or imminent harm because of the birthright citizenship ban. The harms they face are traceable to the Defendants and redressable by an order of this Court enjoining enforcement and implementation of the birthright citizenship ban.

### A. Individual Plaintiffs J.V. and D.F. are Expectant Mothers Directly Injured by the Birthright Citizenship Ban

To demonstrate standing, individual Plaintiffs J.V. and D.F. must show "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by . . . defendant[s]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*,

14

594 U.S. 413, 423 (2021); *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 517 (2d Cir. 2024). To satisfy the first of those elements, injury in fact, Plaintiffs "must show that [they] suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 129 (2d Cir. 2020).

Faced with a virtually identical plaintiff profile—i.e. an expectant mother challenging the birthright citizenship ban—a court recently found that the plaintiff had standing to sue. *See Doe*, 2025 WL 485070, at *6 ("Doe [the plaintiff] has plainly established injury, to herself and her unborn child, that is concrete, imminent, traceable to the EO [birthright citizenship ban], and redressable by the relief she seeks in this lawsuit."); *see also*, *New Hampshire Indonesia Community Support v. Trump*, No. 25-cv-38-JL-TSM, 2025 WL 457609, at *2 n.7, *6 (D.N.H. Feb. 11, 2025) (granting injunctive relief to organizations representing expectant parents challenging the birthright citizenship ban); *State of Washington v. Trump*, No. 25-cv-0127-JCC, 2025 WL 415165, *2 n.3 (W.D. Wash. Feb. 6, 2025) ("Finally, though the Government does not challenge standing for the Individual Plaintiffs . . . the court nevertheless confirms that they have standing to bring this lawsuit. They are pregnant noncitizens whose children will be deprived of United States citizenship if

the Order goes into effect . . . . [T]heir harms are directly traceable to the Order."); *CASA, Inc. v. Trump*, No. DLB-25-201, 2025 WL 408636, at *3 (D. Md. Feb. 5, 2025) (granting five pregnant mothers injunctive relief enjoining the birthright citizenship ban). Here, too, Plaintiffs J.V. and D.F., expectant mothers whose soon-to-be U.S.-born children will be deprived of United States citizenship and attendant benefits because of Executive Order 14160—the birthright citizenship ban—and whose injuries are directly traceable to the Defendants and redressable by this lawsuit, have standing to sue.

Even under an independent assessment of standing, Plaintiffs readily scale the standing requirements. Plaintiffs J.V. and D.F. both reside in the United States, have status targeted by the birthright citizenship ban, and are entering their third trimesters. Under the ban, their children once born will be deprived of citizenship that is guaranteed to them by the United States Constitution. Citizenship has repeatedly been recognized as holding extraordinary value. *See, e.g.*, *Fedorenko v. United States*, 449 U.S. 490, 506–07 (1981) (describing United States citizenship as a "priceless treasure"); *Perez v. Brownwell*, 356 U.S. 44, 64 (1958) (Warren, C. J., dissenting) ("Citizenship is man's basic right for it is nothing less than the right to have rights. Remove this priceless possession and there remains a stateless person[.]"); *Knauer v. United States*, 328 U.S. 654, 658 (1946) (describing citizenship as a "cherished status" that "carries with it the privilege of full

16

participation in the affairs of our society"). The birthright citizenship ban deprives children of the extraordinary value of their constitutionally guaranteed citizenship.

Plaintiffs' children also would be denied the right to live in the United States free from the risk of deportation and to freely leave and return to the United States. *See Padilla v. Kentucky*, 559 U.S. 356, 357 (2010) ("[T]his Court has recognized the importance . . . of 'preserving the. . . right to remain in the United States[.]'") (internal quotations omitted); *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 67 (2001) (stating that children born in the United States are "entitled as of birth to the full protection of the United States, to the absolute right to enter its borders, and to full participation in the political process"). Plaintiffs' U.S.-born children will also suffer other harms set forth at *infra* Section III(C).

Plaintiffs' injuries are caused by the Defendants' conduct and would be redressed by judicial relief. Plaintiffs satisfy the redressability element of Article III standing when the relief sought "would serve to . . . eliminate any effects of" the alleged legal violation that produced the injury in fact. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–06 (1998). Without the birthright citizenship ban, Plaintiffs would not have to worry about citizenship status uncertainty or denials of benefits to their children. This Court's decision to enjoin the birthright citizenship ban would serve to eliminate its effects.

**B. Organizational Plaintiffs NYIC's and RMM's Membership Include Expectant Mothers and Parents Directly Injured by the Birthright Citizenship Ban**

Organizational Plaintiffs, like NYIC and RMM, have associational standing to bring suit on behalf of their members when: "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). NYIC and RMM assert standing as representatives of their members.

Courts have conferred associational standing on entities comprised of constituent member organizations—like NYIC—which have individual members who have been directly impacted by the action challenged. *See, e.g.*, *Perez v. Abbot*, 253 F. Supp. 3d 864, 930 n.82 (W.D. Tex. 2017) (granting associational standing to a Task Force whose member organizations had individual members who had suffered harm); *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 326 (D. Mass. 2013) (granting associational standing to "an umbrella organization" comprising "constituent organizations" whose individual members had suffered harm).

Here, organizational Plaintiff NYIC, whose mission is to strengthen and build the power of immigrant communities, has constituent member organizations whose

18

individual members are expectant mothers and parents who plan to grow their families in the United States and who will be harmed if the birthright citizenship ban is not enjoined. NYIC Decl. at ¶ 9. NYIC and its constituent organizations have served more than twenty expectant parents whose statuses are targeted by the birthright citizenship ban. *Id*. For example, NYIC serves M.B.M., a Venezuelan national who is seven months pregnant. *Id*. at ¶ 10. M.B.M. receives prenatal care through Medicaid and is worried that her soon-to-be U.S-born child will be denied the benefits of American citizenship, including critical long term healthcare. *Id*. NYIC also serves O.M., a four months pregnant mother, who is also concerned that her soon-to-be U.S.-born child will be denied United States citizenship which would expose the child to discrimination. *Id*. at ¶ 11.

These mothers, like individual Plaintiffs J.V. and D.F., who are fearful that their soon-to-be U.S.-born children will be deprived of United States citizenship and attendant benefits because of the birthright citizenship ban have injuries which are directly traceable to the Defendants and redressable by this lawsuit. Because NYIC seeks to have the unconstitutional ban enjoined, it need not have the individual members of its constituent organizations participate in this lawsuit. Given NYIC's mission-related interest in advancing the rights of immigrant communities, that its constituent organizations' members individually have standing to sue, and that it seeks to enjoin an unconstitutional ban that will inure to the benefit of all affected

members equally, NYIC has associational standing to sue.[1] *Accord Abbot*, 253 F. Supp. 3d at 930 n.82.

Organizational Plaintiff RMM too has associational standing to sue. Its mission, driven by its grassroots leadership, is to advance justice for migrant communities. Am. Compl. ¶¶ 40–41, ECF No. 15; RMM Decl. at ¶ 4. RMM's membership includes expectant mothers with statuses targeted by the birthright citizenship ban, like K.R, a Guatemalan national who is five months pregnant. RMM Decl. at ¶ 9. K.R. is worried that her soon-to-be U.S.-born child will be denied the benefits of American citizenship and will be rendered stateless. *Id*. K.R.'s soon-to-be U.S.-born child who, like individual Plaintiffs J.V. and D.F.'s future children, will be deprived of United States citizenship and attendant benefits because of the birthright citizenship ban has injuries that are directly traceable to the Defendants and redressable by this lawsuit. K.R. need not participate in this lawsuit to have her future U.S.-born child's rights vindicated.

---

[1] NYIC also alleges injury to itself in that it has diverted resources away from its critical mission to combat the palpable fear that the birthright citizenship ban has stoked in immigrant communities. Am. Compl. ¶¶ 37–38, ECF No. 15. *See, e.g.*, *Caicedo v. DeSantis*, No. 23-cv-2303-JSS-RMN, 2024 WL 4729160 at *5 (M.D. Fla. Nov. 8, 2024) (finding that organizational plaintiff satisfied diversion of resources requirement for standing despite stringent standard imposed by Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024)).

Because RMM, like NYIC, seeks to advance justice for immigrant communities by bringing this lawsuit, its members individually have standing to sue, and it seeks to enjoin an unconstitutional ban that will inure to the benefit of all affected members equally, RMM has associational standing to sue. *See Warth v. Seldin,* 422 U.S. 490, 515 (1975) (stating that actions for declaratory, injunctive, and other forms of prospective relief have generally been held particularly suited to group representation); *see also Hunt*, 432 U.S. at 344 (granting the organization standing where "neither the . . . claim nor the request for declaratory and injunctive relief require[d] individualized proof and both [we]re thus properly resolved in a group context").

Having established that they have standing—individual and associational—to sue, Plaintiffs demonstrate that they meet the standard requirements for issuance of a preliminary injunction.

### III.    Plaintiffs Easily Satisfy the Requirements for a Preliminary Injunction

#### A. Plaintiffs Are Highly Likely to Succeed on the Merits of their Citizenship Clause Claim

The text of the Citizenship Clause of the Fourteenth Amendment to the United States Constitution is clear. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the States wherein they reside." U.S. CONST. amend. XIV, § 1. United States

citizenship is conferred—as relevant here—by birth on United States soil. *Id.*
There are no exclusions based on ancestry. *Id.* There are no limitations based on
parental status. *Id.* Plaintiffs, whose soon-to-be U.S.-born children will be deprived
of United States birthright citizenship, are highly likely to succeed on the merits of
their claim that the birthright citizenship ban is unconstitutional.

Every court that has considered a challenge to the birthright citizenship ban
agrees that birth on United States soil is determinative of United States citizenship,
not parental alienage, national origin, or immigration status. *See, e.g.*, *Doe*, 2025
WL 485070, at *7 ("[The Citizenship Clause] bestow[s] birthright citizenship
broadly to persons born in the United States. The text is directed at the person born
(or naturalized). It does not mention the person's parents at all, let alone expressly
condition its grant of citizenship on any characteristic of the parents."); *New
Hampshire Indonesia Community Support*, 2025 WL 457609, at *4 (affirming that
the Citizenship Clause "*unambiguously*" grants citizenship "to all babies born on
U.S. soil") (emphasis in original); *CASA,* 2025 WL 408636, at *6 ("[The]
President's novel interpretation of the Citizenship Clause contradicts the plain
language of the Fourteenth Amendment and conflicts with 125-year-old binding
Supreme Court precedent.").

These courts have reached the same unmistakable conclusion for several
reasons—the well-established United States tradition of citizenship by place of

birth, passage of the Citizenship Clause, and an unbroken century-old chain of precedents. By the time of the Declaration of Independence, there was general consensus among United States courts that the principle of *jus soli*—birth within a nation's territory—conferred citizenship in the United States. *See, e.g.*, Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 GEO. L.J. 405, 413, 416 (2020). The principle of *jus soli* prevailed irrespective of parental alienage, national origin, or immigration status. *Id*. at 414. Thus, for example, the U.S.-born daughters of an Irish citizen were "native born citizens of the United States." *Id.* at 415.

The Supreme Court's wrongly decided *Dred Scott v. Sanford* broke the *jus soli* tradition by denying people of African descent birthright citizenship. 60 U.S. 393, 404–05 (1857). But following the Civil War, the Fourteenth Amendment cured Dred Scott's defect enshrining birthright citizenship without regard to race, color, creed, alienage, national origin, or immigration status. U.S. CONST. amend. XIV, § 1.

Thirty years after ratification, the Citizenship Clause was construed in *Wong Kim Ark*. Erasing any doubt that a parent's alienage or national origin was immaterial to birthright citizenship under the Citizenship Clause, the Supreme Court held that the U.S.-born child of Chinese nationals, who were themselves

23

ineligible for citizenship, was a United States citizen. 169 U.S. at 688.[2] The *Wong Kim Ark* Court confirmed that "citizenship by birth is established by the mere fact of birth under the circumstances defined in the constitution." *Id.* at 702. And as the *Doe* court recently explained, birthright citizenship irrespective of parental alienage was repeatedly emphasized in *Wong Kim Ark*. *See Doe*, 2025 WL 485070, at *8. The duration of the parent's presence in the United States was not assessed. *Id.* Thus, "*Wong Kim Ark* leaves no room for the [distorted reinterpretation] of the Citizenship Clause" advanced by Defendants. *Id.*

Since *Wong Kim Ark*, numerous courts have resoundingly rejected the notion that parental alienage, national origin, or immigration status influences a U.S.-born child's citizenship. *See*, *e.g.*, *Doe*, 2025 WL 485070, at *9–10 (collecting cases); *CASA*, 2025 WL 408636, at *14 (discussing post-*Wong Kim Ark* cases); *see also Acosta v. Gaffney*, 558 F.2d 1153, 1158 (3d Cir. 1977) (recognizing that a 22-month-old infant born in the United States whose Colombian parents faced deportation was a United States citizen). Every decided case has found the birthright citizenship ban unconstitutional.

---

[2] The *Wong Kim Ark* Court noted several exceptions to birthright citizenship that are inapplicable here: "children of foreign sovereigns or their ministers . . . or enemies within and during a hostile occupation of part our territory [and at the time] . . . children of members of the Indian tribes owing direct allegiance to their several tribes." 169 U.S. at 693. Members of Indian tribes were granted birthright citizenship in 1924. 8 U.S.C. § 1401(b).

As in every decided case in which the ban has been challenged, Defendants here have no basis in law—the plain text of the Citizenship Clause or precedents—to justify depriving Plaintiffs' soon-to-be U.S.-born children constitutionally guaranteed birthright citizenship and its attendant benefits. As such, Plaintiffs are highly likely to succeed on the merits of their Citizenship Clause claim. *Accord CASA*, 2025 WL 408636, at *14 ("The Executive Order flouts the plain language of the Fourteenth Amendment to the United States Constitution, conflicts with binding Supreme Court precedent, and runs counter to our nation's 250-year history of citizenship by birth. The plaintiffs have shown an extremely strong likelihood that they will succeed on the merits of their constitutional claim.").[3] This Court should enjoin the birthright citizenship ban.[4]

### B. Plaintiffs Are Highly Likely to Succeed on the Merits of their Equal Protection Clause Claim

The Fourteenth Amendment's Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Under the Equal Protection Clause, a government

---

[3] Plaintiffs also are highly likely to succeed on the merits of their claim that the birthright citizenship ban violates 8 U.S.C. § 1401(a) because the statute is coterminous with the Citizenship Clause. *See Doe*, 2025 WL 485070, at *11 ("[T]he statute [8 U.S.C. § 1401(a)] supports a related but distinct claim upon which the plaintiffs are likely to succeed.").

[4] On March 13, 2025, Defendants sought a stay in the Supreme Court of the injunctions entered in *CASA v. Trump*, *New Jersey v. Trump*, and *State of Washington v. Trump*. *See Trump, et al. v. New Jersey, et al.*, Application No. 24A886 (U.S. Supreme Court, Mar. 13, 2025).

classification that "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class" must satisfy strict judicial scrutiny. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Strict scrutiny requires the challenged government action to be narrowly tailored to serve a compelling state interest. *See*, *e.g.*, *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022).[5] Plaintiffs are highly likely to succeed on the merits of their Equal Protection Clause claim because Defendants 1) abridge Plaintiffs' soon-to-be U.S.-born children's fundamental right and 2) subject these children to differential treatment on account of alienage and national origin.[6]

First, it is well settled that fundamental rights are rights guaranteed—like birthright citizenship—by the United States Constitution. *See,* e.g., *Des Moines Midwife Collective v. Iowa Health Facilities Council*, 735 F. Supp. 3d 1085, 1091 (S.D. Iowa 2024) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). They are rights—like birthright citizenship—that are "deeply rooted in this Nation's history and tradition." *Leebaert v. Huntington*, 332 F.3d 134, 140 (2d Cir. 2003); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963) ("Citizenship is a most

---

[5] Strict scrutiny also applies where a facially neutral policy is motivated by discriminatory purpose and has a disparate impact. *See, e.g.*, *Hayden v. Nassau County*, 180 F.3d 42, 48 (2d Cir. 1999).

[6] *See Anderson v. Conboy*, 156 F.3d 167, 171 (2d Cir. 1998) (noting that "alienage discrimination" entails discrimination based on citizenship); *see also Vaughn v. City of New York*, No. 06-CV-6547, 2010 WL 2076926, at *10 (E.D.N.Y. May 24, 2010) (defining "discrimination on the basis of alienage" as discrimination based on "non-U.S. citizenship").

precious right. It is expressly guaranteed by the Fourteenth Amendment to the Constitution, which speaks in the most positive terms."). "We have long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." *Harper v. Virginia Board of Elections*, 383 U.S. 663, 670 (1966); *see also Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) ("When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.").

As demonstrated in *supra* Section III(A), Defendants unlawfully infringe Plaintiffs' soon-to-be U.S.-born children's right to birthright citizenship guaranteed to them by the Citizenship Clause of the Fourteenth Amendment to the United States Constitution. That infringement is subject to strict scrutiny under the Equal Protection Clause—an exacting standard that Defendants cannot meet. Defendants offer no compelling interests for arbitrarily upending a 250-year tradition of United States citizenship by place of birth.

Second, Defendants also violate the Equal Protection Clause by depriving Plaintiffs' soon-to-be U.S.-born children of birthright citizenship on account of parental alienage and national origin. "[W]hen a [policy] classifies by race, alienage, or national origin . . . factors [that] are so seldom relevant to the achievement of any

legitimate state interest . . . [and] are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others . . . [such] laws are subjected to strict scrutiny and will be sustained only if they are [narrowly] tailored to serve a compelling state interest." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (internal citations omitted); *see also Dandamudi v. Tisch*, 686 F.3d 66, 77 (2d Cir. 2012) ("[T]he Fourteenth Amendment is written broadly as protecting *all persons* and that aliens necessarily constitute a discrete and insular minority because of their impotence in the political process, and the long history of invidious discrimination against them.") (internal citation and quotations omitted) (emphasis in original).

Nearly four decades before *City of Cleburne*, in *Oyama v. California*, the Supreme Court cautioned against "[d]istinctions between citizens solely because of their ancestry [which] are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality," 332 U.S. 633, 646 (1948) (internal citation omitted). There, keeping with the tenets of the Equal Protection Clause, the Court declared unlawful a statute that treated a U.S.-born child to "be subordinated merely because of his father's country of origin." *Id.* at 647.

Here, it is no less odious to deny birthright citizenship to Plaintiffs' soon-to-be U.S.-born children because of parental alienage than it was to deny the U.S.-born minor in *Oyama* a benefit because of his father's Japanese ancestry. Further, here,

28

as in *Oyama*, Defendants draw arbitrary distinctions by classifying the U.S.-born children of some noncitizens as worthy of United States birthright citizenship while depriving the U.S.-born children of Plaintiffs—who are also noncitizens—of the same benefit. Such illogical differentiation, "as between the citizen children of a Chinese or English father and the citizen children of a Japanese father . . . is discrimination." *Oyama*, 332 U.S. at 645. The same inescapable conclusion is warranted here.

*Oyama* predates the strict scrutiny test, but courts routinely apply it and have found alienage or national origin discrimination, whether perpetrated against a noncitizen herself or because of the noncitizen's relationship to a U.S.-born citizen, unlawful under the Equal Protection Clause. *See*, *e.g.*, *Graham v. Richardson*, 403 U.S. 365, 372 (1971) (subjecting denial of welfare benefits on the basis of alienage to strict scrutiny); *Dandamudi*, 686 F.3d at 70 ("Applying strict scrutiny . . . and finding, as the state concedes, that there are no compelling reasons for the statute's discrimination based on alienage, we hold the New York statute to be unconstitutional"); *Lewis v. Thompson*, 252 F.3d. 567, 591 (2d Cir. 2001) (invalidating a statute denying healthcare benefit to future U.S.-born children because of the undocumented status of their mothers); *Deide v. Day*, 676 F. Supp. 3d 196, 222, 225 (S.D.N.Y. 2023) (subjecting policy denying housing to migrant and asylum-seekers to strict scrutiny and declaring the policy unconstitutional);

29

*Intercommunity Justice and Peace Center v. Registrar, Ohio Bureau of Motor Vehicles*, 440 F.Supp.3d 877, 896 (S.D. Oh. 2020) (declaring policy denying driver's licenses to U.S.-born children because of parental national origin unconstitutional under the Equal Protection Clause).

Because the Equal Protection Clause applies with equal force to the federal government, Defendants' birthright citizenship ban discriminates against Plaintiffs' soon-to-be U.S.-born children on account of parental alienage and national origin.[7] The ban violates the Equal Protection Clause by making arbitrary "[d]istinctions between citizens solely because of ancestry [and alienage]" *Oyama*, 332 U.S. at 646 (internal quotations omitted), thereby imposing separate and unequal treatment. Accordingly, Plaintiffs are highly likely to succeed on the merits of their Equal Protection Clause claim.[8]

---

[7] It is firmly established that the principles of equal protection also bind the federal government, through the Due Process Clause of the Fifth Amendment. U.S. CONST. amend. V. *See, e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *U.S. v. Paradise*, 480 U.S. 149, 166 n.16 (1987) (reiterating that the Fifth Amendment contains an "equal protection guarantee" that is "coextensive with that of the Fourteenth [Amendment] . . .").

[8] The individual Plaintiffs—the expectant mothers—can avail themselves of the protections of the Equal Protection Clause. The Equal Protection Clause broadly affords protection to all persons, including immigrants with temporary status or who are undocumented and who suffer unconstitutional differential treatment because of alienage or national origin. This Court's decision in *Deide* suggests that immigrants with temporary or undocumented status are entitled to heightened judicial solicitude. 676 F. Supp. 3d at 225. But for purposes of this preliminary injunction, Plaintiffs focus their Equal Protection Clause claim on behalf of Plaintiffs' soon-to-be U.S.-born children.

30

### C. Plaintiffs will Suffer Irreparable Harm

A "presumption of irreparable injury . . . flows from a violation of constitutional rights." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (denial of constitutional rights "unquestionably constitutes irreparable injury"); *Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."). "Deprivation of citizenship . . . has grave practical consequences." *Mendoza-Martinez*, 372 U.S. at 160. Denying children their birthright citizenship deprives them of "the priceless benefits that derive from that status" and is "more serious than a taking of one's property, or the imposition of a fine or other penalty." *Schneiderman v. U.S.*, 320 U.S. 118, 122 (1943).

This Court has held that an alleged violation of a plaintiff's Fourteenth Amendment rights "is sufficient to establish irreparable harm as a matter of law." *Averhart v. Annucci*, No. 21-CV-383 (NSR), 2021 WL 2383556, at *9 (S.D.N.Y. June 10, 2021). Depriving Plaintiffs' soon-to-be U.S.-born children birthright citizenship robs them of "the full protection of the United States, . . . the absolute right to enter its borders, and . . . full participation in the political process," fundamental rights to which these children are entitled by virtue of their birth in the United States. *Tuan Anh Nguyen*, 533 U.S. at 67. It subjects families to a "fate of

ever-increasing fear and distress[,]" where the threats of denial of benefits, deportation, family separations, and statelessness loom large. *Trop v. Dulles*, 356 U.S. 86, 102 (1958). No adequate legal remedy exists for the total destruction of the individual's status in organized society. *Id.* at 101.

Plaintiffs' soon-to-be U.S.-born children also risk being stateless, which is recognized as a perilous condition. *Trop*, 356 U.S. at 102 (characterizing statelessness as "a condition deplored in the international community of democracies"). By denying them citizenship, the birthright citizenship ban would also foreclose these children from participating in numerous government assistance programs, especially at the federal level, which would otherwise be available to them. For example, government assistance programs including Supplemental Nutrition Assistance Program, the Affordable Care Act, and Medicaid are available to citizen children whose parents are noncitizens. Plaintiffs' children will be denied these benefits.

Courts that have decided challenges to the birthright citizenship ban agree that it causes irreparable harm to Plaintiffs' soon-to-be U.S.-born children. *See, e.g.*, *Doe* 2025 WL 485070, at *13 ("The loss of birthright citizenship—even if temporary, and later restored at the conclusion of litigation—has cascading effects that would cut across a young child's life (and the life of that child's family), very likely leaving permanent scars. The record before the Court establishes that

32

children born without a recognized or lawful status face barriers to accessing critical healthcare, among other services, along with the threat of removal to countries they have never lived in and possible family separation. That is irreparable harm."). Plaintiffs' soon-to-be U.S. born children will suffer irreparable harm absent an injunction enjoining Defendants from implementing and enforcing the unconstitutional birthright citizenship ban.

### D. The Equities Overwhelmingly Favor an Injunction

Where the government is a party—as here—the balance of the equities and the public interest factors merge. *See Nken*, 556 U.S. at 435. The federal government has no legitimate public interest in enforcing an unconstitutional birthright citizenship ban. No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal. *Agudath Israel of Am. v. Cuomo*, 983 F.3d at 637. The ban upends over one hundred years of constitutional precedent. Enjoining it would maintain the status quo and stem the violation of constitutional rights. "[T]he public interest is well served by the correction of . . . constitutional harm." *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021).

The balance of hardships also favors Plaintiffs' position. Because of the birthright citizenship ban, innumerable children born in the United States will grow up without legal status, constantly at risk of removal or existing in statelessness.

They will be denied benefits that they would be entitled to if they were simply born before February 19, 2025 (the effective date of the act). They will be unable to work, vote, travel, and enjoy the full protection of the United States. Defendants cannot adequately allege the suffering of any hardships. Birthright citizenship has been recognized in the United States since its founding. If the ban is enjoined, Defendants will simply have to adhere to centuries old status quo and avoid further constitutional violations. Thus, the balance of the equities and the public interest both strongly favor an injunction. This Court should enjoin the birthright citizenship ban.

## <u>CONCLUSION</u>

For all of the reasons stated, Plaintiffs respectfully ask that this Court enjoin Executive Order 14160—the birthright citizenship ban.

Dated this 21ˢᵗ day of March, 2025

Respectfully submitted,

By: /s/ Francisca D. Fajana
Francisca D. Fajana
Cesar Z. Ruiz
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.219.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org

34

## <u>CERTIFICATION OF WORD COUNT COMPLIANCE</u>

Case Caption:      *NYIC, et al. v. Trump, et al.*

Case No:             1:25-cv-01309


As required by Rule 7.1(c ) of the Joint Local Rules, S.D.N.Y. and

E.D.N.Y., I certify the document contains 7,050 words excluding the parts of the

document that are excepted by the rule.

I declare under penalty of perjury that the foregoing is true and accurate.


Dated: March 21, 2025                                          */s/ Francisca D. Fajana*

                                                                            Francisca D. Fajana

35