# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| New York Immigration Coalition, *et al.*,<br><br>　　*Plaintiffs*,<br><br>　　　v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity, *et al*.,<br><br>　　*Defendants*. | **CIVIL ACTION NO: 25-cv-01309-MMG** |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
# THEIR MOTION FOR CLASS CERTIFICATION

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

PROCEDURAL HISTORY .................................................................................2

FACTUAL BACKGROUND AND NAMED PLAINITIFFS .............................3

ARGUMENT .......................................................................................................8

    A.  **The Standard for Certifying a Class Under Rule 23** .................................8

    B.  **Plaintiffs Readily Satisfy Rule 23** ...........................................................10

        a.  The class is so numerous that joinder of all members is impracticable.....10

        b.  There are questions of law or fact common to the class ...........................12

        c.  The claims or defenses of the representative parties are typical of the claims or defenses of the class ........................................................................16

        d.  The representative parties will fairly and adequately protect the interests of the class ...............................................................................................................17

    C.  **The Proposed Class is Ascertainable** .......................................................20

    D.  **This Action Meets the Requirements for Certification Under Rule 23(b)(2)** ......................................................................................................21

CONCLUSION ..................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.A.R.P. v. Trump*, 145 S. Ct. 1364 (2025)............................................................22

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)..................................... 18, 21

*Ansari v. N.Y. Univ.* 179 F.R.D. 112 (S.D.N.Y. 1998)..........................................10

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409 (S.D.N.Y.

   2012)................................................................................................. 9, 12, 20

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)..........10

*Damasia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)..........................13

*German v. Fed. Home Loan Mortg. Corp.*, 168 F.R.D. 145 (S.D.N.Y. 1996)........19

*Hill v. City of N.Y.*, 136 F. Supp. 3d 304 (E.D.N.Y. 2015)....................................16

*Houser v. Pritzker*, 28 F. Supp. 3d 222 (S.D.N.Y. 2014)........................................9

*In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017)................................................8, 9

*Ligon v. City of New York*, No. 12-civ-2274, 288 F.R.D. 72 (S.D.N.Y. 2013).......19

*Marisol A. v. Guilian*, 126 F.3d 372 (2d Cir. 1997)................................................9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)..............................................10

*Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314

   (S.D.N.Y. 2004).....................................................................................18

*Nicholson v. Williams*, 205 F.R.D. 92 (E.D.N.Y. 2001)............................ 15, 16, 17

*Orellana v. County of Suffolk*, No. 17-cv-4267 (WFK) (ARL), 2022 WL 22842064

    (E.D.N.Y. 2022). ................................................................................19

*Pa. Pub. Sch. Empl. Ret. Syst. v. Morgan Stanley & Co. Inc.*, 772 F3d 111 (2d Cir.

    2014). ................................................................................12

*People United for Children, Inc. v. City of New York*, No. 99-civ-0648 (RJW), 214

    F.R.D. 252 (S.D.N.Y. 2003)................................................................................19

*Raymond v. Rowland*, 220 F.R.D. 172 (D. Conn. 2004). ........................................13

*Robinson v. New York City Transit Authority*, 19-cv-1404 (AT) (BCM), 2020 WL

    5884055 (S.D.N.Y. 2020)................................................................................22

*S.M. by and through Mendoza v. Casey,* 23-cv-01499-BAJ-SDJ, 2025 WL 368547

    (M.D. La. 2025). ................................................................................20

*See L.V.M. v. Llyod*, 318 F. Supp. 3d 601 (S.D.N.Y. 2018)....................... 12, 15, 22

*Shephard v. Rhea*, No. 12-cv-7220, 2014 WL 5801415 (S.D.N.Y. 2014).............15

*Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012).............................18

*Toure v. Cert. Parking Sys. of N.Y.*, No. 05-cv-5237, 2007 WL 2872455 (S.D.N.Y.

    2007)................................................................................13

*Trump v. CASA, Inc.*, __ U.S.__, 2025 WL 1773631 (June 27, 2025)...............1, 22

*Vincent v. Money Store*, 304 F.R.D. 446 (S.D.N.Y. 2015)......................................17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...................................... 14, 21

*Westchester Independent Living Center, Inc. v. State University of New York, Purchase College*, 331 F.R.D. 279 (S.D.N.Y. 2019). .................................. passim

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 706(2)(B)...............................................14

Nationality Act, 8 U.S.C. § 1401(a). .........................................................................2

**Other Authorities**

Executive Order 14160, 90 F.R. 8449 (Jan. 20, 2025). ........................................2, 4

Jeffrey S. Passel, et al., *Number of U.S.-Born Babies with Unauthorized Immigrant Parents Has Fallen Since 2007*, PEW RSCH. CTR.(Nov. 1, 2018), https://www.pewresearch.org/short-reads/2018/11/01/the-number-of-u-s-born-babies-with-unauthorized-immigrant-parents-has-fallen-since-2007/.................10

**Rules**

Fed. R. Civ. P. 23 ............................................................................. passim

## **INTRODUCTION**

Birthright citizenship "is protected . . . for children of undocumented persons [and] descendants of Mayflower passengers" alike.[1] The Citizenship Clause of the Fourteenth Amendment to the United States Constitution has guaranteed birthright citizenship to any person, regardless of parental alienage, nationality, or race, born on United States soil for 157 years. Because the text of the Citizenship Clause is so plain and unambiguous, every court that has examined Executive Order 14160, challenged here, has declared it unconstitutional. The Executive Order also offends the equality principle under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs move, pursuant to Rule 23, to certify a class of individuals who have been subjected to or will be subjected to Executive Order 14160, which purports to ban birthright citizenship for any person born in the United States on or after February 19, 2025, whose mother has temporary immigration status or is undocumented and whose father is not a permanent resident alien. Plaintiffs seek class certification of persons targeted by the birthright citizenship-banning Executive Order to stop Defendants' unlawful and discriminatory Executive Order.

---

[1] *See Trump v. CASA, Inc.*, __ U.S.__, 2025 WL 1773631, at *26 (June 27, 2025) (citation omitted) (Sotomayor J., dissenting).

1

Plaintiffs meet the requirements for class certification as the putative class they seek to represent is in the thousands, such that joinder is impracticable; their claims—the birthright citizenship ban's unconstitutionality and federal statutory violations—are common to and typical of the class claims; and they and their counsel will adequately represent the putative class. Plaintiffs ask this Court, as they requested in their supplemental brief in further support of their motion for a preliminary injunction, to issue provisional relief to the putative class pending class certification.

## PROCEDURAL HISTORY

On February 13, 2025, six days before the birthright citizenship-banning Executive Order, was to take effect, Plaintiffs—an individual and an organization—filed their Complaint alleging that Executive Order 14160, 90 F.R. 8449 (Jan. 20, 2025), violated the Citizenship and Equal Protection Clauses of the Fourteenth Amendment and the Nationality Act, 8 U.S.C. § 1401(a). Compl., ECF No. 1. On March 5, 2025, the original Plaintiffs, joined by another individual and an organization, filed an Amended Complaint. Am. Compl., ECF No. 15.

On March 21, 2025, eight days after most of the Defendants filed their applications in the Supreme Court to partially stay nationwide injunctions issued in three cases in other jurisdictions, Plaintiffs moved for a Preliminary Injunction. Pls.' Mot. Prelim. Inj., ECF No. 19; Mem. Law Supp. Pls.' Mot. Prelim. Inj., ECF

2

No. 20. Defendants sought multiple extensions of time to respond to Plaintiffs'

motion for a Preliminary Injunction which this Court granted. ECF Nos. 29, 32, 34.

Defendants also requested extensions of time to file an Answer, which the Court

also granted. ECF Nos. 37, 39.

On April 11, 2025, Defendants sought a stay of proceedings in this litigation.

Defs.' Mot. Stay, ECF No. 30; Defs.' Mem. Law Supp. Mot. Stay, ECF No. 31.

Plaintiffs filed their opposition on April 24, 2025. Pls.' Mem. Law Opp. Defs.'

Mot. Stay, ECF No. 35. On June 27, 2025, the same day the Supreme Court ruled

on most of the Defendants' applications for partial stay of the nationwide

injunctions, the Court issued an order regarding Plaintiffs' Preliminary Injunction

motion. ECF No. 41. On July 2, 2025, Plaintiffs informed the Court of their

intention to file supplemental briefing in support of their Preliminary Injunction

motion and to file an Amended Complaint. Pls.' Letter to Judge Garnett, ECF No.

42. The same day, the Court set an expedited briefing schedule on Plaintiffs'

Preliminary Injunction motion. Order on Expedited Br., ECF No. 43.

## FACTUAL BACKGROUND AND NAMED PLAINITIFFS

Executive Order 14160 directs federal agencies not to "issue documents

recognizing United States citizenship, or accept documents issued by State, local,

or other governments or authorities purporting to recognize United States

citizenship" to persons born in the United States whose a) mother was unlawfully

present in the United States at the time of said person's birth or b) mother's presence was lawful but temporary, and the father of said person was not a United States citizen or lawful permanent resident. Exec. Order No. 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025) (hereinafter, "birthright citizenship-banning Executive Order" or "birthright citizenship ban").

By its term, section 2 of the birthright citizenship-banning Executive Order was to become effective on February 19, 2025. Defendants now have a thirty-day grace period to ramp up implementation and enforcement because the Supreme Court's June 27, 2025, ruling partially staying three nationwide injunctions said so.[2] Individual Plaintiffs J.V. and D.F., who originally brought this litigation when they were expectant parents and who have since had their U.S.-born children, remain injured by the birthright citizenship-banning Executive Order. Second Am. Compl., ¶¶ 29–31; 32–33.

**Individual Plaintiff J.V.** has not obtained a United States citizenship-affirming passport for her child born after February 19, 2025—the effective date of the birthright citizenship-banning Executive Order. J.V. Decl. ¶ 7[3]. J.V. is worried that the full benefits of American citizenship will not be conferred on her U.S.-

---

[2] *Id.* at 15 ("Consistent with the [government's] representation, § 2 of the Executive Order shall not take effect until 30 days after the date of this opinion.").

[3] All declarations referenced here accompany Plaintiffs' memorandum of law in further support of their motion for a preliminary injunction filed July 9, 2025. The declarations support both the supplemental preliminary injunction brief and this memorandum of law in support of Plaintiffs' motion for class certification.

born child. *Id.* at ¶¶ 8, 14. J.V. is willing to serve as a class representative because she believes it is important to fight for her child and other children and families who are similarly situated. *Id.* at ¶ 17.

Individual Plaintiff D.F. is also fearful that her U.S.-born child will not receive the full benefits of American citizenship. D.F. Decl. ¶ 8. D.F. is yet to obtain a birth certificate or a United States citizenship-affirming passport.  *Id.* at ¶ 7. D.F. is also willing to serve as a class representative because she, too, believes it is important to stand up for her child and other children and families who are similarly situated. *Id.* at ¶ 20. Both D.F. and J.V are fearful about the future of their U.S.-born children.

Newly added Plaintiff M.P. is also harmed by the birthright citizenship-banning Executive Order. Second Am. Compl. ¶¶ 34–35. M.P. is a Russian national whose immigration status is targeted by the birthright citizenship-banning Executive Order. M.P. Decl. ¶ 4. She is six months pregnant. *Id.* at ¶ 3. She fears that her future U.S.-born child will be denied the right to obtain a United States passport, a birth certificate, and when the child is older, the right to educational, health and other benefits guaranteed to American citizens. *Id.* at ¶ 6. M.P., too, is willing to serve as a class representative because she believes it is important to stand up for her child and other children and families who are similarly situated. *Id.* at ¶ 8.

5

**Organizational Plaintiff New York Immigration Coalition ("NYIC")**

represents the interests of its constituents (the individual members of its member

organizations) who are injured by the birthright citizenship-banning Executive

Order. Second Am. Compl. ¶¶ 36–42. NYIC, a statewide, member-led coalition of

over 170 immigrant and refugee-rights groups, works to strengthen and build its

members' power, organize and educate immigrant communities and use the

collective voice of its constituents to advocate for opportunity and justice. Second

Am. Compl. ¶ 36. NYIC also directly serves immigrants and in the wake of the

birthright citizenship ban has served many expectant parents. NYIC Decl. ¶¶ 9-13.

One such parent is O.M., who is expecting her first U.S.-born child in August

2025. *Id.* at ¶ 10. She is very concerned that her U.S.-born child will be denied

United States citizenship which would expose the child to discrimination. *Id.*

Further, at least two of NYIC's member organizations have individual

members who are noncitizen expectant mothers and fathers with immigration

statuses targeted by the birthright citizenship-banning Executive Order. *Id.* ¶¶ 12-

13. 5. One organization, Afghans for a Better Tomorrow ("AFBT"), describes the

plight of twelve members—some of whom have had children since the original

effective date of the birthright citizenship-banning Executive Order—who are

fearful of the future for their current U.S.-born and future unborn children. NYIC

Decl. ¶ 12; AFBT Decl. ¶ 11. Another NYIC member organization—La

6

Colmena—also explains that six of its members also worry about the denial of American citizenship and its attendant benefits to their current U.S-born and future unborn children. NYIC Decl. ¶ 13; La Colmena Decl. ¶ 13. These members have immigration statuses targeted by the birthright citizenship-banning Executive Order. *Id.*

Because the birthright citizenship-banning Executive Order harms individual members of NYIC's member organizations, NYIC is willing to serve as a class representative. NYIC Decl. ¶ 17. NYIC believes that it is institutionally important for it to fight for its impacted constituents and on behalf of other children and families who are similarly situated. *Id.*

**Organizational Plaintiff Rural & Migrant Ministry ("RMM"),** is also willing to serve as a class representative. RMM Decl. ¶ 10. It too believes that it is institutionally important for it to fight for its impacted members and on behalf of other children and families who are similarly situated. *Id.* RMM is a grassroots nonprofit organization committed to migrant justice, equity, and civic integration and provides essential material and moral support for migrant and immigrant families. Second Am. Compl. ¶¶ 43–47.

RMM's membership includes immigrants with temporary immigration status or who are undocumented. RMM Decl. ¶ 5. RMM member K.R, is eight months pregnant. *Id.* at ¶ 9. K.R. is worried that her soon-to-be U.S.-born child will

be denied the benefits of American citizenship, including critical long-term

healthcare, and that her child will be rendered stateless. *Id.*

The individual and organizational Plaintiffs—collectively, Named

Plaintiffs—seek to certify a proposed class defined as:

> All persons born in the United States on or after February 19, 2025, who
> have been or will be denied birthright citizenship because their parents'
> immigration statuses are the subject of Executive Order 14160.

## ARGUMENT

### A. The Standard for Certifying a Class Under Rule 23

Under Fed. R. Civ. P. 23(a), Plaintiffs must satisfy four factors to obtain

class certification:

> 1) the class is so numerous that joinder of all members is
> impracticable;
> 2) there are questions of law or fact common to the class;
> 3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and
> 4) the representative parties will fairly and adequately protect the
> interests of the class.

> Fed. R. Civ. P. 23(a).

In this circuit, Plaintiffs must also meet the ascertainability requirement. *See*

*In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("Rule 23 contains an

implicit threshold requirement that members of a proposed class be readily

identifiable.") (citations omitted). Ascertainability "requires only that a class be

defined using objective criteria that establish a membership with definite boundaries." *Id.*

Plaintiffs' proposed class must then fit within one of Rule 23(b)'s subsections. Rule 23(b)(2), under which Plaintiffs seek class certification, authorizes class action where the "party opposing the class has acted or refused to act on grounds that apply generally to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification under Rule 23(b)(2) is especially favored in civil rights litigation. *See, e.g.*, *Westchester Independent Living Center, Inc. v. State University of New York, Purchase College*, 331 F.R.D. 279, 301 (S.D.N.Y. 2019) (granting class certification in civil rights litigation); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 254 (S.D.N.Y. 2014) (granting class certification motion in employment discrimination action); *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 420 (S.D.N.Y. 2012) (certifying class in disability rights litigation).

Rule 23's requirements are to be liberally construed. *See, e.g.*, *Marisol A. v. Guilian*, 126 F.3d 372, 377 (2d Cir. 1997) ("Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility [.]") (citation and internal quotation marks omitted). At the Rule 23 stage, the court's task is "not . . . to resolve this dispute," but rather to decide "whether the

9

constituent issues that bear on [Defendants'] ultimate liability are provable in common." *Myers v. Hertz Corp.*, 624 F.3d 537, 543, 550 (2d Cir. 2010).

### B. Plaintiffs Readily Satisfy Rule 23

a. <u>The class is so numerous that joinder of all members is impracticable</u>

Named Plaintiffs' proposed "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is firmly established that "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Ansari v. N.Y. Univ.* 179 F.R.D. 112, 114 (S.D.N.Y. 1998). ("Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members.") (citation omitted).

Here, Plaintiffs' proposed class membership is in the thousands. According to a Pew Research Center study, each year, about 250,000 children are born in the United States to undocumented immigrants. *See* Jeffrey S. Passel, et al., *Number of U.S.-Born Babies with Unauthorized Immigrant Parents Has Fallen Since 2007*, PEW RSCH. CTR.(Nov. 1, 2018), https://www.pewresearch.org/short-reads/2018/11/01/the-number-of-u-s-born-babies-with-unauthorized-immigrant-parents-has-fallen-since-2007/.[4]

---

[4] Jennifer Van Hook et al., *Repealing Birthright Citizenship Would Significantly Increase the Size of the U.S. Unauthorized Population*, MIGRATION POLICY INSTITUTE (May 2025) (an

In New York state alone, which ranks fourth among states with the highest proportion of undocumented immigrants, extrapolating from the annual birth estimates, nearly eighteen thousand children are born in the state to immigrant parents targeted by the birthright citizenship-banning Executive Order.[5] Courts frequently rely on reasonable inferences drawn from statistical data to establish numerosity. *See Westchester Indep. Living Ctr.,* 331 F.R.D. at 289 (collecting cases). There is no serious dispute here that Plaintiffs' proposed class easily satisfies the numerosity requirement. *Id.*

Although the sheer size of the proposed class scales the numerosity test, additional considerations counsel in favor of finding numerosity. The numerosity test is not strictly mathematical. Courts "take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pa. Pub.*

---

average of 222,000 children will be born each year to [parents who lack U.S. citizenship or lawful permanent residence] over the next 50 years."

[5] For data on states with the highest share of the undocumented population, *see e.g.* Jeffrey Passel & Jens Manuel Krogstad, *What We Know About Unauthorized Immigrants Living in the U.S.*, PEW RSCH. CTR. (July 22, 2024), https://www.pewresearch.org/short-reads/2024/07/22/what-we-know-about-unauthorized-immigrants-living-in-the-us/#.

*Sch. Empl. Ret. Syst. v. Morgan Stanley & Co. Inc.*, 772 F3d 111, 120 (2d Cir. 2014).

Here, joinder of putative class members is impracticable because they are geographically dispersed throughout the state and country, are likely of low-income status, and do not possess the resources necessary to litigate individual cases. Joinder is also impracticable as the proposed class will fluctuate each month as new children are born in the United States to parents with immigration status targeting by the birthright citizenship ban. Additionally, joinder is impracticable because many class members are unaware of their legal rights and their immigration status, economic status, and, for many, language barriers hamper their ability to vindicate their rights, making a class action the superior and most economical means of resolving the claims of the class. *See L.V.M. v. Llyod*, 318 F. Supp. 3d 601, 616 n.9 (S.D.N.Y. 2018) ("[C]lass action would be superior to joinder . . . because all plaintiffs challenge a policy that affects them uniformly; the putative class members do not have sufficient means to bring lawsuits; and the requested injunctive relief would impact all future class members.").

b. <u>There are questions of law or fact common to the class</u>

Named Plaintiffs' class claims present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "'is not demanding.'" *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 418 (quoting *Raymond v. Rowland*,

220 F.R.D. 172, 179 (D. Conn. 2004)). It means that Plaintiffs must "identify some unifying thread among the members' claims that warrant class treatment." *Damasia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (internal quotations marks omitted). A "minimum of one issue common to all class members" will suffice. *Toure v. Cert. Parking Sys. of N.Y.*, No. 05-cv-5237, 2007 WL 2872455, at *6 (S.D.N.Y. 2007) (internal quotation marks omitted).

At bottom, Plaintiffs' Second Amended Complaint alleges that Executive Order 14160 banning birthright citizenship to U.S.-born children whose parents have temporary status or are undocumented unconstitutionally abridges rights afforded to them under the Fourteenth Amendment to the United States Constitution. Second Am. Compl. ¶ 66.

Plaintiffs' Second Amended Complaint raises at least four questions of law common to the class:

    i)   Whether Defendants' policy and practice of categorically denying United States citizenship to U.S.-born children whose parents' immigration statuses are targeted by the birthright citizenship Executive Order contravenes the Citizenship Clause of the Fourteenth Amendment to the United States Constitution;

    ii)   Whether Defendants' policy and practice of categorically denying United States citizenship to U.S.-born children whose parents' immigration

statuses are targeted by the birthright citizenship ban abridges the Equal

Protection Clause of the Fourteenth Amendment to the United States

Constitution;

iii) Whether Defendants' policy and practice of categorically denying United

States citizenship to U.S.-born children whose parents' immigration statuses

are targeted by the birthright citizenship Executive Order violates 8 U.S.C.

§ 1401(a); and

iv) Whether Defendants' policy and practice of categorically denying

United States citizenship to U.S.-born children whose parents' immigration

statuses are targeted by the birthright citizenship ban is contrary to

constitutional right, power, privilege or immunity, including rights

guaranteed under the Fourteenth Amendment of the U.S. Constitution in

contravention of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

Second Am. Compl. ¶ 66.

These common questions of law stem from a unitary policy: Executive

Order 14160 denying birthright citizenship to U.S-born children, beginning

February 19, 2025, whose parents have temporary or no immigration status. These

common questions of law will "generate common *answers* apt to drive the

resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

(2011) (emphasis in original) (citation and internal quotation marks omitted). The

answer to the constitutionality of Executive Order 14160 is at the heart of this
litigation. Indeed, answering that question is of upmost importance to the Named
Plaintiffs and any immigrant parent now and in the future whose status is targeted
by the birthright citizenship-banning Executive Order. Where, as here, Plaintiffs
"seek[] to enjoin a practice or policy, rather than individualized relief,
commonality is assumed." *Shephard v. Rhea*, No. 12-cv-7220, 2014 WL 5801415,
at *4 (S.D.N.Y. 2014) (citation omitted).

Common questions of fact also predominate—the Named Plaintiffs all share
the same impermanence in their immigration status. Further, these common
questions of law and fact are at the center of the proposed Rule 23(b)(2) class
certification. "There is an assumption of commonality where [as here] Plaintiffs
seek certification of an injunctive class under Rule 23(b)(2) to right alleged
constitutional wrongs." *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001);
*see also L.V.M.*, 318 F. Supp. 3d at 615 (finding commonality where claim arose
"solely from [Defendants'] standardized conduct" and where resolution "need not
entail factual analyses attributable only to individual plaintiffs"). Plaintiffs satisfy
the commonality requirement.

15

c. <u>The claims or defenses of the representative parties are typical of the claims or defenses of the class</u>

Named Plaintiffs' "claims or defenses are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where, as here, Named Plaintiffs' claims arise "from the same event or course of conduct that [gave] rise to claims of other class members and the claims are based on the same legal theory." *Westchester Indep. Living Ctr.*, 331 F.R.D. at 293 (citations omitted). It is firmly settled that typicality does not mandate identical facts "so long as the disputed issues occupy the same degree of centrality between the named representatives and the class." *Hill v. City of N.Y.*, 136 F. Supp. 3d 304, 356 (E.D.N.Y. 2015). Typicality is distinct from commonality in that it focuses on claims or defenses while the latter centers on questions of law or fact. *Westchester Indep. Living Ctr,* 331 F.R.D. at 293 (citations omitted). However, like commonality, "typicality may be assumed where [as here] the nature of the relief sought is injunctive and declaratory." *Nicholson*, 205 F.R.D. at 99.

Named Plaintiffs' claims are typical of the claims of the class. Defendants' birthright citizenship-banning Executive Order categorically denies otherwise eligible U.S.-born children whose parents have temporary or no immigration status constitutionally guaranteed birthright citizenship in defiance of the Citizenship Clause of the Fourteenth Amendment. Defendants' birthright citizenship-banning

16

Executive Order also offends the Equal Protection Clause and violates federal statutory laws. Defendants' unconstitutional and unlawful policy applies with equal force to all members of the putative class.

Named Plaintiffs seek to declare the birthright citizenship-banning Executive Order unconstitutional and violative of federal statutory laws and to enjoin its enforcement against them and members of the putative class. Because Named Plaintiffs seek class-wide declaratory and injunctive relief under Rule 23(b)(2), that is "ample basis for finding that the claims of the named plaintiffs are typical of those of the proposed class in satisfaction of Rule 23(a)(3)." *Nicholson*, 205 F.R.D. at 100.  Plaintiffs satisfy the typicality requirement.

      d. <u>The representative parties will fairly and adequately protect the interests of the class</u>

The Named Plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry is 'twofold: the proposed class representative[s] must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Westchester Indep. Living Ctr.*, 331 F.R.D. at 298 (citations omitted). Additionally, the adequacy test requires "class counsel must be qualified, experienced and generally able to conduct the litigation." *Id.* (quoting *Vincent v. Money Store*, 304 F.R.D. 446, 456 (S.D.N.Y. 2015)).

For the proposed class representative prong of the adequacy test, Named Plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594–95 (1997). Courts have found the adequacy of Named Plaintiffs to be satisfied where, as here, they seek "broad based relief [and] . . . the interests of the class members are identical despite the individualized problems of each plaintiff." *Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 325 (S.D.N.Y. 2004); *see also Stinson v. City of New York*, 282 F.R.D. 360, 371 (S.D.N.Y. 2012) ("Plaintiffs' interests are identical to those of the putative class, as all plaintiffs have been allegedly injured by the same unconstitutional action on the part of Defendants.").

Here, Plaintiffs will fairly and adequately represent the interests of all members of the proposed class because they seek relief for themselves and on behalf of the class as a whole and have no interest antagonistic to other members of the class. *See* Second Am. Complt. ¶¶ 29–47; 61–70; 71–86. Plaintiffs, like members of the putative class, have been or will be subjected to Defendants' unconstitutional and discriminatory birthright citizenship-banning Executive Order. *Id.* Plaintiffs and the putative class members seek a declaration that Defendants' birthright citizenship-banning Executive Order is unconstitutional,

18

violates federal statutory laws, and that Defendants be enjoined from enforcing the Order against them. *Id.*[6]

For the second prong of the adequacy test, Named Plaintiffs and the putative class will fairly and adequately be represented by their counsel. LatinoJustice PRLDEF has litigated many groundbreaking civil rights cases and has substantial expertise in class action litigation, including *Orellana v. County of Suffolk*, No. 17-cv-4267 (WFK) (ARL), 2022 WL 22842064, at *9 (E.D.N.Y. 2022) (finding adequacy of representation under Rule 23(a) met where "LatinoJustice PRLDEF is a non-profit civil right organization that routinely litigates civil rights cases and also has substantial expertise in class litigation to vindicate civil rights"); *Ligon v. City of New York*, No. 12-civ-2274, 288 F.R.D. 72 (S.D.N.Y. 2013) (granting class action certification where LatinoJustice PRLDEF was one of several civil rights organizations representing plaintiffs). Further, Named Plaintiffs' lead counsel has practiced law for more than thirty years. She has served as lead or co-counsel in

---

[6] Although individual Plaintiffs, J.V. and D.F., are no longer pregnant, they are adequate class representatives. Pregnancy is inherently transitory. Even if they had moved for class certification at the time they filed their Complaint, their motion would not have been resolved before they gave birth because Defendants sought to stay the proceeding pending the Supreme Court's ruling on the propriety of nationwide injunction. *See, e.g., German v. Fed. Home Loan Mortg. Corp.*, 168 F.R.D. 145, 152 (S.D.N.Y. 1996) (noting transient nature of claims asserted on behalf of pregnant litigants). Similarly, organizational Plaintiffs NYIC and RMM can adequately serve as class representatives for constituents and members similarly situated to J.V. and D.F. (and newly added individual Plaintiff, M.P.). *See, e.g., People United for Children, Inc. v. City of New York*, No. 99-civ-0648 (RJW), 214 F.R.D. 252, 263 (S.D.N.Y. 2003) (granting class representative status under Rule 23(a) to a nonprofit organization with associational standing).

19

many class actions in federal and state courts including, for example, *S.M. by and through Mendoza v. Casey,* 23-cv-01499-BAJ-SDJ, 2025 WL 368547 (M.D. La. 2025) (finding state agency's reversal of discriminatory practice of denying driver's license to eligible U.S.-born and lawfully present minors because of their parents' immigration status warranted dismissal). LatinoJustice has the expertise and experience to represent the putative class and to prosecute this action. Plaintiffs satisfy the adequacy of representation requirement of Rule 23(a).

## C. The Proposed Class is Ascertainable

As courts have noted, the ascertainability requirement may be inapplicable to Rule 23(b)(2) class action, which Named Plaintiffs seek. *Westchester Indep. Living Ctr.*, 331 F.R.D. at 299 (citing *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 419 n.3). Even if it is required, the class here is ascertainable. Named Plaintiffs seek a class defined as persons born in the United States on or after February 19, 2025, who have been or will be denied birthright citizenship because their parents' immigration statuses are the subject of Executive Order 14160. The class is defined using objective criteria, and those impacted are sufficiently ascertainable. The class is readily identifiable and thus satisfies the *In re Petrobras Securities* ascertainability requirement.

### D. This Action Meets the Requirements for Certification Under Rule 23(b)(2)

Class certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation and internal quotation marks omitted). Cases, such as this, where Defendants are "charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Id*. at 361 (quoting *Amchem*, 521 U.S. at 614).

This case fits squarely within Rule 23(b)(2)'s requirements. Named Plaintiffs, on behalf of themselves and the putative class, allege that Defendants' birthright citizenship-banning Executive Order infringes their constitutional rights and violates federal statutory laws. They seek unitary relief that will declare Defendants' birthright citizenship-banning Executive Order unconstitutional and violative of federal statutory laws and will enjoin enforcement of the Order against them. The relief sought will benefit Named Plaintiffs and the putative class alike. Courts in this circuit routinely certify Rule 23(b)(2) class actions seeking to redress systemic government discrimination. *See, e.g.*, *Robinson v. New York City Transit Authority*, 19-cv-1404 (AT) (BCM), 2020 WL 5884055, at *14 (S.D.N.Y. 2020)

21

(certifying class seeking institutional reform); *L.V.M.*, 318 F. Supp. 3d at 616–17 (certifying class seeking policy changes); *see also supra* section A.

Plaintiffs ask this Court, as they requested in their supplemental brief in further support of their motion for a preliminary injunction, to issue provisional relief to the putative class pending class certification. *See A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (*per curiam*) (finding that a court "may properly issue temporary injunctive relief to [a] putative class"); *Trump v. CASA, Inc.*, 2025 WL 1773631, at *19 (noting Plaintiffs seeking Rule 23(b)(2) class certification and who request preliminary injunctive relief may "ask a court to award preliminary classwide relief that may, for example, be statewide, regionwide, or even nationwide") (Kavanaugh, J., concurring).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify a plaintiff class as set forth above, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and, pursuant to Federal Rule of Civil Procedure 23(g), appoint current counsel for Named Plaintiffs as class counsel.

Dated this 9th day of July, 2025

Respectfully submitted,

By: /s/ *Francisca D. Fajana*

22

Francisca D. Fajana
Cesar Z. Ruiz
Mariana C. Lopez
Michael Asparrin*
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.219.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org
MLopez@latinojustice.org
MAsparrin@latinojustice.org

*Admission Application Forthcoming

23

## <u>CERTIFICATION OF WORD COUNT COMPLIANCE</u>

Case Caption:        *NYIC, et al. v. Trump, et al*.

Case No:               1:25-cv-01309

 

    As required by Rule 7.1(c ) of the Joint Local Rules, S.D.N.Y. and

E.D.N.Y., I certify the document contains 5,224 words excluding the parts of the

document that are excepted by the rule.

    I declare under penalty of perjury that the foregoing is true and accurate.


Dated: July 9, 2025                                        */s/ Francisca D. Fajana*

                                                                   Francisca D. Fajana

24