# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| New York Immigration Coalition; J.V., individually and as next friend to ~~her future child;~~ V.V.; D.F., individually and as next friend to G.F.; M.P., individually and as next friend to her future child; and Rural & Migrant Ministry, on behalf of themselves and all others similarly situated, | **CIVIL ACTION NO: 25-cv-01309-MMG** |
| *Plaintiffs*, | |
| v. | **SECOND AMENDED COMPLAINT** |
| DONALD J. TRUMP, President of the United States, in his official capacity; | **CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| U.S. DEPARTMENT OF HOMELAND SECURITY, Kristi Noem, Secretary of the U.S. Department of Homeland Security, in her official capacity; | |
| U.S. DEPARTMENT OF STATE, Marco Rubio, Secretary of State, in his official capacity; | |
| U.S. DEPARTMENT OF JUSTICE, Pamela Jo Bondi, Attorney General of the United States, in her official capacity; | |
| THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, ~~Stephanie Carlton~~ Dr. Mehmet Oz, | |

1

Acting Administrator of the Centers for Medicare and Medicaid Services, in ~~her~~his official capacity;

SOCIAL SECURITY ADMINISTRATION, ~~Leland Dudek,~~ Frank Bisignano, Acting Commissioner for Social Security, in his official capacity.

*Defendants*.

## NATURE OF THE CASE

[Formatted: Keep lines together]

1.    "Citizenship is man's basic right for it is nothing less than the right to have rights. Remove this priceless possession and there remains a stateless person. . ."[1] ~~Organizational Plaintiff, New York Immigration Coalition, whose constituents include expectant parents with temporary immigration status or who are undocumented, individual Plaintiffs J.V., and D.F., for~~Plaintiffs, on behalf of themselves and ~~as next friend to their future children, expectant mothers with temporary immigration status, and organizational Plaintiff, Rural & Migrant Ministry, whose membership includes expectant mothers with temporary immigration status or who are undocumented~~others similarly situated, bring this action ~~challenging~~to challenge President Trump's Executive Order 14160, purporting to ~~end~~ban birthright citizenship, because it strips away "priceless"

---

[1] *Perez v. Brownell*, 356 U.S. 44, 66 (1958) (Warren, C. J., dissenting).

[Formatted: Font: Not Italic]

citizenship rights from U.S.-born children and ~~renders~~threatens to render them "stateless person[s]."[2] Plaintiffs are three individuals—an expectant mother and two new mothers whose children were born after the effective date set forth in the Executive Order, and whose immigration status is the subject of the Order challenged here—and two organizations whose constituents and members include expectant and new parents similarly situated to the individual Plaintiffs. The birthright citizenship-banning Executive Order upends fundamental and equal rights under the Fourteenth Amendment to the United States Constitution.

> **Formatted:** Font: 12 pt

  2. Ratified in 1868 after the Civil War, the first sentence of the Fourteenth Amendment—the Citizenship Clause—declares "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. CONST. amend. XIV, § 1. Thirty years after ratification, ~~upholding~~construing the plain text of the Citizenship Clause and affirming the ancient and fundamental rule of *jus soli*— citizenship by virtue of place of birth— the Supreme Court ruled that the Citizenship Clause guarantees citizenship to U.S.-born children irrespective of parental alienage, race, or immigration status. *See U.S. v. Wong Kim Ark*, 169 U.S. 649 (1898).

---

[2] *Id.*

3.      Defying nearly 127-year-old settled law, on January 20, 2025,
President Trump issued an Executive Order purporting to strip U.S.-born children
of their citizenship if, at the time of the child's birth, the child's "mother was
unlawfully present in the United States" or her presence "was lawful but
temporary" and the father of the child was not a U.S. citizen or lawful permanent
resident.[3] The Executive Order ("birthright citizenship ban") directs federal
agencies not to issue documents recognizing U.S. citizenship or accept documents
issued by any state, local, or other governments recognizing U.S. citizenship of
U.S.-born children whose parents have temporary immigration status or who are
undocumented.

4.      The Fourteenth Amendment also guarantees equal protection.[4] But in
clear defiance of well-established Equal Protection Clause jurisprudence, such as
*Oyama v. California*,[5] the birthright citizenship ban invidiously discriminates
against future U.S.-born children because of their parental alienage—a burden that
falls harshly and disproportionately on Latinos—, like ~~plaintiffs~~Plaintiffs J.V. and

---

[3] Exec. Order 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025).
[4] The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its
jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §-1. In 1954, the
Supreme Court made explicit that the principles of equal protection also bind the federal
government, through the Due Process Clause of the Fifth Amendment. U.S. CONST. amend. V;
*Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see also U.S. v. Paradise*, 480 U.S. 149, 166 n.16
(1987) (reiterating that the Fifth Amendment contains an "equal protection guarantee" that is
"coextensive with that of the Fourteenth [Amendment~~]…")~~] . . .").
[5] 332 U.S. 633 (1948).

4

D.F—.. who are a majority of the immigrants with statuses targeted by the Executive Order.

5.      President Trump's contempt for birthright citizenship and immigrants is in plain view. He derided birthright citizenship as "ridiculous," and vowed to end it.[6] He tweeted that birthright citizenship "costs our ~~country~~Country billions of dollars and is very unfair to our citizens [and] will be ended one way or the other."[7] Ten days after he signed the birthright citizenship ban, the President claimed— contrary to settled law—that birthright citizenship was "meant for the children of ~~former[ly~~[formerly enslaved people]-. . . and not meant for the whole world to come in and pile into the United States of America. Everybody coming in and totally unqualified people and with perhaps unqualified children. [Birthright citizenship] wasn't meant for that."[8] President Trump pledged to end birthright citizenship, and Executive Order 14160 delivers on that promise.

6.      Stripping birthright citizenship will have deleterious consequences. It will render stateless thousands of children born to immigrants residing in the

---

[6] Jonathan Swan & Stef W. Knight, *Exclusive: Trump Targeting Birthright Citizenship with Executive Order*, AXIOS (Oct. 30, 2018), https://www.axios.com/2018/10/30/trump-birthright-citizenship-executive-order.
[7] @realDonaldTrump, X [formerly known as TWITTER] (Oct. 31, 2018, 1:25 PM), https://x.com/realDonaldTrump/status/1057624553478897665.
[8] Bart Jansen, *President Trump Expects to End Birthright Citizenship with Support from Supreme Court*, USA TODAY (Jan. 30, 2025), https://www.usatoday.com/story/news/politics/2025/01/30/trump-supreme-court-will-uphold-ending-birthright-citizenship/78060886007/.

United States who have temporary immigration status or are undocumented. It will force U.S.-born children into the shadows of society without the benefits and opportunities of citizenship. It will put them at risk of deportation because they are stateless. It will deprive U.S.-born children of their identity as Americans; deny them access to critical legal documents like U.S. passports and social security cards; and may deprive them of essential health care, nutrition, and early childhood education—benefits they need to nurture their health and development.

7.    Stripping birthright citizenship will adversely impact about 53 percent of undocumented Latinos, between the ages of 25 and 44, who are in their prime childbearing years and whose U.S.-born children will be stripped of the privileges and immunities of citizenship.

8.    Plaintiffs challenge the birthright citizenship ban as unconstitutional violations of the Citizenship and Equal Protection Clauses of the Fourteenth Amendment, and ~~as a violation~~violations of the Immigration and Naturalization Act, 8 U.S.C. § 1401(a), and Administrative Procedure Act, 5 U.S.C. § 706 (2)(B). Plaintiffs ask that the birthright citizenship ban be declared unconstitutional and in violation of federal statutory ~~law~~laws.

## JURISDICTION AND VENUE

Formatted: Keep lines together

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the

United States, and pursuant to 28 U.S.C. § 1343 because this action seeks to redress the deprivation of a right or privilege of a citizen of the United States and to secure equitable and other relief under any Act of Congress providing for the protection of civil rights.

10.    Plaintiffs seek declaratory and injunctive relief, and any other appropriate relief, pursuant to 28 U.S.C. §§ 2201 and 2202; Federal Rules of Civil Procedure 57 and 65.

11.    Venue is proper under 28 U.S.C. § 1391(e)(1) because a substantial part of the events and omissions giving rise to the claim occurred and have impacts in this district and individual Plaintiff D.F. resides in this district as do organizational Plaintiffs New York Immigration Coalition and Rural & Migrant Ministry whose principal places of business are in this district.

**PARTIES**

**Plaintiffs**

12.    Individual Plaintiff, J.V., is a 31-year-old Venezuelan national.[9] She ~~has~~had Temporary Protected Status ("TPS") through April 2, 2025. J.V. has a pending asylum petition. J.V. ~~is five months pregnant.~~, who was pregnant at the

---

[9] ~~J.V. has moved this~~ This Court granted J.V.'s and D.F.'s motions to ~~appear in this matter~~proceed under a pseudonym because ~~she fears~~they fear retaliation.

> **Formatted:** Keep lines together

time this action was originally filed, gave birth to her baby, V.V., after February 19, 2025. She has temporary housinglives in Albany County, New York State.

13.  Individual Plaintiff, D.F., is a 35-year-old Colombian immigrant, who has a pending asylum application.[10] D.F. is six months., who was pregnant at the time this action was filed, gave birth to her baby, G.F., after February 19, 2025. She resides in Westchester County, New York.

14.  Individual Plaintiff M.P. is a 34-year-old Russian national, who has a pending asylum application.[11] M.P. is sixth months pregnant. She resides in Staten Island, New York.

15.  Organizational Plaintiff, New York Immigration Coalition ("NYIC"), is a 37-year-old tax-exempt nonprofit organization with a principal place of business in New York, New York. NYIC is a member-led coalition of immigrant and refugee organizations that strengthens and builds its members' power, organizes and educates immigrant communities and the public, and uses the collective voice of its constituents to advocate for opportunity and justice.

1516. Organizational Plaintiff, Mid-Hudson Catskill Rural & Migrant Ministry dba Rural & Migrant Ministry ("RMM"), is a 44-year-old grassroots non-

---

[10] D.F. has moved this Court to appear in this matter under a pseudonym because she fears retaliation.

[11] M.P. has moved this Court to appear in this matter under a pseudonym because she fears retaliation.

profit organization committed to migrant justice, equity, and civic integration.
Headquartered in Orange County, New York, RMM's mission is to create hope,
justice, and empowerment with farm-working and rural families by building
community and developing leaders through advocacy, education, and the arts.

**Defendants**

16̶17. Defendant Donald J. Trump is the President of the United States of
America. He is sued in his official capacity. As President, he signed and issued
Executive Order 14160—the birthright citizenship ban—which is challenged in
this lawsuit.

17̶18. Defendant Kristi Noem is the Secretary of the U.S. Department of
Homeland Security ("DHS"). She is sued in her official capacity. In that capacity,
she administers and enforces Defendant Department of Homeland Security's
activities and responsibilities, including the responsibility of ensuring DHS
complies with the Executive Order. DHS houses the immigration enforcement
agencies U.S. Customs and Border Protection ("CBP"), U.S. Immigration and
Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services
("USCIS").

18̶19. Defendant Marco Rubio is the Secretary of the U.S. Department of
State. He is sued in his official capacity. In that capacity, he administers and
enforces Defendant Department of State's activities and responsibilities, including

9

the responsibility of ensuring the Department of State complies with the Executive

Order. The U.S. Department of State is an executive department of the United

States responsible for, among other duties, granting and issuing passports to

American citizens.

~~19~~20. Defendant Pamela Jo Bondi is the Attorney General of the United

States. She is sued in her official capacity. In that capacity, she administers and

enforces Defendant Department of Justice's activities and responsibilities,

including the responsibility of ensuring the Department of Justice complies with

the Executive Order.

~~20~~21. Defendant ~~Stephanie Carlton~~Dr. Mehmet Oz is the Acting

Administrator of the Centers for Medicare and Medicaid Services ("CMS"). ~~She~~He

is sued in ~~her~~his official capacity. In that capacity, ~~she~~he administers and enforces

Defendant Centers for Medicare and Medicaid Services' activities and

responsibilities, including the responsibility of ensuring CMS complies with the

Executive Order. CMS is a federal agency of the United States responsible for

providing healthcare coverage to U.S. citizens and some eligible non-U.S. citizens.

~~21~~22. Defendant ~~Leland Dudek~~Frank Bisignano is the Acting Commissioner

for Social Security. He is sued in his official capacity. In that capacity, he

administers and enforces Defendant Social Security Administration's ("SSA")

activities and responsibilities, including the responsibility of ensuring SSA

complies with the Executive Order. SSA is an independent agency in the executive branch of the United States. Among other duties, SSA is responsible for administering benefits, such as retirement and disability benefits, managing Supplemental Security Income, and issuing Social Security numbers and cards to U.S. citizens.

## LEGAL FRAMEWORK

### The Fourteenth Amendment's Citizenship and Equal Protection Clauses Proscribe the Discriminatory Treatment Meted out by the Birthright Citizenship Ban

#### A) The Citizenship Clause

2223. By the mid-eighteenth century, citizenship by virtue of place of birth irrespective of parental nationality—known as *jus soli*—was firmly established in U.S. law.[12] After its ratification in 1868, the Fourteenth Amendment guaranteed formerly enslaved people and their descendants U.S. citizenship. U.S. CONST. amend. XIV, § 1.

2324. The first sentence of the Fourteenth Amendment—the Citizenship Clause—pronounces

> [a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. *Id.*[13]

---

[12] *See* Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 GEO. L.J. 405, 413–14 (2020); *see also*, *Lynch v. Clarke*, 1 Sand. Ch. 583, 663 (N.Y. Ch. 1844) (deciding that children born in the U.S. to Irish citizens visiting the U.S. were U.S. citizens).

[13] Like the Citizenship Clause, by statute, "a person born in the United States, and subject to the jurisdiction thereof" is a U.S. citizen. 8 U.S.C § 1401(a).

~~24~~25. The plain text of the Citizenship Clause guarantees U.S. citizenship to children born on U.S soil.[14] The Clause eviscerated grant of citizenship based on race, caste, hereditary, or ancestry. *United States v. Wong Kim Ark* erased any doubt, confirming that a U.S.-born child of Chinese immigrants was a U.S. citizen.[15] It is thus well-settled that U.S.-born children, irrespective of their parents' alienage, nationality, or immigration status, are U.S. citizens.[16]

   **B) <u>The Equal Protection Clause</u>**

~~25~~26. The Equal Protection Clause commands that "[n]o state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Supreme Court has construed the Clause to forbid discrimination against a U.S.-born citizen because of parental alienage. *See Oyama v. California*, 332 U.S. 633, 646–47 (1948); *see also Lewis v. Thompson*, 252 F.3d. 567, 591 (2d Cir. 2001) (invalidating a statute denying healthcare benefit to future U.S.-born children because of the undocumented status of their mothers).

~~26~~27. Under the Equal Protection Clause, a classification based on alienage or national origin—both suspect classifications—is subject to strict scrutiny and

---

[14] The concept of *jus soli* does not apply to the children of diplomats and foreign military personnel. *See, e.g.*, Ramsey, *supra* note 11 at 416.
[15] 169 U.S. 649, 700–01 (1898).
[16] *See, e.g. Acosta v. Gaffney*, 558 F.2d 1153, 1158 (3d Cir. 1977) (recognizing U.S. citizenship of a 22-month-old infant whose Colombian parents were "deportable aliens").

must be narrowly tailored to serve a compelling governmental interest. *See Nyquist v. Mauclet*, 432 U.S. 1, 7 (1977); *Graham v. Richardson*, 403 U.S. 365, 372 (1971). Similarly, a facially neutral policy that has an adverse effect on the basis of alienage or national origin and was motivated by discriminatory animus is also subject to strict scrutiny. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

~~27~~28. The Equal Protection Clause is construed broadly to afford protection to all persons, including immigrants with temporary status or who are undocumented and who suffer unconstitutional differential treatment because of alienage or national origin.[17] The birthright citizenship ban subjects U.S.-born children and their immigrant parents with temporary or undocumented status to discriminatory treatment on account of alienage and national origin. Additionally, the ban was motivated by discriminatory animus and disparately impacts immigrants from Latin American countries.

---

[17] *See, e.g., Deide v. Day*, 676 F. Supp. 3d 196, 222, 225 (S.D.N.Y. 2023) (subjecting policy denying housing to migrant and asylum-seekers to strict scrutiny and declaring the policy unconstitutional).

13

**FACTUAL ALLEGATIONS**

**A)** **The Birthright Citizenship Ban Discriminates Against Plaintiffs on Account of Alienage and National Origin**

**J.V.**

2829. Individual Plaintiff, J.V.,. is a 31-year-old Venezuelan national who entered the United States in 2023. She hashad Temporary Protected Status ("TPS") through April 2, 2025. The Trump Administration has revoked TPS,[18] ending the program for more than 300,000 Venezuelans.[19] J.V. has a pending asylum petition. J.V.'s partner, who is the father of her child, is also a Venezuelan whose TPS will soon expirehas expired.

29.   30.   J.V. is five months pregnant. Shegave birth to believes the birthright citizenship ban is cruel and unjust. The ban denies her future U.S.-born child U.S. citizenship. Even assumingchild, V.V., after February 19, 2025. J.V. could obtain identity documents has received a birth certificate for her newborn. But the child from her home country, there is no longer any Venezuelan consulate in the has not obtained a United States and the United States has severed

---

[18] *DHS Terminates the 2023 Designation of Venezuela for Temporary Protected Status*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Feb. 3, 2025), https://www.uscis.gov/newsroom/alerts/dhs-terminates-the-2023-designation-of-venezuela-for-temporary-protected-status#.
[19] Hamed Aleaziz, & Maggie Haberman, *Trump Administration Moves to End Protections for Venezuelans in the U.S.*, N.Y. TIMES (Feb. 2, 2025), https://www.nytimes.com/2025/02/02/us/politics/trump-venezuela-temporary-protected-status.html [on file with LatinoJustice PRLDEF].

14

~~diplomatic relations with Venezuela.[20] The precarious citizenship status of her~~ ~~unborn child puts J.V. under enormous stress. The birthright citizenship ban will~~ ~~render~~ <u>passport. J.V. worries that without citizenship affirming documents</u>  for her <u>child, V.V., she could become</u>~~J.V.'s child~~ a stateless nomad without a home country. <u>The precarious citizenship status of her child puts J.V. under enormous stress.</u>

    <u>31.</u>    <u>J.V. believes the birthright citizenship ban is cruel and unjust.</u> ~~30.~~ ~~The birthright citizenship ban also will render J.V.'s future child ineligible~~ ~~for Medicaid, denying the child critical postnatal care. J.V. is currently receiving~~ ~~prenatal care through Medicaid. J.V.'s future child will be denied a U.S. passport, a~~ ~~social security number, an unrestricted social security card, and access to essential~~ ~~health care and housing—all of which she would receive, given her family's~~ ~~economic circumstances, but for the birthright citizenship ban.~~ Defendants' actions and failure to act cause harm to J.V. and her ~~future~~ U.S.-born child <u>and to others similarly situated</u>. Defendants' birthright citizenship ban discriminates against J.V. and her ~~future~~ U.S.-born child <u>and against others similarly situated</u> on account of alienage and national origin.

---

~~[20] Jennifer Hansler, *Venezuelan Embassy Run by Opposition in US Closes after Guaido Ouster*, CNN (Jan. 6, 2023), https://www.cnn.com/2023/01/06/politics/venezuelan-opposition-embassy-us-closes/index.html.~~

**D.F.**

*Formatted:* Keep with next, Keep lines together

~~31~~32. Individual Plaintiff~~,~~ D.F. is a 35-year-old Colombian immigrant, who has a pending asylum application. She entered the United States in March 2024. D.F. ~~is six months pregnant and~~gave birth to her ~~partner~~child, G.F., after February 19, 2025. D.F.'s husband, the father of ~~her unborn child, G.F.~~ who is also a ~~Columbian~~Colombian immigrant, has a pending asylum application. D.F. and her ~~partner~~husband reside in Westchester County, New York. D.F. and her ~~partner~~husband came to the United States in search of better opportunities.

~~32~~33. D.F.'s child has yet to obtain a birth certificate affirming her birth in the United States. D.F. and her ~~partner~~husband believe that the birthright citizenship ban discriminates against their ~~unborn~~ child. Their child will have no immigration status, no rights, and no country. Their child will be rendered stateless. ~~Their~~Without United States citizenship, their child ~~also~~ will be denied critical healthcare benefits ~~as an infant,~~ and when the child is of school-age will be bullied in school for not being a United States citizen. D.F. and her ~~partner~~husband believe that the birthright citizenship ban is unjust. Defendants' actions and failure to act cause harm to D.F. and her ~~future~~ U.S.-born child and to others similarly situated. Defendants' birthright citizenship ban discriminates against D.F.'s ~~unborn~~ and her U.S.-born child and against others similarly situated on account of parental alienage and national origin.

16

**M.P.**

34.     Individual Plaintiff M.P. is a 34-year-old expectant mother due in mid-September 2025. M.P. and her husband, the father of her future child, are Russian nationals who entered the United States in February 2022 and applied for asylum. They both have work authorization through August 2025 and reside in Staten Island, New York.

35.     When M.P. and her husband heard the President say on June 27, 2025—the day the Supreme Court partially stayed nationwide injunctions issued in other cases—that his Executive Order denying birthright citizenship to U.S.-born children whose parents have temporary immigration status or are undocumented was in effect, they were devastated.[21] Before that date, M.P. and her husband thought that their unborn child was protected. M.P. and her husband are very worried that their unborn child will be denied United States citizenship. They fear that their future child will be denied a United States passport, a social security card, health care benefits, and when the child is older, benefits reserved for United States citizens. M.P. and her husband cannot return to Russia because they have sought asylum in the United States. They fear for their child's future without

---

[21] Soon after the Supreme Court partially stayed three nationwide injunctions preventing the birthright citizenship-banning Executive Order from taking effect, President Trump hailed the decision a "monumental victory" claiming that the policy can now be implemented. *See* Andrew Chung, *Supreme Court in Birthright Case Limits Judges' Power to Block Presidential Policies*, REUTERS (June 27, 2025).

17

United States citizenship. Defendants' actions and failure to act cause harm to M.P. and her future U.S.-born child and to others similarly situated. Defendants' birthright citizenship ban discriminates against M.P. and her future U.S.-born child and against others similarly situated on account of parental alienage and national origin.

**New York Immigration Coalition**

Formatted: Keep with next, Keep lines together

~~33~~36. Organizational Plaintiff New York Immigration Coalition ("NYIC") is a tax-exempt non-profit organization headquartered in New York City. It has offices in Albany, Buffalo, Hempstead, Newburg, Rochester, and Syracuse. NYIC is a statewide, member-led coalition of over 170 immigrant and refugee-rights groups throughout New York. Its mission is to strengthen and build its members' power, organize and educate immigrant communities and the public, and use the collective voice of its constituents to advocate for opportunity and justice.

~~34~~37. NYIC's membership includes immigrant-led and immigrant-serving groups, and it directly serves immigrants from diverse communities. Among the services it provides to immigrants are low-cost immigration legal services and assistance with accessing vital health services. In 2024, NYIC assisted over 400 immigrants with petitions for asylum, Temporary Protected Status, Employment Authorization Documents, and Motions to Reopen immigration cases.

18

~~35~~38. Among those NYIC serves are immigrant expectant parents who have immigration statuses targeted by the birthright citizenship ban. Two examples are illustrative. In November 2024, NYIC assisted ~~an expectant~~a mother ~~who is due in June 2025 and has a~~with temporary immigration status~~.~~ who has since had her child in May 2025. The ~~expectant~~new mother came to the United States in search of a better life. She is deeply concerned that her ~~future~~new U.S.-born child will be denied the benefits of American citizenship. NYIC also served a couple who fled violence in their home country with their children. ~~Both parents are TPS holders who are~~The couple is expecting their first U.S.-born child in August 2025. They believe it is wrong to deny their unborn child the benefits of American citizenship.

~~36~~39. Besides the expectant parents that NYIC has assisted, its immigrant-led member ~~groups also are aware of at least six immigrants~~organizations have individual members who ~~are pregnant and hold~~have been harmed or will be harmed by the birthright citizenship ban. For example, NYIC member organization, Afghans For a Better Tomorrow—a member-led organization—has at least twelve members whose immigration statuses are targeted by the birthright citizenship ban~~.~~, who have either had U.S.-born children since the effective date of the birthright citizenship-banning Executive Order or are currently pregnant. Similarly, La Colmena—a participant-powered organization—has at least six members whose immigration statuses are targeted by the birthright citizenship ban

19

and who have either had U.S.-born children since the effective date of the birthright citizenship-banning Executive Order or are currently pregnant. The immigrant families that NYIC serves as well as those ~~served by~~who are members of its ~~member~~membership organizations have been harmed and ~~will~~ continue to be harmed by the birthright citizenship ban.

3740. In addition to the harm that the birthright citizenship ban ~~will inflict~~inflicts on NYIC's constituents, NYIC itself ~~will be~~is injured. NYIC is diverting resources away from its provision of legal assistance to immigrants seeking ~~help with TPS,~~Employment Authorization Documents, Motion to Reopen immigration cases, and the services it provides to connect immigrants to mental health, employment, and other stability services to combat the impacts of the birthright citizenship ban.

3841. Given the palpable fear and anxiety the birthright citizenship ban has wreaked in the immigrant community, NYIC will have to divert resources away from its core mission to create and develop new training materials, FAQs (Frequently Asked Questions), and presentations that explain the far-reaching consequences of the ban. NYIC will reassign legal and administrative staff to meet the urgent needs that the ban has needlessly created. The new training materials will explain how immigrant parents should navigate the precarious statuses of their U.S.-born children who will now be stripped of U.S. citizenship.

Commented [NS1]: Not sure if my edit here is accurate – flagging just in case

20

3942. Defendants' actions and omissions harm NYIC itself and its constituents including asylees, applicants for asylum, TPS holders, recipients of student and work visas, and undocumented immigrants—some of whom have had U.S.-born children since the effective date of the birthright citizenship-banning Executive Order, are presently expectant parents or plan to have children in the future. Defendants' birthright citizenship ban discriminates against NYIC and its constituents targeted by the birthright citizenship ban and others similarly situated on account of alienage and national origin.

**Rural & Migrant Ministry**

4043. Established in 1981, Rural & Migrant Ministry ("RMM"), is a grassroots non-profit organization committed to migrant justice, equity, and civic integration. RMM's mission is to create hope, justice, and empowerment with farm-working and rural families by building community and developing leaders through advocacy, education, and the arts. RMM provides essential material and moral support for migrant and immigrant families.

4144. RMM's Board of Directors comprises former program participants and an array of stakeholders. Each year, RMM serves over 50,000 individuals, about 90 percent of whom are Latino, many of whom have temporary immigration status or are undocumented. RMM's program services include an Immigrant Legal Rights Project, Headstart/childcare, and Youth Empowerment.

42~~45~~. RMM also runs a Rural Women's Assembly which assists rural women facing barriers of poverty, prejudice, gender violence, inadequate childcare, and healthcare. The Rural Women's Assembly serves over two hundred women, many of whom are of childbearing age.

43~~46~~. RMM's Rural Women's Assembly includes expectant mothers and parents who plan to grow their families and whose immigration statuses are targeted by the birthright citizenship ban. RMM's membership includes at least ~~two~~one expectant ~~mothers—one~~ mother, K.R., who is eight months pregnant~~, and the other five months pregnant~~ whose immigration ~~statuses are~~status is targeted by the birthright citizenship ban. ~~Both~~The expectant ~~mothers are Guatemalans. They are~~mother is Guatemalan. She is concerned that ~~their unborn~~her U.S.-born and future children will be denied critical healthcare benefits, excluded from the benefits of American citizenship, and rendered stateless.

44~~47~~. RMM believes that its rural members whose immigration statuses are targeted by the birthright citizenship ban already suffer isolation, systemic injustice, and discrimination and will be subjected to further marginalization by excluding their U.S.-born children from the privileges and immunities of American citizenship. These U.S.-born children targeted because of their parents' alienage, national origin and/or immigration status will be denied critical healthcare benefits, social security cards, United States passports, and rendered stateless. When they

22

are older, they also will face additional exclusions from financial benefits, such as scholarships, available to only U.S. citizens. Defendants discriminate against RMM's members targeted by the birthright citizenship ban and others similarly situated on account of alienage and national origin.

**B)** **The Birthright Citizenship Ban Was Motivated By Discriminatory Animus**

4548. On January 20, 2025, President Trump's first day in office, he signed Executive Order 14160—birthright citizenship ban—declaring

> the privilege of the United Staes States citizenship does not automatically extend to persons born in the United States: (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of the said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States . . . or visiting . . . on a student, work, or tourist visa),) and the father was not a United States citizen or a lawful permanent resident at the time of said person's birth.[22]

4649. The birthright citizenship ban directs federal agencies not to "issue documents recognizing United States citizenship, or accept documents issued by state State, local, or other governments or authorities purporting to recognize United States citizenship, to persons" identified in section 1 of the Order. *Id.* at § 2.

---

[22] 90 Fed. Reg. at 8449.

Formatted: Keep lines together

The birthright citizenship ban becomesBy its terms, § 2 of the Executive Order was to become effective February 19, 2025. *Id.* at § 2(b).[23]

4750. On December 8, 2024, six weeks before the President signed the birthright citizenship ban, he inaccurately claimed "[w]e're the only country that has [birthright citizenship]," and vowed "to end" it.[24] The President said the guarantee of birthright citizenship was "ridiculous."[25] He said there were "record numbers of migrants crossing the border" and that birthright citizenship was a "magnet" pulling many migrants to do so.[26]

4851. The President claimed there was a "migrant crime" wave, blaming "MS-13, and the Venezuelan gangs [who are] the worst in the world."[27] He claimed they were "literally taking over apartment complexes and doing it with impunity."[28]

---

[23] On June 27, 2025, the Supreme Court stayed nationwide injunctions "prohibit[ing] executive agencies from developing and issuing public guidance about the executive's plans to implement the Executive Order." *Trump v. CASA, Inc.*, ___ S. Ct. ___, 2025 WL 1773631, * at 15 (June 27, 2025). The Court further opined, relying on the government's "representation [that] §2 of the Executive Order shall not take effect until 30 days after the date of [its] opinion." *Id.*

[24] Jane C. Timm, *Fact-Checking Trump's Interview with 'Meet the Press'* NBC NEWS (Dec. 8, 2024), https://www.nbcnews.com/politics/donald-trump/fact-check-trump-interview-meet-the-press-rcna182995.

[25] Swan & Knight, *supra* note 6.

[26] Ted Hesson, *Trump Vows to End Birthright Citizenship for Children of Immigrants in US Illegally*, REUTERS (May 30, 2023), https://www.reuters.com/world/us/trump-vows-end-birthright-citizenship-children-immigrants-us-illegally-2023-05-30/.

[27] Timm, *supra* note 2122.

[28] *Id.*

24

~~49~~52. Four months before the President's birthright citizenship ban, he claimed Haitian migrants were stealing and "eating people's ~~dogs and cats~~pets."[29]

~~50~~53. And nine months before the ban, the President said immigrants were "poisoning the blood" of the ~~nation~~country.[30] He contended that migrants crossing the southern border are "criminals flooding in from prisons and mental institutions."[31] He referred to migrants as "animals" saying, "[t]~~hey are~~hey're not people, in my opinion."[32]

~~51~~54. Long before he took office, the President repeatedly criticized birthright citizenship, pledging to reinterpret the Citizenship Clause by ending birthright citizenship.[33] He delivered on his promise.[34] The President's

[29] Julia Reinstein & Hanna Demissie, *Trump Pushes False Claims that Haitian Migrants Are Stealing and Eating Pets*, ABC NEWS (Sep. 10, 2024), https://abcnews.go.com/Politics/trump-pushes-false-claim-haitian-migrants-stealing-eating/story?id=113570407.

[30] Maggie Astor, *Trump Doubles Down on Migrants 'Poisoning' the Country*, N.Y. TIMES (Mar. 17, 2024), https://www.nytimes.com/2024/03/17/us/politics/trump-fox-interview-migrants.html [on file with LatinoJustice PRLDEF].

[31] *Id.*

[32] *Id.*

[33] Ximena Bustillo, *Trump to Make Historic Move Toward Revoking Birthright Citizenship*, NPR (Jan. 20, 2025), https://www.npr.org/2025/01/20/g-s1-43765/trump-inauguration-birthright-citizenship.

[34] In 2016, as a candidate, the President consistently questioned President Obama's birthright citizenship. And in his bid for the Presidency in 2020, he questioned Vice President Harris's eligibility to run for the presidency because her parents had temporary immigration status at the time of her birth. *See, e.g.,* Katie Rogers, *Trump Encourages Racist Conspiracy Theory About Kamala Harris*, N.Y. TIMES (Aug. 13, 2020), https://www.nytimes.com/2020/08/13/us/politics/trump-kamala-harris.html [on file with LatinoJustice PRLDEF].

contemporaneous statements evince discriminatory animus to immigrants on account of alienage and national origin.

**C) <u>The Birthright Citizenship Ban Disparately Impacts Latino Immigrants</u>**

52

55. The United States is quintessentially a nation of immigrants. The first immigrant to arrive in modern day Manhattan in 1613 was Juan Rodriguez—an immigrant from the country now known as Dominican Republic. Some of the Framers of the Constitution were also immigrants. ~~Even~~Well before ~~the~~ United States's founding, immigrants have been and remain a staple of its cultural tapestry.

~~53~~56. Immigrants from Latin American and other countries have been and remain vital to America's economic development. For example, in 2019, in the four states with the highest shares of the immigrant population—California, New York, Texas, and Florida—the combined spending power of immigrants was $673 billion.[35] ~~Latinos~~People who are Hispanic or Latino comprise ~~nearly~~about 48 percent of the foreign-born labor force.[36]

---

[35] CONGRESSIONAL JOINT ECONOMIC COMMITTEE, IMMIGRANTS ARE VITAL TO THE U.S. ECONOMY 5 (2021), https://www.jec.senate.gov/public/_cache/files/6750b0f0-c851-4fee-9619-295582fd44e8/immigrants-are-vital-to-the-us-economy-final.pdf.
[36] Press Release, Bureau of Labor Statistics, Foreign-Born Workers: Labor Force Characteristics—2024 (May 20, 2025), https://www.bls.gov/news.release/pdf/forbrn.pdf. Latino refers to individuals whose origins are from Latin America. *See* Hugo Lopez et al., *Who Is Hispanic?*, PEW RSCH. CTR. (Sept. 23, 2021), https://www.pewresearch.org/fact-tank/2021/09/23/who-is-hispanic/. Latinos can be of any race. The term includes Afro-Latinos

26

> **Formatted:** Indent: Left:  0", Space After:  0 pt, Line spacing:  single, Keep lines together

~~54~~57. In 2022, relying on Individual Tax Identification Numbers, undocumented immigrants paid an estimated $59.4 billion in federal taxes, $25.7 billion in Social Security taxes, and $6.4 billion in Medicare taxes—and yet, they are ineligible to receive federal benefits.[37]

~~55~~58. At 72 percent, Latinos constitute the majority of undocumented immigrants living in the shadows while contributing to the federal coffers.[38] More than half of them have lived in the United States for fifteen years or longer.[39] Fifty-three percent are between the ages of 25 and 44—people of prime working and childbearing age who would be adversely impacted by the birthright citizenship ban.[40] The largest group of undocumented Latinos comes from Mexico, followed by El Salvador, Guatemala, Honduras, Venezuela, Dominican Republic, Colombia, Ecuador, Peru, and Nicaragua. Childbearing immigrants from these Latin

---

and Indigenous people who self-identify as Latino. For data on the Latino population, *see Hispanic Heritage Month: 2023*, U.S. CENSUS BUREAU (Aug. 17, 2023). https://www.census.gov/newsroom/facts-for-features/2023/hispanic-heritage-month.html.

[37] Kevin Appleby, *The Importance of Immigrant Labor to the U.S. Economy*, CTR. FOR MIGRATION STUDIES (Sept. 2, 2024), https://cmsny.org/importance-of-immigrant-labor-to-us-economy/.

[38] *See* Evin Millet & Jacquelyn Pavilon, *Demographic Profile of Undocumented Hispanic Immigrants in the U.S.*, CTR. FOR MIGRATION STUDIES (Oct. 2022), https://cmsny.org/wp-content/uploads/2022/04/Hispanic_undocumented.pdf. Undocumented immigrants from Asian countries—who constitute the second largest group after Latinos—as well as undocumented immigrants from Europe, Canada, Africa, and the Middle East will also be impacted by the birthright citizenship ban. *See, e.g.*, Jeffrey Passel & Jens Manuel Krogstad, *What We Know About Unauthorized Immigrants Living in the U.S.*, PEW RSCH. CTR. (July 22, 2024), https://www.pewresearch.org/short-reads/2024/07/22/what-we-know-about-unauthorized-immigrants-living-in-the-us/#.

[39] *See* Millet & Pavilon, *supra* note ~~35~~36.

[40] *Id.*

American countries will be disparately impacted by Defendants' birthright citizenship ban.[41]

~~56~~59. Each year, about 250,000 children are born to undocumented parents.[42] These U.S.-born children live in mixed-immigration status households and are guaranteed the full benefits of American citizenship. They are entitled to a U.S. passport, birth certificate, unrestricted social security card, health care, nutrition, and housing (if they are indigent).[43]

~~57~~60. The birthright citizenship ban renders these U.S.-born children stateless~~,~~ and denies them American identity and the privileges and immunities of U.S. citizenship. The ban excludes these U.S.-born children from critical health, social, economic, and educational benefits, consigns them to living in the shadows and in the margins of society, and puts them at risk of deportation or months-long detention because of their statelessness. Defendants' birthright citizenship ban discriminates against these U.S.-born children on account of parental alienage, and national origin. The ban imposes separate and unequal treatment.

---

[41] *Id.*

[42] *See* Jeffrey S. Passel, et al., *Number of U.S.-Born Babies with Unauthorized Immigrant Parents Has Fallen Since 2007*, PEW RSCH. CTR~~.~~ (. (Nov. 1, 2018), https://www.pewresearch.org/short-reads/2018/11/01/the-number-of-u-s-born-babies-with-unauthorized-immigrant-parents-has-fallen-since-2007/.

[43] *See, e.g.~~,~~*. BRUCE LESLEY, FIRST FOCUS ON CHILDREN, *In Harm's Way: The Consequences of Denying Birthright Citizenship for America's Children and Our Future* (Nov. 15, 2024), https://firstfocus.org/wp-content/uploads/2024/11/Birthright-Citizenship-Issue-Brief.pdf.

## CLASS ACTION ALLEGATIONS

61.    Plaintiffs bring this putative class action on behalf of themselves and all those similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

62.    The proposed class is defined as:

> All persons born in the United States on or after February 19, 2025, who have been or will be denied birthright citizenship because their parents' immigration statuses are the subject of Executive Order 14160."

63.    The precise size of the class is so numerous that joinder of all members is impracticable. More than 250,000 children are born to undocumented immigrants each year.[44] In New York State alone, which ranks fourth among states with the highest proportion of undocumented immigrants, extrapolating from the annual births estimate, joining nearly eighteen thousand children and their parents is impracticable.[45]

64.    Joinder of putative class members is also impracticable because they are geographically dispersed throughout the country, are likely of low-income status, and do not possess the resources necessary to litigate individual cases.

---

[44] *See* Passel et al., *supra* n. 40.
[45] *See* Millet & Pavilon, *supra* note 36.

Joinder is also impracticable as the proposed class will fluctuate each month as new children are born in the United States to parents with immigration status targeted by the birthright citizenship ban. Further, many class members are unaware of their legal rights, and their immigration status, economic status, and, for many, language barriers hamper their ability to vindicate their rights, making a class action the superior and most economical means of resolving the questions of law and fact common to the claims of the class.

65. There are questions of law and fact common to the class, which predominate over any questions affecting only individuals, and which stem from a common policy and practice—the categorical denial of United States citizenship to all children born on or after February 19, 2025, to parents whose immigration status are targeted by the birthright citizenship Executive Order.

66. The questions of law common to the putative class include:

i) Whether Defendants' policy and practice of categorically denying United States citizenship to U.S.-born children whose parents' immigration statuses are targeted by the birthright citizenship-banning Executive Order contravenes the Citizenship Clause of the Fourteenth Amendment to the United States Constitution;

ii) Whether Defendants' policy and practice of categorically denying United States citizenship to U.S.-born children whose parents' immigration

statuses are targeted by the birthright citizenship ban abridges the Equal

Protection Clause of the Fourteenth Amendment to the United States

Constitution;

iii)  Whether Defendants' policy and practice of categorically denying

United States citizenship to U.S.-born children whose parents' immigration

statuses are targeted by the birthright citizenship-banning Executive Order

violates 8 U.S.C. § 1401(a); and

iv)  Whether Defendants' policy and practice of categorically denying

United States citizenship to U.S.-born children whose parents' immigration

statuses are targeted by the birthright citizenship ban is contrary to

constitutional right, power, privilege or immunity, including rights

guaranteed under the Fourteenth Amendment of the U.S. Constitution, in

contravention of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

67.    Plaintiffs' claims are typical of the claims of the class. Defendants'

categorical denial of birthright citizenship to otherwise eligible U.S.-born children

whose parents' immigration statuses are targeted by the birthright citizenship-

banning Executive Order violates rights guaranteed by the Fourteenth Amendment

and statutory laws. Defendants' unlawful policy and practice apply with equal

force to all members of the putative class.

31

68. Plaintiffs will fairly and adequately represent the interests of all members of the proposed class because they seek relief for themselves and on behalf of the class as a whole and have no interest antagonistic to other members of the class. Plaintiffs, like members of the putative class, have been or will be subjected to Defendants' discriminatory and unlawful policy and practice. Plaintiffs and the putative class members seek a declaration that Defendants' policy and practice is unconstitutional, violates federal statutory law, and that Defendants be enjoined from enforcing and implementing their unlawful policy and practice.

69. Plaintiffs and the putative class will fairly and adequately be represented by their counsel. LatinoJustice PRLDEF has litigated many groundbreaking civil rights cases and has substantial expertise in class action litigation, including *Orellana v. County of Suffolk*, No. 17-cv-4267 (WFK) (ARL), 2022 WL 22842064, at *9 (E.D.N.Y. 2022) (finding adequacy of representation under Rule 23(a) met where "LatinoJustice PRLDEF is a nonprofit civil right organization that routinely litigates civil rights cases and also has substantial expertise in class litigation to vindicate civil rights"); *Ligon v. City of New York*, No. 12-civ-2274, 288 F.R.D. 72 (S.D.N.Y. 2013) (granting class action certification where LatinoJustice PRLDEF was one of several civil rights organizations representing plaintiffs). Further, Named Plaintiffs' lead counsel has

32

practiced law for more than thirty years. She has served as lead or co-counsel in many class actions in federal and state courts including, for example, *S.M. by and through Mendoza v. Casey,* 23-cv-01499-BAJ-SDJ, 2025 WL 368547 (M.D. La. 2025) (finding state agency's reversal of discriminatory practice of denying driver's license to eligible U.S.-born and lawfully present minors because of their parents' immigration status warranted dismissal). LatinoJustice has the expertise and experience to represent the putative class and to prosecute this action.

70.    Defendants have acted and will act on grounds generally applicable to the class in categorically denying otherwise eligible U.S.-born children whose parents' immigration statuses are targeted by the birthright citizenship-banning Executive Order their constitutional rights guaranteed to them under the Fourteenth Amendment.

### CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Violation of the Citizenship Clause**
**(All Defendants)**

5871. All of the foregoing allegations set forth in the preceding paragraphs are repeated and realleged as if fully set forth herein.

5972. The Citizenship Clause of the Fourteenth Amendment guarantees U.S. citizenship to "all persons born . . . in the United States, and subject to the jurisdiction thereof." U.S. Const. amend. XIV, § 1.

33

6073. The plain text of the Citizenship Clause and Supreme Court precedent make clear that U.S.-born children are U.S. citizens irrespective of parental alienage, national origin, and/or immigration status.

6174. By denying U.S. citizenship to the current and future U.S.-born children of the individual Plaintiffs, and similarly situated constituents of organizational Plaintiff NYIC, and members of organizational Plaintiff RMM, ("Plaintiffs")"), and to putative class members because of parental alienage, national origin, and/or immigration status, Executive Order 14160—the birthright citizenship ban banning Executive Order—violates the Citizenship Clause.

**SECOND CAUSE OF ACTION**
**Violation of the Equal Protection Clause**
**(All Defendants)**

6275. All of the foregoing allegations set forth in the preceding paragraphs are repeated and realleged as if fully set forth herein.

6376. The Equal Protection Clause commands that "[n]o state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Discrimination against a U.S.-born minor because of parental alienage violates the Equal Protection Clause. *See Oyama v. California*, 332 U.S. 633, 646–47 (1948).

6477. By denying U.S. citizenship to the current and future U.S.-born children of the Plaintiffs and putative class members because their immigrant

parents are classified as immigrants who have temporary or undocumented status,
Executive Order 14160—the birthright citizenship ~~ban~~ banning Executive Order—
intentionally discriminates on account of alienage ~~and~~, national origin, and/or
immigration status in violation of the Equal Protection Clause.

~~65~~78. In addition, or, in the alternative, by denying U.S. citizenship to the
current and future U.S.-born children of the Plaintiffs and putative class members
because their immigrant parents have temporary or undocumented status,
Executive Order 14160—the birthright citizenship ~~ban—intentionally~~
~~discriminates on account of alienage, national origin and/or immigration status in~~
~~violation of the Equal Protection Clause.~~

~~66.    In addition, or, in the alternative, Executive Order 14160—the~~
~~birthright citizenship ban—was motivated by discriminatory animus and~~
~~disparately impacts future U.S.-born children whose parents have temporary or~~
~~undocumented status and are from Latin American countries thereby intentionally~~
~~discriminating on account of alienage, national origin and/or immigration status in~~
~~violation of the Equal Protection Clause.~~

~~67.    By subjecting Plaintiffs, who have temporary or undocumented status~~
~~and whose children are future U.S.-born citizens, to differential treatment,~~
~~Executive Order 14160—the birthright citizenship ban~~ banning Executive Order—

35

intentionally discriminates on account of alienage, national origin and/or immigration status in violation of the Equal Protection Clause.

79.    In addition, or, in the alternative, Executive Order 14160—the birthright citizenship-banning Executive Order—was motivated by discriminatory animus and disparately impacts current and future U.S.-born children and putative class members whose parents have temporary or undocumented status and are primarily from Latin American countries, thereby intentionally discriminating on account of alienage, national origin, and/or immigration status in violation of the Equal Protection Clause.

80.    By subjecting Plaintiffs and putative class members, who have temporary or undocumented status and whose children are current and future U.S.-born citizens, to differential treatment, Executive Order 14160—the birthright citizenship-banning Executive Order—intentionally discriminates on account of alienage, national origin, and/or immigration status in violation of the Equal Protection Clause. The birthright citizenship-banning Executive Order was motivated by discriminatory animus and disparately impacts Plaintiffs and putative class members, who have temporary or undocumented status and are primarily from Latin American countries, thereby intentionally discriminating on account of alienage, national origin, and/or immigration status in violation of the Equal Protection Clause.

**Commented [NS2]:** I wasn't sure if this paragraph was meant to be separate since the language is almost the same as paragraph 77. Mariana also noticed that we were missing a paragraph for discriminatory animus towards the parents, so we've added suggested language for that below.

**Commented [FF3R2]:** Undo the delete. The difference between this and the preceding paragraph is classification. The former is about straight up unlawful classification and the other is intentional discrimination in its absence. Besides this paragraph was in the original and first amended complaints.

**Commented [NS4R2]:** Oh, I understand now—thanks for explaining and sorry about the delete!

**THIRD CAUSE OF ACTION**
**Violation of 8 U.S.C. § 1401(a)**
**(All Defendants excluding Defendant Trump)**

~~68~~81. All of the foregoing allegations set forth in the preceding paragraphs are repeated and realleged as if fully set forth herein.

~~69~~82. 8 U.S.C. § 1401(a) guarantees U.S. citizenship to "a person born in the United States, and subject to the jurisdiction thereof."

~~70~~83. By denying U.S. citizenship to the current and future U.S.-born children of the Plaintiffs and putative class members because of parental alienage, national origin, and/or immigration status, Executive Order 14160—the birthright citizenship ~~ban~~ banning Executive Order—violates 8 U.S.C. § 1401(a).

**FOURTH CAUSE OF ACTION**
**Violation of Administrative Procedure Act, 5 U.S.C. § 706 (2)(B)**
**(All Defendants excluding Defendant Trump)**

84.    All of the foregoing allegations set forth in the preceding paragraphs are repeated and realleged as if fully set forth herein.

85.    5 U.S.C. § 706(2)(B) proscribes agency action that is "contrary to constitutional right, power, privilege, or immunity."

86.    By denying U.S. citizenship to the current and future U.S.-born children of the Plaintiffs and putative class members because of parental alienage, national origin, and/or immigration status, Executive Order 14160—the birthright citizenship-banning Executive Order—is contrary to constitutional law, power,

privilege, or immunity, including rights guaranteed under the Fourteenth

Amendment, in contravention of 5 U.S.C. § 706(2)(B).

## PRAYERS FOR RELIEF

Formatted: Keep lines together

WHEREFORE Plaintiffs request that the Court grant the following relief:

a.      Certify this case as a class action appointing Plaintiffs as Class

Representatives and appointing the Class Representative Plaintiffs' Counsel as

Class Counsel;

a.b.    Declare Executive Order 14160—the birthright citizenship ban banning

Executive Order— unconstitutional and contrary to the laws of the United States;

b.c.    Permanently enjoin the Defendants from enforcing Executive Order

14160—the birthright citizenship ban banning Executive Order;

c.d.    Require Defendants to pay reasonable attorneys' fees and costs; and

d.e.    Order such other relief as the Court deems just and proper.

Dated this 3rd9th day of MarchJuly, 2025

Formatted: Space After: 0 pt, Line spacing: single

Formatted: Underline

Respectfully submitted,

By: /s/ Francisca D. Fajana
Francisca D. Fajana
Cesar Z. Ruiz
Mariana C. Lopez
Michael Asparrin*
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901

38

New York, NY 10115
212.219.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org
—————————Mlopez@latinojustice.org
MAsparrin@latinojustice.org

*Application for admission forthcoming

Formatted: Indent: Left:  2.5", First line:  0.5"

39