UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK IMMIGRATION COALITION, *et al.*,

                    Plaintiffs,

     v.

DONALD J. TRUMP, *et al.*,

                  Defendants.

No. 25 Civ. 1309 (MMG)

---

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

JAY CLAYTON
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

U.S. Department of Justice
Civil Division
1100 L Street N.W.
Washington, DC 20005

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ................................................................................................3

STANDARD OF REVIEW ..................................................................................5

ARGUMENT .....................................................................................................5

      A.     Plaintiffs Are Not Likely to Succeed on Their Citizenship
           Clause Claim ......................................................................................5

          1.  The Term "Jurisdiction" in the Citizenship Clause Does Not
             Refer to Regulatory Power....................................................................7

          2.  Children Born of Parents Unlawfully Present or Whose Presence Is
             Lawful but Temporary Fall Outside the Citizenship Clause ...............14

          3.  Applicable Interpretive Principles Support the Government's
             Reading of the Citizenship Clause ......................................................16

          4.  Plaintiffs' Contrary Arguments Are Unpersuasive..............................18

      B.     Plaintiffs Are Not Likely to Succeed on Their Equal
           Protection Claim  ...........................................................................21

      C.     Plaintiffs Are Not Likely to Succeed on Their INA Claim ......................23

      D.     Plaintiffs Will Not Suffer Irreparable Harm During the Pendency
           of this Lawsuit...............................................................................24

      E.     The Public Interest Does Not Favor an Injunction ...................................24

      F.     Any Relief Should Be Limited ................................................................25

      G.     The Court Should Stay any Preliminary Injunction Pending Appeal
           and a Bond Should Be Required.................................................................26

CONCLUSION.............................................................................................27

# TABLE OF AUTHORITIES

Cases

*Afroyim v. Rusk,*
   387 U.S. 253 (1967)............................................................................................................21

*Arizona v. United States,*
   567 U.S. 387 (2012)............................................................................................................25

*Barbara v. Trump,*
   *25-cv244-JL-AJ, ___ F. Supp. 3d ___,* 2025 WL 1904338 (D.N.H. July 10, 2025) .................4

*Bova v. Cox Commc'ns, Inc.,*
   No. 7:01CV00090, 2001 WL 1654708 (W.D. Va. Dec. 12, 2001) .........................................26

*Haaland v. Brackeen,*
   599 U.S 255 (2023)................................................................................................................8

*Cap. Area Immigrants' Rts. Coal. v. Trump,*
   471 F. Supp. 3d 25 (D.D.C. 2020)........................................................................................24

*Carlisle v. United States,*
   83 U.S. (16 Wall.) 147 (1872) ..............................................................................................15

*Cherokee Nation v. Georgia,*
   30 U.S. (5 Pet.) 1 (1831)......................................................................................................15

*Chin Bak Kan v. United States,*
   186 U.S. 193 (1902)............................................................................................................19

*Dalton v. Specter,*
   511 U.S. 462 (1994)............................................................................................................24

*Doe #1 v. Trump,*
   957 F.3d 1050 (9th Cir. 2020) .............................................................................................25

*Elk v. Wilkins,*
   112 U.S. 94 (1884)........................................................................................................*passim*

*Elkins v. Moreno,*
   435 U.S. 647 (1978)............................................................................................................15

*Faiveley Transport Malmo AB v. Wabtec Corp.,*
   559 F.3d 110 (2d Cir. 2009).................................................................................................24

*Fitsemanu v. U.S.,*
   1 F.4th 862 (10th Cir. 2021) ...............................................................................................22

*Franchise Tax Bd. of Cal. v. Hyatt,*
    587 U.S. 230 (2019) ................................................................................................ 10

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ................................................................................................ 26

*Gen. Bldg. Contractors Ass'n v. Pennsylvania,*
    458 U.S. 375 (1982) .......................................................................................... 10, 11

*Harisiades v. Shaughnessy,*
    342 U.S. 580 (1952) ................................................................................................ 16

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................................................ 25

*Inglis v. Trs. of Sailor's Snug Harbor,*
    28 U.S. (3 Pet.) 99 (1830) .................................................................................. 10, 18

*INS v. Chadha,*
    462 U.S. 919 (1983) ................................................................................................ 21

*INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.,*
    510 U.S. 1301 (1993) .............................................................................................. 25

*Kawakita v. United States,*
    343 U.S. 717 (1952) ................................................................................................ 17

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter,*
    575 U.S. 650 (2015) ................................................................................................ 23

*Kwock Jan Fat v. White,*
    253 U.S. 454 (1920) ................................................................................................ 19

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin,*
    599 U.S. 382 (2023) ................................................................................................ 15

*Lamar v. Micou,*
    112 U.S. 452 (1884) ................................................................................................ 15

*League of United Latin American Citizens v. Executive Office of the President,*
    ___ F. Supp. 3d ___, 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ............................ 24

*Liu v. SEC,*
    591 U.S. 71 (2020) .................................................................................................. 17

*Lone Wolf v. Hitchcock,*
    187 U.S. 553 (1903) .................................................................................................. 8

*Loveridge v. Pendleton Woolen Mills, Inc.*,
  788 F.2d 914 (2d Cir. 1986)............................................................. 24

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803)........................................................... 9

*Martinez v. Bynum*,
  461 U.S. 321 (1983)....................................................................... 15

*Maryland v. King*,
  567 U.S. 1301 (2012)..................................................................... 25

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010)....................................................................... 10

*Minor v. Happersett*,
  88 U.S. (21 Wall.) 162 (1874) ........................................................ 14

*Mississippi v. Johnson*,
  71 U.S. 475 (1866)......................................................................... 26

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022)........................................................................... 20

*Nishimura Ekiu v. United States*,
  142 U.S. 651 (1892)....................................................................... 17

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................. 24, 26

*Oceanic Steam Navigation Co. v. Stranahan*,
  214 U.S. 320 (1909)....................................................................... 17

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022)....................................................................... 21

*Plyler v. Doe*,
  457 U.S. 202 (1982)....................................................................... 22

*Robertson v. Cease*,
  97 U.S. 646 (1878)......................................................................... 11

*Rogers v. Bellei*,
  401 U.S. 815 (1971)....................................................................... 17

*Savorgnan v. United States*,
  338 U.S. 491 (1950)....................................................................... 17

iv

*Schooner Exchange v. McFaddon*,
    11 U.S. (7 Cranch) 116 (1812) .................................................................................. 8, 9

*Soo v. U.S.*,
    3 F.2d 592 (2d Cir. 1924) .............................................................................................. 6

*Students for Fair Admissions v. U.S. Mil. Acad. at West Point*,
    709 F. Supp. 3d 118 (S.D.N.Y. 2024) .......................................................................... 5

*Taggart v. Lorenzen*,
    587 U.S. 554 (2019) .................................................................................................... 23

*The Pizarro*,
    15 U.S. (2 Wheat.) 227 (1817) ................................................................................... 15

*The Slaughterhouse Cases*,
    83 U.S. (16 Wall.) 36 (1873) ..................................................................................... 13

*Trump v. CASA, Inc.*,
    --- S. Ct. ---, 2025 WL 1773631 (U.S. June 27, 2025) ............................................. 26

*Tuaua v. U.S.*,
    788 F.3d 300 (D.C. Cir. 2015) ................................................................. 1, 15, 21, 22

*United States v. Holliday*,
    70 U.S. (3 Wall.) 407 (1865) ....................................................................................... 8

*United States v. Kagama*,
    118 U.S. 375 (1886) ..................................................................................................... 8

*United States v. Manzi*,
    276 U.S. 463 (1928) ................................................................................................... 17

*United States v. Rahimi*,
    602 U.S. 680 (2024) ................................................................................................... 20

*United States v. Wong Kim Ark*,
    169 U.S. 649  (1898) .......................................................................................... *passim*

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983) ..................................................................................................... 8

*Wilkins v. United States*,
    598 U.S. 152 (2023) ..................................................................................................... 7

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................................................... 5

*Winton v. Amos,*
   255 U.S. 373 (1921) ............................................................................................ 8

Statutes

8 U.S.C. § 1401(a) ....................................................................................... 23, 24

8 U.S.C. § 1401(b) ............................................................................................. 5

8 U.S.C. § 1401(c) ........................................................................................... 18

8 U.S.C. § 1503 ............................................................................................... 25

Page Act of 1875, 18 Stat. 477 (Mar. 3, 1875) ............................................... 11


Rules

Fed. R. Civ. P. 65(a)(2) .................................................................................. 26

Fed. R. Civ. P 65(c) ........................................................................................ 27

Other Authorities

2 Cong. Rec. 3279 ........................................................................................... 13

Exec. Order No. 14159 ...................................................................................... 3

Exec. Order No. 14160 ............................................................................... *passim*

Exec. Order No. 14165 ...................................................................................... 3

Proclamation No. 10886 .................................................................................... 3

*The Significance of Domicile in Lyman Trumbull's Conception of Citizenship,*
   119 Yale L. J. 1351 (2010) .......................................................................... 12

*The Significance of Parental Domicile Under the Citizenship Clause,*
   101 Va. L. Rev. 455 (2015) ......................................................................... 13

## PRELIMINARY STATEMENT

Defendants, by their attorneys, respectfully submit this memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction.

The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."  U.S. Const. amend. XIV, § 1.  On January 20, 2025, President Trump issued an Executive Order addressing what it means to be "subject to the jurisdiction" of the United States.  *See* Exec. Order No. 14160, "Protecting the Meaning and Value of American Citizenship," 90 Fed. Reg. 8449 (Jan. 20, 2025) (the "Citizenship EO" or "EO").  The EO provides that the Constitution does not grant birthright citizenship to children whose mothers have temporary immigration status or are undocumented and whose fathers are not U.S. citizens or lawful permanent residents.  Text, history, and precedent support the conclusion that the Constitution does not grant American citizenship to, *inter alia*, the children of parents who have circumvented (or outright defied) federal immigration laws.

Plaintiffs' request for a preliminary injunction should be denied because they are unlikely to succeed on the merits.  As was apparent from the time of its enactment, the Citizenship Clause's use of the phrase "subject to the jurisdiction" of the United States contemplates something more than merely being born within the United States and/or being subject to this country's regulatory power.  Rather, to fall within its scope, a person must be "completely subject to [the] political jurisdiction" of the United States, *i.e.*, there must be a mutual compact – the individual must pledge "direct and immediate allegiance" to this country and the government must agree to extend its protection.  *Elk v. Wilkins*, 112 U.S. 94, 102 (1884); *see also Tuaua v. U.S.*, 788 F.3d 300, 305 (D.C. Cir. 2015).  That mutual compact does not exist where the parents have circumvented or defied federal immigration

laws to enter this country.  Indeed, for many of these parents, the government may be unaware that they ever entered the country.

"[E]ach government ha[s] a right to decide for itself who should be admitted or deemed citizens." *United States v. Wong Kim Ark*, 169 U.S. 649, 661  (1898) (internal quotation marks and citation omitted).  Congress and the President have decided not to extend birthright citizenship to children of parents who do not have lawful status in this country or only have temporary status, just as citizenship is not extended to children of diplomats or occupying enemies.

Plaintiffs' contention that the EO upends well-settled law is mistaken; it is their maximalist reading which runs headlong into existing law.  Their reading inconsistent with the Supreme Court's holding in *Elk* that the children of Tribal Indians do not fall within the Clause, even though they were subject to the regulatory power of the United States, *id*. at 101-02, and would render the Civil Rights Act of 1866 (which defined citizenship to cover those born in the United States, not "subject to any foreign power") unconstitutional just two years after it was passed.  But the Citizenship Clause was an effort to constitutionalize the Civil Rights Act.

Likewise, Plaintiffs' heavy reliance on the Supreme Court's decision in *Wong Kim Ark* is misplaced.  That case did not resolve the question at issue here.  Indeed, the Supreme Court was careful to cabin its holding to the children of those with a "*permanent* domicile and residence in the United States." *Id*. at 653 (emphasis added).  This case deals with a different set of parents.  Because the consent of the sovereign is absent where, as here, the parents entered the country illegally or with only temporary status, their children are not "subject to the jurisdiction" of the United States within the meaning of the Citizenship Clause and do not receive birthright citizenship.

The Court should deny Plaintiffs' motion for a preliminary injunction.

**BACKGROUND**

The Citizenship EO is an integral part of President Trump's broader effort to address the United States' immigration system and the ongoing crisis at the southern border. *See, e.g.*, Exec. Order No. 14165, "Securing Our Borders," 90 Fed. Reg. 8467 (Jan. 20, 2025); Proclamation No. 10886, "Declaring a National Emergency at the Southern Border of the United States," 90 Fed. Reg. 8327 (Jan. 20, 2025); Exec. Order No. 14159, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443 (Jan. 20, 2025) ("Unlawful Immigration EO"). The President has stated that individuals unlawfully in this country "present significant threats to national security and public safety," and that the severity of these problems warrants a full panoply of immigration measures. Unlawful Immigration EO, § 1.

The Citizenship EO seeks to correct the Executive Branch's prior misreading of the Citizenship Clause. It recognizes that the Constitution and the Immigration and Nationality Act ("INA") provide for birthright citizenship for all persons who are born in the United States and subject to the jurisdiction thereof, and identifies two circumstances in which a person born in the United States is not automatically extended the privilege of citizenship:

> (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Citizenship EO § 1.

Section 2(a) of the EO directs the Executive Branch (1) not to issue documents recognizing U.S. citizenship to persons born in the United States under the conditions described in section 1, and (2) not to accept documents issued by state, local, or other governments purporting to recognize the

U.S. citizenship of such persons.  *Id.* § 2(a).  The EO specifies, however, that those directives "apply only to persons who are born within the United States after 30 days from the date of this order," or February 19, 2025.  *Id.* § 2(b).  The EO makes clear that its provisions do not "affect the entitlement of other individuals, including children of lawful permanent residents, to obtain documentation of their United States citizenship."  *Id*. § 2(c).

With respect to enforcement, the EO directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to take "all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order," and not to "act, or forbear from acting, in any manner inconsistent with this order."  *Id.* § 3(a).  It further directs the heads of all federal agencies to issue public guidance within 30 days (by February 19, 2025) "regarding this order's implementation with respect to their operations and activities."  *Id*. § 3(b).[1]

Plaintiffs filed their initial complaint in this action on February 13, 2025, ECF No. 1, and an amended complaint on March 5, 2025, ECF No. 15.  They moved for a preliminary injunction on March 21, 2025.  ECF No. 19.  On July 9, 2025, Plaintiffs filed motions for, *inter alia*, class certification and permission to file a Second Amended Complaint, ECF Nos. 44, 46, as well as a supplemental brief in support of their preliminary injunction motion, ECF No. 45.  The Court granted Plaintiffs' motion to file a Second Amended Complaint on July 14, 20925 (ECF No. 50), and Plaintiffs file the complaint the next day (ECF No. 51) and re-filed the complaint on July 16, 2025 (ECF No. 53).

---

[1] The Citizenship EO has been challenged in nine other separate lawsuits pending in judicial districts in Maryland, California, the District of Columbia, Massachusetts, New Hampshire, and Washington. The district court in the District of New Hampshire recently granted the plaintiffs' motion for a class wide preliminary injunction.  *See* "*Barbara" v. Trump*, No. 25-cv244-JL-AJ, ___ F. Supp. 3d ___, 2025 WL 1904338 (D.N.H. July 10, 2025).

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain such extraordinary relief, the movant must establish "(1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; and (3) that a preliminary injunction is in the public interest." *Students for Fair Admissions v. U.S. Mil. Acad. at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024).

## ARGUMENT

### A.    Plaintiffs Are Not Likely to Succeed on Their Citizenship Clause Claim

The Citizenship Clause provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."  U.S. Const. Amend. XIV, § 1.  The Supreme Court has identified multiple categories of persons who, despite being born in the United States, are not constitutionally entitled to citizenship because they are not subject to the jurisdiction of the United States: children of foreign sovereigns or their diplomats, children of alien enemies in hostile occupation, children born on foreign public ships, and certain children of members of Indian tribes.[2]  *Wong Kim Ark*, 169 U.S. at 682, 693.  The EO addresses an additional category of persons not "subject to the jurisdiction" of the United States: children born in the United States of foreign parents whose presence is either unlawful or lawful but temporary.  Plaintiffs' contention that the EO violates the Citizenship Clause because birth within the United States automatically confers citizenship is mistaken.

---

[2] Although the Citizenship Clause has always been understood to exclude certain children of members of Indian tribes from birthright citizenship, Congress has by statute extended U.S. citizenship to any "person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe."  8 U.S.C. § 1401(b).

Plaintiffs' argument suffers from two fundamental misconceptions.  First, Plaintiffs maintain that the question at issue here was settled in *Wong Kim Ark*.  *See* Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction (ECF No. 20) ("Pls. Mem.") at 5, 6, 23-24; Plaintiffs' Supplemental Brief in Support of Their Motion for a Preliminary Injunction (ECF No. 45) ("Pls. Suppl. Mem.") at 2.  However, *Wong Kim Ark* addressed a different issue – whether a child born in the United States of parents who "ha[d] a permanent domicile and residence in the United States and [we]re there carrying on business" was a citizen of the United States.  169 U.S. at 705.  The Court's answer in the affirmative of that question does not resolve the separate and different question presented here of whether a child born in the United States of parents who are in this country unlawfully or with only temporary permission (and therefore do not have a "permanent domicile and residence") becomes a citizen at the time of birth.

Second, and relatedly, Plaintiffs mistakenly contend that United States citizenship is conferred simply "by birth on United States soil" and "[t]here are no limitations based on parental status."  Pls. Mem. at 22; *see also id.* at 5; Pls. Suppl. Mem. at 2 (same).  To the contrary, the law is clear that the focus of the inquiry under the Citizenship Clause is on the *parents*.  Thus, the Second Circuit, in ruling in the context of a deportation proceeding whether a Chinese laborer who was born in the U.S. was a citizen, stated that "it is clear that a person of that race is a citizen of the United States if he is born within this country *of parents who are subject to the jurisdiction thereof*."  *Soo v. U.S.*, 3 F.2d 592, 594 (2d Cir. 1924) (emphasis added) (later referencing *Wong Kim Ark*).  The focus on the parents makes sense because it is with them that the government must enter into the social compact of allegiance and protection.  *See Wong Kim Ark*, 169 U.S. at 655 (discussing the fundamental principle of English common law, mutual "allegiance and protection").  And the recognized exceptions to birthright citizenship for children of foreign sovereigns or their diplomats, children of alien enemies

in hostile occupation, children born to foreigners on foreign public vessels in U.S. waters, and certain children of members of Indian tribes all turn on the parents' status and allegiance. *See id.* at 659-60 (discussing the exceptions).

Indeed, the Supreme Court in *Wong Kim Ark* recognized that lawful status in the country was integral to being "subject to the jurisdiction" of the United States within the meaning of the Citizenship Clause:

> Chinese persons, born out of the United States, remaining subjects of the emperor of China, and not having become citizens of the United States, are entitled to the protection of and owe allegiance to the United States, *so long as they are permitted by the United States to reside here;* and are "subject to the jurisdiction thereof" in the same sense as all other aliens residing in the United States.

*Id.* at 694; *see also id.* at 660, 701-02; *Elk v. Wilkins*, 112 U.S. 94, 103 (1884) ("no one can become a citizen of a nation without its consent"). For these reasons, as discussed below, the EO is in accord with the Citizenship Clause.

### 1. The Term "Jurisdiction" in the Citizenship Clause Does Not Refer to Regulatory Power

"Jurisdiction . . . is a word of many, too many, meanings." *Wilkins v. United States*, 598 U.S. 152, 156 (2023) (citation omitted). Plaintiffs equate "jurisdiction" with something akin to regulatory power, arguing that it includes everyone who was born within the nation's territory (subject to the several exceptions recognized by the Supreme Court). Pls. Mem. at 23-24 & n.2. That interpretation is incorrect, as it conflicts with both Supreme Court precedent and ample evidence as to the provision's original public meaning.

Most importantly, Plaintiffs' understanding of the term "jurisdiction" conflicts with Supreme Court precedents identifying the categories of persons who are not subject to the United States' jurisdiction within the meaning of the Citizenship Clause. For example, the Supreme Court has held that children of members of Indian tribes, "owing immediate allegiance" to those tribes, do not acquire

citizenship by birth in the United States.  *Elk*, 112 U.S. at 102; *see Wong Kim Ark*, 169 U.S. at 680-82.  Yet members of Indian tribes and their children who are born in the United States are plainly subject to the United States' regulatory power.  *Winton v. Amos*, 255 U.S. 373, 391 (1921) ("It is thoroughly established that Congress has plenary authority over the Indians and all their tribal relations.").  It is undisputed that Congress may regulate Indian commercial activities, see *United States v. Holliday*, 70 U.S. (3 Wall.) 407, 416-18 (1865); Indian property, *see Lone Wolf v. Hitchcock*, 187 U.S. 553, 565 (1903); and Indian adoptions, see *Haaland v. Brackeen*, 599 U.S. 255, 276-280 (2023).  And the United States may punish them for crimes.  *See United States v. Kagama*, 118 U.S. 375, 379-385 (1886).  If, as Plaintiffs argue, "subject to the jurisdiction thereof" means subject to U.S. law, this longstanding exception for children of members of Indian tribes would be inexplicable.

Plaintiffs' reading similarly cannot explain the exception to birthright citizenship for "children of foreign sovereigns or their ministers."  *Wong Kim Ark*, 169 U.S. at 693.  Although foreign leaders and diplomats have traditionally enjoyed immunity as a matter of common law, the Constitution allows Congress to abrogate that immunity or make exceptions to it.  *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486 (1983).  To the extent Plaintiffs would argue that children of foreign leaders or diplomats are not subject to the United States' jurisdiction because the U.S. *chooses* to extend immunity to them, its theory would allow Congress to turn the Citizenship Clause on and off at will by extending or retracting immunity.

Plaintiffs' reading also violates the surplusage canon.  According to Plaintiffs, the phrase "subject to the jurisdiction thereof" in the Citizenship Clause adds nothing to the phrase in the same sentence "born or naturalized in the United States."  Pls. Br. at 22.  Because the United States is sovereign over its territory, everyone who is born (and so present) in the United States would necessarily be subject, at least to some extent, to the United States' regulatory authority.  *See Schooner*

*Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 136 (1812).  But "[i]t cannot be presumed that any clause in the [C]onstitution is intended to be without effect; and therefore such a construction is inadmissible." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803).

Instead of equating "jurisdiction" with regulatory authority, the Supreme Court has held that a person is "subject to the jurisdiction" of the United States under the Citizenship Clause if he is born "in the allegiance and under the protection of the country." *Wong Kim Ark*, 169 U.S. at 693.  That allegiance to the United States, the Court has further held, must be "direct," "immediate," and "complete[]," unqualified by "allegiance to any alien power." *Elk*, 112 U.S. at 101-02.  In other words, a person is subject to the jurisdiction of the United States within the meaning of the Clause only if he is *not* subject to the jurisdiction of a foreign power, and the "nation" has "consent[ed]" to him becoming part of its own "jurisdiction." *Id.* at 102-03; *see also Schooner Exchange*, 11 U.S. at 136 (explaining a nation's "jurisdiction . . . must be traced up to the consent of the nation itself"); *Wong Kim Ark*, 169 U.S. at 674 (indicating that individuals who are not permitted by the United States to reside here are not "subject to the jurisdiction thereof" within the meaning of the Citizenship Clause).

This is consistent with the common law, where "[t]wo things usually concur to create citizenship: [f]irst, birth locally within the dominions of the sovereign; and, secondly, birth . . . within the ligeance, of the sovereign." *Wong Kim Ark*, 169 U.S. at 659 (citation omitted).  The phrase "born . . . in the United States," U.S. Const. amend. XIV, § 1, codifies the traditional requirement of "birth within the territory," *Wong Kim Ark* 169 U.S. at 693, and the phrase "subject to the jurisdiction thereof," U.S. Const. amend. XIV, § 1, codifies the traditional requirement of birth "in the allegiance" of the country, *Wong Kim Ark*, 169 U.S. at 693.  This common law principle embraced all persons who were born within the King's allegiance and subject to his protection. *Id.* at 655.  Such allegiance

and protection were mutual.  *Id.*[3]

The Supreme Court's reading of the Citizenship Clause reflects its statutory background. Months before Congress proposed the Fourteenth Amendment, it enacted the Civil Rights Act of 1866.  That Act served as "an initial blueprint" for the Amendment, *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389 (1982), and the Fourteenth Amendment in turn "provide[d] a constitutional basis for protecting the rights set out" in the Act, *McDonald v. City of Chicago*, 561 U.S. 742, 775 (2010).  The Act stated, as relevant here, that "all persons born in the United States and *not subject to any foreign power*, excluding Indians not taxed, are hereby declared to be citizens of the United States."  Civil Rights Act § 1, 14 Stat. 27 (1866) (emphasis added).  There is no reason to read the phrase "subject to the jurisdiction thereof" in the Fourteenth Amendment as broader than the phrase "not subject to any foreign power" in the Act—in no small part, because doing so would render the Civil Rights Act unconstitutional.  And, as telling, the Act's citizenship language remained on the books until revised by the Nationality Act of 1940, ch. 876, § 201(a), 54 Stat. 1137, 1138, suggesting that Congress regarded the Act's "not subject to any foreign power" requirement as equivalent to the Fourteenth Amendment's "subject to the jurisdiction" requirement.

---

[3] Emmerich de Vattel, "the founding era's foremost expert on the law of nations," *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 239 (2019), explained that citizenship under the law of nations depended not only on the child's place of birth, but also on the parents' political status.  According to Vattel, citizenship by virtue of birth in the country extends to "those born in a country, of parents who are citizens," as well as the children of "perpetual inhabitants" of that country.  Emmerich de Vattel, *The Law of Nations* § 212, at 101-02 (London, printed for G.G. and J. Robinson, Paternoster-Row, 1797 ed.).  Citizenship does not extend, however, to children of those foreigners who lack "the right of perpetual residence" in the country.  *Id.* § 213, at 102; *accord Inglis v. Trs. of Sailor's Snug Harbor*, 28 U.S. (3 Pet.) 99, 164 (1830) ("children even of aliens born in a country, *while the parents are resident there*," "are subjects by birth.") (emphasis added); Joseph Story, *Commentaries on the Conflict of Laws* § 48, at 48 (1834) ("Persons, who are born in a country, are generally deemed citizens and subjects of that country.  A reasonable qualification of this rule would seem to be, that it should not apply to the children of parents, who were *in itinere* in the country, or abiding there for temporary purposes, as for health, or occasional business.").

Debates on the Civil Rights Act and the Amendment—which were drafted by the same Congress, *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 390-91—show that members of Congress shared that understanding. During the debates, Senator Lyman Trumbull explained that the Act's purpose was "to make citizens of everybody born in the United States who owe[d] allegiance to the United States." Cong. Globe, 39th Cong., 1st Sess. 572 (1866). Senator Trumbull explained:

> What do we mean by "subject to the jurisdiction of the United States?" Not owing allegiance to anybody else. That is what it means. . . . It cannot be said of any Indian who owes allegiance, partial allegiance if you please, to some other Government that he is "subject to the jurisdiction of the United States."

*Id.* at 2893. Senator Trumbull went on to equate "being subject to our jurisdiction" with "owing allegiance solely to the United States." *Id.* at 2894; *see also id.* at 2893 (Senator Reverdy Johnson).

The full text of the Citizenship Clause reinforces that reading of the Clause's jurisdictional element. The Clause provides that persons born in the United States and subject to its jurisdiction "are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. The Clause uses the term "reside[nce]" synonymously with "domicile." *See Robertson v. Cease*, 97 U.S. 646, 650 (1878) (explaining that state citizenship requires "a fixed permanent domicile in that State"). The text thus makes clear that citizenship flows from lawful domicile. *See Wong Kim Ark*, 169 U.S. at 674.[4]

Again, Congressional debates over the Civil Rights Act and Fourteenth Amendment confirm this requirement. For instance, when Congress was considering the Civil Rights Act, Senator Trumbull, "who wrote [the Act's] citizenship language and managed the Act in the Senate, wrote a letter to President Andrew Johnson summarizing the bill." Mark Shawhan, Comment, *The*

---

[4] Plaintiffs' suggestion that Congress intended the Citizenship Clause to grant citizenship to children of parents who are present in the country unlawfully or with temporary status, Pls. Mem. at 23, is incorrect. In 1866, when Congress approved the amendment, immigration was essentially unhindered such that there was no category of individuals "unlawfully present in the United States." EO § 1. *See* Page Act of 1875, 18 Stat. 477 (Mar. 3, 1875) (creating a category of "illegal alien").

*Significance of Domicile in Lyman Trumbull's Conception of Citizenship*, 119 Yale L. J. 1351, 1352 (2010) (footnotes omitted).  The Act, as noted above, provided that "all persons born in the United States and *not subject to any foreign power*, excluding Indians not taxed, are hereby declared to be citizens."  Civil Rights Act § 1, 14 Stat. 27 (emphasis added).  Senator Trumbull summarized that provision: "The Bill declares 'all persons' *born of parents domiciled in the United States*, except untaxed Indians, to be citizens of the United States."  Shawhan, *supra*, at 1352-53 (emphasis added) (citations omitted).  "Trumbull thus understood the Act's 'not subject to any foreign [p]ower' requirement as equivalent to 'child of parents domiciled in the United States.'"  *Id.* at 1353 (footnote omitted).

Moreover, during a debate over the Fourteenth Amendment, Senator Benjamin Wade proposed a version of the Amendment that would have referred to "persons born in the United States" (without the additional qualification of being "subject to the jurisdiction thereof").  Cong. Globe, 39th Cong., 1st Sess. 2768 (1866).  One of his colleagues objected that "persons may be born in the United States and yet not be citizens," giving the example of "a person [who] is born here of parents from abroad temporarily in this country."  *Id.* at 2769.  Senator Wade acknowledged that the unadorned phrase "born in the United States" would indeed encompass those individuals, but he argued that the situation would arise so infrequently that "it would be best not to alter the law for that case."  *Id.* at 2768-69.  That exchange concludes that "a person [who] is born here of parents from abroad temporarily in this country" is not subject to the jurisdiction of the United States, *id.* at 2768-69, and is accordingly not constitutionally entitled to citizenship by birth.

Perhaps most telling, right on the heels of the Citizenship Clause, the Supreme Court described its scope as such: "The phrase, 'subject to its jurisdiction,' was intended to exclude from its operation children of ministers, consuls, *and citizens or subjects of foreign States* born within the United States."

*The Slaughterhouse Cases*, 83 U.S. (16 Wall.) 36, 73 (1873) (emphasis added).  That is consistent with the Citizenship EO.  Contemporary commentators expressed similar views.  *See, e.g.*, *Hall*, *supra*, 236-237 ("In the United States it would seem that the children of foreigners in transient residence are not citizens."); Alexander Porter Morse, *A Treatise on Citizenship* 248 (1881) (same).

The political branches operated from the same understanding in the years following the Fourteenth Amendment's enactment.  For instance, six years after ratification, Representative Ebenezer Hoar proposed a bill "to carry into execution the provisions of the [F]ourteenth [A]mendment . . . concerning citizenship."  2 Cong. Rec. 3279 (1874).  The bill would have provided that, as a general matter, "a child born within the United States of parents who are not citizens and who do not reside within the United States, . . . shall not be regarded as a citizen thereof."  *Id.* Although the bill ultimately failed, its "parental domicile requirement" generated little meaningful "debate or controversy."  Justin Lollman, Note, *The Significance of Parental Domicile Under the Citizenship Clause*, 101 Va. L. Rev. 455, 475 (2015).  The bill thus suggests that, soon after the ratification of the Fourteenth Amendment, members of Congress accepted that children born of non-resident alien parents are not subject to the Citizenship Clause.

The Executive Branch, too, at times took the position that the Citizenship Clause did not confer citizenship upon children born in the United States to non-resident alien parents.  In 1885, Secretary of State Frederick T. Frelinghuysen issued an opinion denying a passport to an applicant who was "born of Saxon subjects, temporarily in the United States."  2 *A Digest of the International Law of the United States* § 183, at 397 (Francis Wharton ed., 2d. ed. 1887) (*Wharton's Digest*). Secretary Frelinghuysen explained that the applicant's claim of birthright citizenship was "untenable" because the applicant was "subject to [a] foreign power," and "the fact of birth, under circumstances implying alien subjection, establishes of itself no right of citizenship."  *Id.* at 398.

Finally, as a decisive cross-check, the government's reading is the only one that fully explains the Supreme Court's precedents on citizenship by birth in the United States.  It was "never doubted" that "children born of citizen parents" owe allegiance to the United States and are subject to its jurisdiction. *Minor v. Happersett*, 88 U.S. (21 Wall.) 162, 167 (1874).  In *Wong Kim Ark*, the Court held that a child born in the United States "of parents of Chinese descent, who at the time of his birth [were] subjects of the emperor of China, but have a permanent domicile and residence in the United States, and are there carrying on business, and are not employed in any diplomatic or official capacity" by China are likewise subject to the jurisdiction of the United States.  169 U.S. at 653.  By contrast, children of diplomats, children of certain alien enemies, and children born on foreign public ships are not subject to the jurisdiction of the United States because they all owe allegiance to foreign sovereigns under principles of common law.  *See id.* at 655.  And the Court has held that certain children of members of Indian tribes are not subject to the jurisdiction of the United States in the necessary sense because they "owe[] immediate allegiance to their several tribes." *Elk*, 112 U.S. at 99.

### 2. Children Born of Parents Unlawfully Present or Whose Presence Is Lawful but Temporary Fall Outside the Citizenship Clause

To determine whether a category of individuals falls within this nation's allegiance, the Supreme Court has looked to background principles of the common law and the law of nations, as understood in the United States at the time of the ratification of the Fourteenth Amendment.  *See Wong Kim Ark*, 169 U.S. at 653-55.  Under those principles, a child born of foreign parents other than lawful permanent residents is domiciled in, and owes a measure of allegiance to, his parents' home country. As a result, such a child is not subject to the jurisdiction of the United States within the meaning of the Citizenship Clause.

Under the common law, a person owes a form of "allegiance" to the country in which they are

"domiciled." *Carlisle v. United States*, 83 U.S. (16 Wall.) 147, 155 (1872); *see The Pizarro*, 15 U.S. (2 Wheat.) 227, 246 (1817) (Story, J.) ("[A] person domiciled in a country . . . owes allegiance to the country."). A child's domicile, and thus their allegiance, "follow[s] the independent domicile of their parent." *Lamar v. Micou*, 112 U.S. 452, 470 (1884).

Temporary visitors and unlawfully present aliens, however, are not domiciled here but in foreign countries. "In general, the domicile of an individual is his true, fixed and permanent home." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983). Temporary visitors to the United States, by definition, retain permanent homes in foreign countries. And individuals without lawful status have no right to be present in the United States, much less a right to make *lawful* residence here. Instead, as a matter of law, such individuals formally retain their foreign domiciles, because they have not yet been accepted to reside anywhere else. *See, e.g.*, *Elkins v. Moreno*, 435 U.S. 647, 665-66 (1978). That "allegiance to [an] alien power" precludes the children of temporary visitors or individuals without lawful status from being "completely subject" to the United States' jurisdiction, as the Fourteenth Amendment requires. *Elk*, 112 U.S. at 101-02; *Tuaua*, 788 F.3d at 305.

As noted above, the EO follows from Supreme Court precedent recognizing that distinction, and the established exception to birthright citizenship for certain "children of members of the Indian tribes." *Wong Kim Ark*, 169 U.S. at 682. Indian tribes form "an intermediate category between foreign and domestic states." *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 396 n.7 (2023) (citation omitted). The Supreme Court long ago determined that Indian tribes are not "foreign nations," instead describing them as "domestic dependent nations." *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17 (1831) (Marshall, C.J.). Yet the Court has held that "an Indian, born a member of one of the Indian tribes," has no constitutional right to birthright citizenship given his "immediate allegiance" to his tribe. *Elk*, 112 U.S. at 99, 101-02.

Individuals without lawful status and temporary visitors have far weaker connections to the United States than do members of Indian tribes. If the United States' link with Indian tribes does not suffice as a constitutional matter for birthright citizenship, then its weaker link with individuals without lawful status and temporary visitors even more obviously does not do so.

Finally, *Wong Kim Ark* recognized an exception to birthright citizenship for "children born of alien enemies in hostile occupation." *Wong Kim Ark*, 169 U.S. at 682. Here, the President has determined that the United States has experienced "an unprecedented flood of illegal immigration" in which "[m]illions of illegal aliens" have entered the country without permission in violation of federal law. Unlawful Immigration EO § 1. Plaintiff's reading of the Citizenship Clause would require extending birthright citizenship to the children of individuals whom the government did not welcome into this country and whose presence may even be unknown to the government. The Constitution does not require such a result.

### 3. Applicable Interpretive Principles Support the Government's Reading of the Citizenship Clause

"[A]ny policy toward aliens is vitally and intricately interwoven with . . . the conduct of foreign relations." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952). The government's reading of the Citizenship Clause respects that principle, while Plaintiffs' reading violates it. The Citizenship Clause sets a constitutional floor, not a constitutional ceiling. Although Congress may not deny citizenship to those protected by the Clause, it may extend citizenship to those who lack a constitutional right to it. U.S. Const. art. I, § 8, cl. 4; *see Wong Kim Ark*, 169 U.S. at 688. The government's reading would thus leave Congress with the ability to extend citizenship to the children of individuals without lawful status or of temporary visitors, just as it has extended citizenship to the children of members of Indian tribes.

As a "sovereign nation," the United States has the constitutional power "to forbid the entrance

of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). "[O]ver no conceivable subject" is federal power "more complete" than it is over the admission of aliens. *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909). Interpreting the Constitution to require the extension of birthright citizenship to the children of individuals who enter this country unlawfully directly undermines that power by holding out a powerful incentive for illegal entry. *See generally Liu v. SEC*, 591 U.S. 71, 80 (2020) (no wrongdoer should "profit out of his own wrong") (citation omitted).

The Supreme Court has resisted reading the Citizenship Clause in a manner that would inhibit the political branches' ability to address "problems attendant on dual nationality." *Rogers v. Bellei*, 401 U.S. 815, 831 (1971). Although the United States allows dual citizenship in some circumstances, it has "long recognized the general undesirability of dual allegiances." *Savorgnan v. United States*, 338 U.S. 491, 500 (1950). "One who has a dual nationality will be subject to claims from both nations, claims which at times may be competing or conflicting," and "[c]ircumstances may compel one who has a dual nationality to do acts which otherwise would not be compatible with the obligations of American citizenship." *Kawakita v. United States*, 343 U.S. 717, 733, 736 (1952). Plaintiff's reading of the Citizenship Clause invites just such problems.[5]

Finally, "[c]itizenship is a high privilege, and when doubts exist concerning a grant of it, generally at least, they should be resolved in favor of the United States and against the claimant." *United States v. Manzi*, 276 U.S. 463, 467 (1928). For the reasons discussed above, the Citizenship

---

[5] For centuries, countries, including the United States, have extended citizenship to the foreign-born children of their citizens. Vattel, *supra* § 215, at 101; Naturalization Act of 1790, ch. 3, 1 Stat. 103, 104. Today, federal law recognizes as a citizen any "person born outside of the United States . . . of parents both of whom are citizens of the United States and one of whom has had a residence in the United States." 8 U.S.C. § 1401(c).

Clause is best read not to extend citizenship to children born in the U.S. of individuals without lawful status or of temporary visitors.

### 4. Plaintiffs' Contrary Arguments Are Unpersuasive

Plaintiffs rely primarily on *Wong Kim Ark*, *see* Pls. Mem. at 5, 6, 23-24, but they misread that precedent. As noted *supra*, *Wong Kim Ark* did not concern the status of children born in the United States to parents who were here unlawfully or as temporary visitors. Rather, the Court identified the specific question presented as follows:

> whether a child born in the United States, of parents of Chinese descent, who at the time of his birth are subjects of the emperor of China, *but have a permanent domicile and residence in the United States*, and are there carrying on business, and are not employed in any diplomatic or official capacity under the emperor of China, becomes at the time of his birth a citizen of the United States.

*Wong Kim Ark*, 169 U.S. at 653 (emphasis added).

In analyzing that question, the Court repeatedly relied on the fact that the parents were permanent residents. For example, it quoted an opinion in which Justice Story recognized that "the children, even of aliens, born in a country, *while the parents are resident there* under the protection of the government, . . . are subjects by birth." *Id.* at 660 (emphasis added) (quoting *Inglis*, 28 U.S. (3 Pet.) at 164 (Story, J., dissenting)). It also quoted another court's observation that the Fourteenth Amendment codifies "the general rule that, *when the parents are domiciled here*, birth establishes the right to citizenship." *Id.* at 692 (emphasis added; citation omitted). And it noted that "Chinese persons . . . owe allegiance to the United States, *so long as they are permitted by the United States to reside here*; and are 'subject to the jurisdiction thereof,' in the same sense as all other aliens *residing* in the United States." *Id.* at 694 (emphasis added).

After reviewing the relevant history, the Court reached the following "conclusions": "The fourteenth amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children born here of

*resident* aliens." *Wong Kim Ark*, 169 U.S. at 693 (emphasis added). The Court continued that although the Amendment is subject to certain "exceptions" (*e.g.*, for "children of foreign sovereigns or their ministers"), it extends citizenship to "children born within the territory of the United States of all other persons, of whatever race or color, *domiciled within the United States*." *Id.* (emphasis added). The Court then held that "a child born in the United States, of parents of Chinese descent, who, at the time of his birth . . . *have a permanent domicile and residence in the United States* . . . becomes at the time of his birth a citizen of the United States." *Id.* at 705 (emphasis added).

No doubt there are statements in *Wong Kim Ark* outside of its ruling that could be read to support Plaintiffs' position. However, *Wong Kim Ark* never purported to overrule any part of *Elk*, and the Supreme Court has previously recognized *Wong Kim Ark*'s limited scope, observing that "[t]he ruling in [*Wong Kim Ark*] was to this effect: 'A child born in the United States, of parents . . . who, at the time of his birth, are subjects of the Emperor of China, *but have a permanent domicile and residence in the United States*, . . . becomes at the time of his birth a citizen.'" *Chin Bak Kan v. United States*, 186 U.S. 193, 200 (1902) (emphasis added; citation omitted); *see also Kwock Jan Fat v. White*, 253 U.S. 454, 457 (1920) (citing *Wong Kim Ark* for the proposition that a person is a U.S. citizen by birth if "he was born to [foreign subjects] *when they were permanently domiciled in the United States*") (emphasis added).

Likewise, a decade after *Wong Kim Ark* was decided, the Department of Justice explained that the decision "goes no further" than addressing children of foreigners "domiciled in the United States." Spanish Treaty Claims Comm'n, U.S. Dep't of Justice, *Final Report of William Wallace Brown, Assistant Attorney General* 121 (1910). "[I]t has never been held," the Department continued, "and it is very doubtful whether it will ever be held, that the mere act of birth of a child on American soil, to parents who are accidentally or temporarily in the United States, operates to invest such child with

19

all the rights of American citizenship." *Id.* at 124.  Commentators, too, continued to acknowledge the traditional rule denying citizenship to children of non-resident foreigners.  *See*, *e.g.*, John Westlake, *International Law* 219-20 (1904) ("[W]hen the father has domiciled himself in the Union . . . his children afterwards born there . . . are citizens; but . . . when the father at the time of the birth is in the Union for a transient purpose his children born within it have his nationality.").

Moreover, the *Wong Kim Ark* Court itself warned that "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."  169 U.S. at 679 (citation omitted).  The only question presented in *Wong Kim Ark* concerned children of parents with "a permanent domicile and residence in the United States."  *Id.* at 653; *see id.* at 705.  The case should not be read as doing anything more than answering yes.

Plaintiffs' invocation of the common law rule of "*jus soli*—birth within a nation's territory—confer[ing] citizenship," Pls. Mem. at 23, is also unavailing.  The Supreme Court "has long cautioned that the English common law 'is not to be taken in all respects to be that of America.'"  *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 39 (2022) (citation omitted).  And that admonition holds particular force here.  *Cf. United States v. Rahimi*, 602 U.S. 680, 722 & n.3 (2024) (Kavanaugh, J., concurring).  The English *jus soli* tradition was premised on an unalterable allegiance to the King (which was conferred via birth on his soil).  But this nation was founded on breaking from that concept of immutable loyalty to a monarch imposed by birth alone, and grounded citizenship instead in the social contract, premised on mutual consent between person and polity.  *See, e.g.*, Cong. Globe, 40th Cong., 2nd Sess. 868 (1868) (statement of Rep. Woodward); *id.* at 967 (statement of Rep. Bailey).

Indeed, the Supreme Court has already held that the Citizenship Clause departs from English common law in important respects.  For example, the Clause's exception for certain children of members of Indian tribes has no parallel in English law, *see Wong Kim Ark*, 169 U.S. at 693; and the

Clause permits voluntary renunciation of citizenship, even though English common law did not, *see Afroyim v. Rusk*, 387 U.S. 253, 257-262 (1967).  Thus, mere invocation of *jus soli* should not trump the language of the Citizenship Clause and American common-law principles which do not support birthright citizenship for children of individuals without lawful status or temporary visitors. [6]

Plaintiffs also point to precedent that accords with its view.  *See* Pls. Mem. at 24.  However, it is not unusual for the Supreme Court, after fully exploring a legal issue, to reach a conclusion that conflicts with earlier assumptions.  *See*, *e.g.*, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 644-45 (2022) (holding that states may prosecute non-Indians for crimes against Indians in Indian country despite decades of contrary Supreme Court dicta); *INS v. Chadha*, 462 U.S. 919, 944-45 (1983) (holding the legislative veto unconstitutional even though Congress had enacted, and the President had signed, almost 300 legislative-veto provisions over the preceding 50 years).

Finally, even if *jus soli* were adopted into the Fourteenth Amendment, "the concept of allegiance is manifested by the Citizenship Clause's mandate that birthright citizens not merely be born within the territorial boundaries of the United States but also 'subject to the jurisdiction thereof,'" *Tuaua*, 788 F.3d at 305 (quoting U.S. Const. amend. XIV, § 1, cl. 1), which is not true for individuals without lawful status and temporary visitors to the United States.

### B.    Plaintiffs Are Not Likely to Succeed on Their Equal Protection Claim

Plaintiffs' Equal Protection Clause claim (*see* Pls. Mem. at 25-30) fares no better.  In the Citizenship Clause, Congress did not confer citizenship on children born in the United States of parents without lawful status or who are here only temporarily.  Accordingly, the EO is consistent with the Citizenship Clause.

---

[6] Plaintiffs' argument also ignores the fact that the rule of *jus soli* predated laws forbidding illegal immigration.

Furthermore, Plaintiffs' assertion that strict scrutiny applies because the EO affects the "fundamental right[]" of citizenship, Pls. Mem. at 26, is mistaken. The proper focus of inquiry here is birthright citizenship, not citizenship in general. As courts have recognized, "birthright citizenship does not qualify as a fundamental right under the Insular framework." *Fitsemanu v. U.S.*, 1 F.4th 862, 878 (10th Cir. 2021); *see also Tuaua*, 788 F.3d at 308 (same). While "birthright citizenship, like the right to a trial by jury, is an important element of the American legal system," it is not a "prerequisite to a free government. Numerous free countries do not practice birthright citizenship, or practice it with significant restrictions, including Australia, France, and Germany." *Fitsemanu*, 1 F.4th at 878. "To find a natural right to *jus soli* birthright citizenship would give umbrage to the liberty of free people to govern the terms of association within the social compact underlying formation of a sovereign state." *Tuaua*, 788 F.3d at 309.

In any event, Plaintiffs' assertion that the EO's differential treatment of children of parents who are citizens and lawful permanent residents (who receive birthright citizenship) and children of parents without lawful status or who are here only temporarily (who do not) cannot be justified is mistaken. *See* Pls. Mem. at 25-26. The President has set forth the compelling reasons for not extending birthright citizenship to this class of children. *See* Citizenship EO, § 1; Unlawful Immigration EO, § 1 (identifying the severity of the problems associated with illegal immigration). The difference in treatment, which derives from the Constitution, thus is justified by, among other things, the severity of the problems associated with illegal immigration and the fact that the government has not consented to the permanent presence in this country of these parents. *See Plyler v. Doe*, 457 U.S. 202, 219 (1982) ("Persuasive arguments support the view that a State may withhold its beneficence from those whose very presence within the United States is the product of their own unlawful conduct."). This distinction is no different than the recognized exceptions to birthright

citizenship for children of foreign sovereigns or their diplomats, children of alien enemies in hostile occupation, and children born to foreigners on foreign public vessels in U.S. waters, and the prior exception for children of members of Indian tribes.  *See Plyler*, 457 U.S. at 223 ("Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'").  Accordingly, there is no Equal Protection violation.

### C.    Plaintiffs Are Not Likely to Succeed on Their INA Claim

Finally, Plaintiffs are incorrect that 8 U.S.C. § 1401(a) provides it with an independent ground for relief.  *See* Pls. Mem. at 25 n.3.  That statute recognizes citizenship for "a person born in the United States, and subject to the jurisdiction thereof," 8 U.S.C. § 1401(a), which closely tracks the text of the Citizenship Clause.  *See* U.S. Const. amend. XIV, § 1 ("All persons born . . . in the United States, and subject to the jurisdiction thereof, are citizens of the United States[.]").  Plaintiffs do not even brief this issue, let alone identify any authority suggesting that Congress intended any delta between the statute and the Amendment.  Rather, in using the exact text of the Citizenship Clause in the INA, Congress imported its exact scope.  *See Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) ("When a statutory term is obviously transplanted from another legal source, it brings the old soil with it." (cleaned up)); *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 661 (2015).  If Congress had intended § 1401(a) to have a different meaning than the Citizenship Clause, it stands to reason that it would not have adopted virtually identical language.  Accordingly, if the Court concludes that the Citizenship Clause does not extend birthright citizenship to the children of individuals without lawful status or temporary visitors, then neither does the near-identical text of the INA.[7]

---

[7] In their Second Complaint, Plaintiffs allege a new claim that the EO "is contrary to constitutional law" and therefore violates the Administrative Procedure Act ("APA").  Second Amended Complaint ¶ 86.  However, Plaintiffs do not reference that claim in their motion for a preliminary injunction.

### D.    Plaintiffs Will Not Suffer Irreparable Harm During the Pendency of this Lawsuit

Plaintiffs fail to show an irreparable injury, the "single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted).  Plaintiffs assert that the EO denies their soon-to-be-born children their right to birthright citizenship and would risk rendering them "stateless."  Pls. Mem. at 31-32.  However the Citizenship EO has not yet been implemented by the relevant federal agencies; therefore, the full scope of its down-stream effects is hypothetical.   For example, all three of the named representatives have pending asylum applications.  Second Amended Complaint ¶¶ 12-14.  Were such applications to be granted, they would receive "a path to citizenship, eligibility for certain government benefits, and the chance for family members to receive asylum as well." *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 32 (D.D.C. 2020).  The same rationale undercuts Plaintiffs' arguments that the EO would prevent Plaintiffs' children or their future children from receiving passports or certain healthcare or nutritional benefits.  *See* Pls. Mem. at 32.  And, in any event, if an individual were actually "denied" any "right or privilege" of citizenship, 8 U.S.C. § 1503 provides an adequate legal remedy to avoid any irreparable harm.  *See Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 916, 918 (2d Cir. 1986) (party cannot show irreparable harm if it has an adequate legal remedy).

### E.    The Public Interest Does Not Favor an Injunction

Plaintiffs' asserted harms are outweighed by the harm to the government and public interest that would result from the requested relief.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting

---

Accordingly, Defendants do not address it here beyond noting that no such claim could lie here as Plaintiffs do not identify the final agency action being challenged and the EO itself is not final agency action as it was issued by the President, who is not subject to the APA.  *See Dalton v. Specter*, 511 U.S. 462, 469 (1994); *League of United Latin American Citizens v. Executive Office of the President*, ___ F. Supp. 3d ___, 2025 WL 1187730, at *16 (D.D.C. Apr. 24, 2025).

that the balancing of harms and public interest requirement for emergency injunctive relief merge when "the Government is the opposing party").  Executive officials must have "broad discretion" to manage the immigration system.  *Arizona v. United States*, 567 U.S. 387, 395-96 (2012).  It is the United States that has "broad, undoubted power over the subject of immigration and the status of aliens," *id.* at 394, and providing Plaintiff with its requested relief would mark a severe intrusion into this core executive authority, *see INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of the Government"); *see also Doe #1 v. Trump*, 957 F.3d 1050, 1084 (9th Cir. 2020) (Bress, J., dissenting) (an injunction that limits presidential authority is "itself an irreparable injury" (citing *Maryland v. King*, 567 U.S. 1301 (2012)).

### F.    Any Relief Should Be Limited

For the reasons above, the Court should deny Plaintiffs' motion in its entirety.  But even if the Court determines that a preliminary injunction is appropriate, it should limit its scope.  Plaintiffs do not request nationwide relief, but rather "commit to the sound discretion of this Court the scope of the injunction to issue to afford all Plaintiffs complete relief."   Pls. Suppl. Mem. at 13.  Plaintiffs state that organizational Plaintiff New York Immigration Coalition ("NYIC") is statewide and organizational Plaintiff Rural & Migrant Ministry ("RMM") is "regionwide."  *Id.*  However, there is nothing in the record supporting the latter statement.  In addition, NYIC lacks organizational standing because all of its members are constituent organizations, not individuals who could be affected by the EO.  Declaration of Murad Awawdeh, President and CEO of NYIC (ECF No. 45-4) ¶ 6.  *See, e.g.*, *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79 (1982) (organization's standing to sue on its own behalf requires same inquiry as in case of individual).  Accordingly, at most the Court may certify a class limited to this judicial district and award relief within this jurisdiction. *See, e.g.*, *Bova*

*v. Cox Commc'ns, Inc.*, No. 7:01CV00090, 2001 WL 1654708, at *4 (W.D. Va. Dec. 12, 2001) (limiting the class action to the Western District of Virginia).

Finally, Plaintiffs cannot obtain a preliminary injunction against the President. A federal court "'has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (quoting *Mississippi v. Johnson*, 71 U.S. 475, 500 (1866)).[8]

### G.    The Court Should Stay any Preliminary Injunction Pending Appeal and a Bond Should Be Required

If this Court enters a preliminary injunction, it should stay that order pending any appeal authorized by the Solicitor General. The stay factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). For the reasons explained above, the Government is likely to prevail on the merits, Plaintiffs cannot demonstrate irreparable injury, and the remaining equitable factors favor the Government.

The Supreme Court has already partially stayed three nationwide preliminary injunctions in the context of this executive order, recognizing the problem of court orders remedying alleged injuries of non-plaintiffs. *Trump v. CASA, Inc.*, --- S. Ct. ---, 2025 WL 1773631, at *15 (U.S. June 27, 2025). Any class-wide relief granting a preliminary injunction to non-plaintiffs would likewise warrant a stay pending appeal. At a minimum, Defendants respectfully request an administrative stay of at least

---

[8] Because Plaintiffs' claims are purely legal and fully addressed in the parties' briefing on the instant motions, Defendants request that the Court consolidate any preliminary injunction hearing with a trial on the merits, pursuant to Federal Rule of Civil Procedure 65(a)(2).

seven days to permit emergency appellate litigation from this Court's denial of Defendants' motion for a stay pending appeal.

Finally, if the Court enters a preliminary injunction, Defendants respectfully request that Plaintiffs be required to post a bond pursuant to Fed. R. Civ. P 65(c).  Under that rule, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The proposed preliminary injunction seeks to require Defendants to extend federal benefits to persons deemed by Defendants to lack an entitlement to them.  The cost to the United States would be substantial, and this should be reflected in the bond accompanying a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated:  New York, New York
        July 18, 2025

JAY CLAYTON                                  BRETT A. SHUMATE
United States Attorney                       Assistant Attorney General
Southern District of New York                Civil Division

                                             ALEXANDER K. HAAS
By:    */s/ Jeffrey Oestericher*             Branch Director
       JEFFREY OESTERICHER
       Assistant United States Attorney      BRAD P. ROSENBERG
       Tel.:  (212) 637-2695                 Special Counsel
       Email:  jeffrey.oestericher@usdoj.gov
                                             U.S. Department of Justice
                                             Civil Division
                                             1100 L Street N.W.
                                             Washington, DC 20005

                                             *Counsel for Defendants*

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules.  As measured by the word processing system used to prepare it, this memorandum contains 8679 words.