# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

New York Immigration Coalition, *et al.*,

        *Plaintiffs*,

        v.

DONALD J. TRUMP, President of the United States, in his official capacity, *et al.*,

        *Defendants*.

**CIVIL ACTION NO:**

**25-cv-01309-MMG**

## <u>REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ......................................................................................... 1

   **I.**   **Defendants' Reinterpretation of the Birthright Citizenship Clause Does Not Pass Constitutional Muster.** ................................................................. 1

      a.   Defendants propose a rejected reinterpretation of the "subject to the jurisdiction thereof" phrase. ............................................................................ 2

      b.   The Executive branch does not have the power to rewrite the Constitution. ....... 7

   **II.**   **Defendants Do Not Refute Plaintiffs' Likelihood of Success on the Merits of Their Equal Protection Claim.** ........................................................... 8

   **III.**   **Plaintiffs Face Imminent and Irreparable Harm During the Pendency of this Litigation.** .................................................................................. 10

   **IV.**   **This Court Should Grant Class-Wide Relief.** ................................... 11

   **CONCLUSION** ................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Afroyim v. Rusk*, 387 U.S. 253 (1967). .......................................................................9

*Barbara v. Trump*, No. 2025 DNH 079P, 2025 WL 1904338 (D.N.H. July 10,

    2025). ...............................................................................................................10

*Bass v. Richardson*, 338 F.Supp. 478 (S.D.N.Y. 1971)...........................................13

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). .......................................................7

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409 (S.D.N.Y.

    2012). ...............................................................................................................12

*CASA, Inc. v. Trump*, 763 F.Supp.3d 723 (D. Md. 2025)............................... 3, 5, 10

*Crowley v. Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers,*

    *Helpers, Warehousemen, & Packers*, 679 F.2d 978 (1st Cir. 1982), *rev'd on*

    *other grounds*, 467 U.S. 526 (1984).....................................................................13

*Deide v. Day*, 676 F.Supp.3d 196 (S.D.N.Y. 2023). ................................................10

*Doe v. Trump*, 766 F.Supp.3d 266 (D. Mass. 2025).................................. 2, 5, 6, 10

*Elk v. Wilkins*, 112 U.S. 94 (1884).......................................................................3, 4

*Fedorenko v. U.S.*, 449 U.S. 490 (1981)...................................................................7

*Fitisemanu v. United States*, 1 F.4th 862 (10th Cir. 2021).......................................9

*Havens Realty Corp. v. Coleman*, 455 US. 363 (1982)...........................................11

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). ............................................10

*New Hampshire Indonesian Cmty. Support v. Trump*, 765 F.Supp.3d 102 (D.N.H. 2025). ........................................................................................ 3, 5, 10

*Perez v. Abbot*, 253 F.Supp.3d 864 (W.D. Tex. 2017). ..........................................12

*Plyler v. Doe*, 457 U.S. 202 (1982). ......................................................................10

*Rogers v. Bellei*, 401 U.S. 815 (1971). .....................................................................2

*State v. Trump*, 765 F.Supp.3d 1142 (W.D. Wash. 2025). .....................................10

*Tuaua v. United States*, 788 F.3d 300 (D.C. Cir. 2015). ..........................................9

*U.S. v. Vaello Madero*, 142 S. Ct. 1539 (2022). ......................................................9

*United States v. Bedford Assoc.*, 618 F.2d 904 (2d Cir. 1980), *cert. denied,* 456 U.S. 914 (1982). ................................................................................................13

*United States v. Rhodes*, 27 F.Cas. 785 (C.C.D. Ky. 1866). ...................................3

*United States v. Wong Kim Ark*, 169 U.S. 649 (1898).................................... passim

**Statutes**

8 U.S.C. § 1401(a). ...................................................................................................6

**Other Authorities**

Garrett Epps, *The Citizenship Clause: A "Legislative History,"* 60 Am. Univ. L. Rev. 331 (2010). ...................................................................................................5

Justin Lollman, *The Significance of Parental Domicile Under the Citizenship Clause*, 101 Va. L. Rev. 455 (2015).....................................................................6

## **PRELIMINARY STATEMENT**

Defendants' opposition brief erroneously reinterprets the Citizenship Clause. That is an insufficient basis for this Court to deny Plaintiffs' motion for a preliminary injunction. The text of the Citizenship Clause is plain as day. Because Defendants recycle misinterpretations of the Citizenship Clause resoundingly rejected by district courts that have considered their arguments, this Court should do the same.

Defendants' opposition similarly does not refute Plaintiffs' likelihood of success on the merits of their Equal Protection Clause claim. Instead, Defendants rely on the misguided *Insular Cases* framework—wholly inapplicable here—to argue against the claim. Their opposition falls flat.

Because Plaintiffs continue to endure imminent and irreparable harm caused by Defendants' unlawful birthright citizenship-banning Executive Order, they respectfully ask this Court to enjoin the unlawful Order.

## **ARGUMENT**

### I.    **Defendants' Reinterpretation of the Birthright Citizenship Clause Does Not Pass Constitutional Muster.**

As Plaintiffs demonstrated in their Memorandum of Law in Support of Their Motion for a Preliminary Injunction and Supplemental Brief in further support of the preliminary injunction motion, the birthright citizenship ban plainly contradicts the text of the Fourteenth Amendment's Citizenship Clause. Pls. Mem. Supp. Prelim.

1

Inj. 22, ECF No. 20; Pls.' Suppl. Mem. Supp. Prelim. Inj. 9, ECF No. 45. Every court that has addressed this issue has found that the plaintiffs are likely to succeed on their Citizenship Clause claims. *See, e.g.*, *Doe v. Trump*, 766 F.Supp.3d 266, 285 (D. Mass. 2025); *see also* Pls.' Mem. Supp. Prelim. Inj. 22 (collecting cases); Pls.' Suppl. Mem. 9 (collecting cases). Defendants' reinterpretation of the Citizenship Clause fails to explain why this court should discard a 127-year Supreme Court precedent and centuries of common law.[1] They also unconstitutionally grant the Executive branch power to rewrite the Constitution.

    a.  Defendants propose a rejected reinterpretation of the "subject to the jurisdiction thereof" phrase.

Defendants improperly narrow the scope of the Citizenship Clause by reinterpreting the phrase "subject to the jurisdiction thereof."

**First**, Defendants contend these words impose an additional requirement of allegiance to the United States: a person must not be subject to the jurisdiction of a foreign nation and must receive consent from United States to become a part of its jurisdiction. Defs.' Mem. Opp'n Pls.' Mot. Prelim. Inj. 9, ECF No. 58. This reinterpretation has been resoundingly rejected by every lower court to address the issue. *See, e.g.*, *New Hampshire Indonesian Cmty. Support v. Trump*, 765 F.Supp.3d

---

[1] Defendants argue that the common law rule of *jus soli* should not hold much weight. Defs.' Mem. Opp'n Pls.' Mot. Prelim. Inj. 20-21, ECF No. 58. This argument has been rejected by the Supreme Court. *See, e.g.*, *Rogers v. Bellei*, 401 U.S. 815, 828 (1971) (explaining "our law [in the area of birthright citizenship] follows English concepts with an acceptance of the jus soli").

102, 109 (D.N.H. 2025) (identifying the only recognized exceptions to birthright citizenship); *CASA, Inc. v. Trump*, 763 F.Supp.3d 723, 734 (D. Md. 2025) (quoting *United States v. Rhodes*, 27 F.Cas. 785, 790 (C.C.D. Ky. 1866) ("Birth and allegiance go together. Such is the rule of the common law . . .")).

Defendants' reading contradicts the seminal *Wong Kim Ark* decision, 169 U.S. 649 (1898), which discusses the common law exceptions to birthright citizenship contemplated by the phrase "subject to the jurisdiction thereof." Explaining the phrase, the opinion states, "in qualifying the words 'all persons born in the United States' by the addition 'and subject to the jurisdiction thereof,' would appear to have been to exclude, by the fewest and fittest words . . . the two classes of cases,— children born of alien enemies in hostile occupation, and children of diplomatic representatives of a foreign state,—both of which . . . had been recognized exceptions to the fundamental rule of citizenship by birth within the country." *United States v. Wong Kim Ark*, 169 U.S. at 682 (1898) (citations omitted). Additionally, Defendants' reliance on *Elk v. Wilkins*, 112 U.S. 94, 109 (1884), which held that Native American children were not covered by the Citizenship Clause, is misplaced. The *Wong Kim Ark* Court cabined the *Elk* holding to the unique position of tribal nations to the United States government at the time the case was decided. *Wong Kim Ark*, 169 U.S. at 682. These exceptions give meaning to "subject to the jurisdiction

thereof," contrary to Defendants' contention that Plaintiffs' argument violates the surplusage canon. *See* Opp'n 8–9.

**Second**, Defendants wrongly use *Elk* to stand for the proposition that a person is subject to the jurisdiction of a nation only if the nation has consented. Opp'n 9. The *Wong Kim Ark* majority clarified that the *Elk* opinion "concerned only members of the Indian tribes within the United States, and had no tendency to deny citizenship to children born in the United States of foreign parents of Caucasian, African, or Mongolian descent, not in in the diplomatic service of a foreign country." *Wong Kim Ark*, 169 U.S. at 682.[2]

**Third**, Defendants rely on the language of the Civil Rights Act of 1866, arguing that the Fourteenth Amendment merely constitutionalized the text of the Act. Opp'n 10. They assert that the Act's language "not subject to any foreign power" is equivalent to the Fourteenth Amendment's "subject to the jurisdiction," and thus should narrow the scope of the Citizenship Clause. The *Wong Kim Ark* Court clarified, however, that even if the Civil Rights Act was incorrectly interpreted to

---

[2] By Defendants' logic, Wong Kim Ark himself would not be "subject to the jurisdiction" of the United States. *Elk v. Wilkins* more accurately states that "no one can become a *citizen* of a nation without its consent." 112 U.S. at 103 (emphasis added). Per *Elk*'s consent principle, Wong Kim Ark's parents lacked the requisite consent from this nation, as they were ineligible for citizenship. *See Wong Kim Ark*, 169 U.S. at 701 ("It is true that Chinese persons born in China cannot be naturalized . . . ."). Without this consent, Defendants would argue, his parents could not be subject to the jurisdiction of this country, and therefore Wong Kim Ark wouldn't be subject to the jurisdiction either. This reading of *Elk* is unworkable. See *Wong Kim Ark*, 169 U.S. at 704 ("The fact, therefore, that acts of congress or treaties have not permitted Chinese persons born out of this country to become citizens by naturalization, cannot exclude Chinese persons born in this country from the operation of the broad and clear words of the constitution.").

deny native-born children citizenship beyond the recognized exceptions, "any possible doubt" of the correct meaning of this clause "was removed when the negative words of the civil rights act . . . gave way . . . to the affirmative words" of the Fourteenth Amendment. *Wong Kim Ark*, 169 U.S. at 688.[3]

**Fourth**, Defendants further argue that the populations targeted by the birthright citizenship ban are not domiciled in the United States and thus do not owe the "allegiance" to this country required to be "subject to the jurisdiction thereof." Opp'n 14–15. Temporary visitors and undocumented immigrants, Defendants claim, are not domiciled here because they are not here permanently or lawfully. Opp'n 15. Defendants repeatedly and mistakenly invoke the word "domicile" in *Wong Kim Ark* to support this point. *See, e.g* ., Opp'n 18–19. Every court to address this issue has rejected the domicile argument. *See, e.g.*, *New Hampshire*, 765 F.Supp.3d at 110; *CASA*, 763 F.Supp.3d at 739; *Doe*, 766 F.Supp.3d at 272.

The domicile requirement is a misreading of the Citizenship Clause and its interpretive case law. Defendants claim the word "reside" in the Citizenship Clause "makes clear that citizenship flows from lawful domicile." Opp'n 11. To the contrary, the word "reside" is present only to indicate that a person who becomes a citizen of

---

[3] *See* Garrett Epps, *The Citizenship Clause: A "Legislative History,"* 60 Am. Univ. L. Rev. 331, 349 (2010) ("[T]he Fourteenth Amendment was drafted . . . by [a] considerably more radical Joint Committee [than the Judiciary Committee that drafted the 1866 Act, and] . . . made no concessions to the President's conservative views.").

the United States also becomes a citizen of the State they live in. It imposes no additional requirements for birthright citizenship. *Doe*, 766 F.Supp.3d at 284–85. Defendants' use of the domicile requirement to exclude children of undocumented individuals fails, because, as the *Doe* court pointed out, "it is not so clear that 'illegal entry into the country would . . . , under traditional criteria, bar a person from obtaining domicile within a State.'" *Id.* at 285 (citing *Plyler v. Doe*, 457 U.S. 202, 227 n.22 (1982)). *See also* Justin Lollman, *The Significance of Parental Domicile Under the Citizenship Clause*, 101 Va. L. Rev. 455, 492–93 (2015) (cited by defendants) (deciding that undocumented immigrants can obtain domicile in the United States). And *Wong Kim Ark* explicitly debunks Defendants' attempt to exclude children of parents who hold temporary status. Opp'n 14. The Court states that citizens of other countries temporarily in the United States are "subject to the jurisdiction." *Wong Kim Ark*, 169 U.S. at 693. The majority found that these individuals' "allegiance to the United States is direct and immediate" although "local and temporary" *Id.* Any mention of the word "domicile" in *Wong Kim Ark*, does not, thus, impose the requirements that Defendants claim.

Despite Defendants' effort to argue the contrary, parental alienage is irrelevant to the question of birthright citizenship.[4] As the *Wong Kim Ark* Court

---

[4] Plaintiffs are also highly likely to succeed on the merits of their claim that the birthright citizenship ban violates the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1401(a), because the statute is coterminous with the Citizenship Clause. *See Doe*, 766 F.Supp.3d at 283. As the INA was codified in 1952, decades after *Wong Kim Ark*,

affirmed, "the fundamental rule of citizenship by birth within the dominion of the United States, *notwithstanding alienage of parents*," applies. *Wong Kim Ark*, 169 U.S. at 688 (emphasis added).[5]

b. The Executive branch does not have the power to rewrite the Constitution.

Accepting Defendants' interpretation of the Constitution will erroneously grant the Executive power to restrict birthright citizenship. Defendants' interpretation would create an ever-changing entitlement system that puts this "precious" right, *Fedorenko v. U.S.*, 449 U.S. 490, 746 (1981), into the hands of a political branch of government. *See* Opp'n 16. The majority of *Wong Kim Ark* raised concern with this possibility, suggesting that birthright citizenship should be insulated from political whims. *See Wong Kim Ark*, 169 U.S. at 676 (explaining that the same Congress that passed the Civil Rights Act of 1866 "evidently th[ought] it unwise, and perhaps unsafe, to leave so important a declaration of rights to depend upon an ordinary act of legislation, which might be repealed by any subsequent congress"). If Congress, which passed the Fourteenth Amendment, cannot

---

that decision and the long-standing understanding of the Citizenship Clause should serve as interpretive guideposts. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020) ("[I]nterpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment.").

[5] Defendants contend that "unlawfully present" immigrants were a nonexistent category at the time the Amendment was enacted, citing to the term's creation in 1875. Opp'n 11 n.4. *Wong Kim Ark*, however, was decided after the creation of this category and still found parental alienage to be irrelevant to the question of birthright citizenship entitlement. *See Wong Kim Ark*, 169 U.S. at 688. The Court wrote: "The fact . . . that acts of congress . . . have not permitted Chinese persons born out of this country to become citizens by naturalization, cannot exclude Chinese persons born in this country from the operation of the broad and clear words of the constitution . . . ." *Id.* at 704. Immigration status was not determinative of birthright citizenship.

whimsically change birthright citizenship, then the Executive branch surely does not have that power.

Defendants also contend that the United States' power over immigration gives them power to restrict birthright citizenship. Opp'n 17. They raise concern that birthright citizenship incentivizes illegal immigration and inhibits the government's ability to deal with dual nationality. Opp'n 17. This contention is without merit. First, Defendants offer no support for the incentive claim. Second, even if they provide support, they ignore the fact that birthright citizenship and its requirements are plainly stated in the text of the Constitution and were meant to be insulated from political branches of government. The President cannot defy the Constitution regardless of perceived immigration issues. Accordingly, Plaintiffs are highly likely to succeed on the merits of their Citizenship Clause claim.

## II.    Defendants Do Not Refute Plaintiffs' Likelihood of Success on the Merits of Their Equal Protection Claim.

Birthright citizenship is a fundamental right. Defendants misstate Plaintiffs' assertion of this right, claiming that Plaintiffs focus on citizenship in general, but Plaintiffs did not. They clearly assert that "fundamental rights . . . like birthright citizenship" are guaranteed. Pls.' Mem. Supp. Prelim. Inj. 26 (cited by Defendants). Beyond this misstatement, Defendants only opposition is to cite two cases decided under the *Insular Cases* framework. They claim *Fitisemanu v. United States*, 1 F.4th

862, 878 (10th Cir. 2021) and *Tuaua v. United States*, 788 F.3d 300, 308 (D.C. Cir. 2015), both of which deny birthright citizenship as a "natural right" "under the *Insular* framework," Opp'n 22 (citing *Fitsemanu*, 1 F.4th at 878), somehow control here. Those cases are inapposite. For one, both cases were decided under the *Insular Cases* construct, which determined "that constitutional provisions apply only if the circumstances of the territory warrant their application." *Fitisemanu*, 1 F.4th at 869. In other words, decisions regarding the application of the Constitution to United States territories are cabined to that context. Moreover, Supreme Court justices have consistently expressed the view that the *Insular Cases*, which support differential treatment between U.S. citizens on the mainland and those in the territories, should be overruled. *See, e.g.*, *U.S. v. Vaello Madero*, 142 S. Ct. 1539, 1552 (2022) (Gorsuch, J., concurring) ("[T]he *Insular Cases* have no foundation in the Constitution and rest instead on racial stereotypes" and should be overruled).

Here, Plaintiffs argue that birthright citizenship is a fundamental right for those born in one of the States of the union and "subject to the jurisdiction thereof." Defendants' attempt to revoke this right, to which Plaintiffs and others similarly situated are entitled, finds no support in the *Insular Cases*. *See Afroyim v. Rusk*, 387 U.S. 253, 262 (1967) ("Once acquired, this Fourteenth Amendment citizenship was not to be shifted, canceled, or diluted at the will of the Federal Government, the States, or any other governmental unit."); *Kennedy v. Mendoza-Martinez*, 372 U.S.

9

144, 159 (1963) ("Citizenship is a most precious right."). Plaintiffs are highly likely to succeed on the merits of their Equal Protection Clause claim.[6]

### III.    Plaintiffs Face Imminent and Irreparable Harm During the Pendency of this Litigation.

Defendants recycle irreparable harm arguments that have failed in other courts. *See, e.g.*, *CASA*, 763 F.Supp.3d at 744 (argument that harm is speculative because children will have other avenues to obtain status is "callous and wrong"); *Barbara v. Trump*, No. 2025 DNH 079P, 2025 WL 1904338, at *14 (D.N.H. July 10, 2025) (rejecting that alleged harms are hypothetical). As the court in *Barbara v. Trump* most recently reiterated "'the denial of citizenship status to newborns, even temporarily, constitutes irreparable harm. The denial of citizenship to the plaintiffs' members' children would render the children either undocumented noncitizens or stateless entirely . . . The children would risk deportation to countries they have never visited.'" *Id.* at *14 (quoting *New Hampshire*, 765 F.Supp.3d at 111; citing *Doe*, 766 F.Supp.3d at 285; *State v. Trump*, 765 F.Supp.3d 1142, 1153 (W.D. Wash. 2025); *CASA*, 763 F.Supp.3d at 744).

---

[6] Plaintiffs also argued in their opening brief that the birthright citizenship-banning Executive Order discriminates on the basis of parental alienage and national origin against U.S.-born children. Pls.' Mem. Supp. Prelim. Inj. 22–30, ECF No. 20. Defendants' reliance on *Plyler v. Doe* falls flat. 457 U.S. 202 (1982). *Plyler* found an equal protection violation against undocumented school-age children. *Id.* at 230. Here, Plaintiffs are U.S.-born children whom, by executive fiat, are being denied their fundamental right to birthright citizenship because their parents are non-citizens. Pls.' Mem. Supp. Prelim. Inj. 15–17; Pls.' Suppl. Memo. Supp. Prelim. Inj. 7–8. While Plaintiffs' equal protection claim for purposes of the preliminary injunction motion was not on behalf of the non-citizen parents, courts in this jurisdiction have recognized that they too have protectable rights under the equal protection clause. *See Deide v. Day*, 676 F.Supp.3d 196, 225 (S.D.N.Y. 2023) (finding that an Executive Order denying certain transportation and housing to migrants and asylum seekers was likely to violate the Equal Protection Clause).

As to the last two factors for issuance of a preliminary injunction, there is no serious dispute that the balance of the equities tips decidedly in Plaintiffs' favor and that the public interest disfavors enforcement of an unlawful Executive Order.

## IV.    This Court Should Grant Class-Wide Relief.

Defendants seek to narrow the scope of the class-wide relief Plaintiffs request by making three claims: a) there is no information in the record that Rural & Migrant Ministry ("RMM") is regionwide; b) organizational Plaintiff New York Immigration Coalition ("NYIC") lacks standing; and c) relief should be limited to this district. The first two assertions are incorrect, and the third claim is unworkable.

First, RMM, as noted in the original and subsequently amended complaints, is the "Mid-Hudson Catskill Rural & Migrant Ministry" headquartered in Orange County, New York, making it a regionwide entity. *See*, Second Am. Compl. ¶ 16, ECF No. 60.

Second, Defendants misread *Havens Realty*, which did not foreclose membership organizations from asserting associational standing. Opp'n 25; *Havens Realty Corp. v. Coleman*, 455 US. 363, 378–379 (1982) (cited by defendants) (stating that the court conducted the same standing inquiry for the organizational plaintiff as it would for an individual). Even if it did—which it does not—this Court and others have recognized that an organization has associational standing even if it does not have individuals as members. For example, in *Brooklyn Center for*

11

*Independence of the Disabled v. Bloomberg*, this Court found that the organization had "sufficient indicia of membership" because it was a "'service provider[] managed and directed by persons with disabilities for the purpose of serving persons with disabilities.'" 290 F.R.D. 409, 417 (S.D.N.Y. 2012) (quoting Pls.' Reply Mem. Supp. Pls.' Mot. Class Cert. at 8, 290 F.R.D. 409 (S.D.N.Y. 2012) (No. 11-6990)). That organization did not even have organizational members. As in *Brooklyn Center*, here, NYIC's membership is composed of "immigrant-led and immigrant-serving groups" and NYIC itself serves immigrants directly. NYIC Decl. ¶ 6, ECF No. 45-4. NYIC's member organizations also have individual members impacted by the ban who meet individual standing requirements. *See* Pls.' Mem. Supp. Prelim. Inj. 18–19. These facts meet the requirements for associational standing. *See Perez v. Abbot*, 253 F.Supp.3d 864, 930 n.82 (W.D. Tex. 2017) (granting associational standing to a task force whose member organizations had injured individuals).

Lastly, Defendants argue in the alternative for relief only within the Southern District of New York. This would be unworkable because the impact of the birthright citizenship-banning Executive Order reaches beyond this district. It has regionwide, statewide, and nationwide applicability. Besides, individual Plaintiffs J.V. and M.P. reside outside the Southern District of New York, as do affected members and constituents of organizational Plaintiffs RMM and NYIC. J.V. Decl. ¶ 3, ECF No.

45-1; M.P. Decl. ¶ 2, ECF No. 45-3; Second Am. Compl. ¶ 16; NYIC Decl. ¶ 5–6, ECF No. 45-4.

As Defendants' opposition does not vitiate Plaintiffs' likelihood of success on the merits of their Fourteenth Amendment claims or the irreparable harms that they suffer, this Court should grant Plaintiffs' motion for a preliminary injunction. Plaintiffs urge this Court to grant relief immediately, as any delay would expose Plaintiffs and class members to the harms of the unlawful birthright citizenship-banning Executive Order.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' preliminary injunction motion and deny the stay pending an appeal. Finally, this Court should deny bond requested under Federal Rule of Civil Procedure 65(c).[7]

Dated <u>23rd</u> day of July, 2025

Respectfully submitted,

By: /s/ Mariana C. Lopez
Mariana C. Lopez
Francisca D. Fajana
Cesar Z. Ruiz
Michael Asparrin*

---

[7] A court has discretion to decline posting bond. *See United States v. Bedford Assoc.*, 618 F.2d 904, 916–17 (2d Cir. 1980), *cert. denied,* 456 U.S. 914 (1982). Various courts have recognized an exception when there is a suit to "enforce important federal rights or 'public interests.'" *Crowley v. Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers,* 679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds,* 467 U.S. 526 (1984) (citing *Bass v. Richardson,* 338 F.Supp. 478, 491 (S.D.N.Y. 1971) (granting an exception to Rule 65(c) when the plaintiff is indigent)). Here, Plaintiffs sue to enforce an important federal right on behalf of themselves and class members. As such, bond should be denied.

13

LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
MLopez@latinojustice.org
FFajana@latinojustice.org
CRuiz@latinojustice.org
MAsparrin@latinojustice.org

*Application for Admission Pending

## **WORD CERTIFICATION**

I hereby certify that this affirmation complies with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 3,489 words.

Dated 23rd day of July, 2025

Respectfully submitted,

By: /s/ Mariana C. Lopez
Mariana C. Lopez
Francisca D. Fajana
Cesar Z. Ruiz
Michael Asparrin*
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
MLopez@latinojustice.org
FFajana@latinojustice.org
CRuiz@latinojustice.org
MAsparrin@latinojustice.org