UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **New York Immigration Coalition,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **DONALD J. TRUMP, President of the United States, in his official capacity,** *et al.*, <br><br> *Defendant*. | CIVIL ACTION NO: <br> 25-cv-01309-MMG |

**<u>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL</u>**

# **TABLE OF CONTENTS**

**INTRODUCTION** ......................................................................................................................... 1

**ARGUMENT** ................................................................................................................................ 1

    I.    THE PROPOSED CLASS IS DEFINITE, ASCERTAINABLE, AND SATISFIES ALL REQUIREMENTS OF RULE 23. ....................................................................................... 1

        A.    Plaintiffs' Proposed Class is Definite and Ascertainable. ............................... 1

        B.    Plaintiffs Satisfy the Rule 23(a) Requirements. ............................................. 3

        C.    Plaintiffs Satisfy the Rule 23(b)(2) Requirements. ......................................... 9

    II.    PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE AND NECESSARY HERE. ................................................................................................................................11

    III.    THE FIRST-FILED PRINCIPLE DOES NOT APPLY HERE. ................................... 13

**CONCLUSION** ......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*A.A.R.P. v. Trump*, 145 S. Ct. 1364 (2025).................................................................................. 12

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020) ..................................................................... 12

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455 (2013)............................11

*Barbara v. Trump*, No. 25-cv-244-JL-AJ, 2025 WL 1904338 (D.N.H. July 10, 2025)................ 13

*Brown v. Giuliani*, 158 F.R.D. 251 (E.D.N.Y. 1994) ................................................................... 12

*Carriuolo v. General Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ................................................ 12

*CASA, Inc. v. Trump*, 763 F. Supp. 3d 723 (D. Md. 2025)............................................................. 7

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013)............................................................................ 7

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)............................................................................. 8

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001) ..................................................... 5

*Doe 3 v. Indyke*, No. 24-cv-1204 (AS), 2024 WL 4299757 (S.D.N.Y. Sept. 26, 2024) ................. 8

*Doe v. City of Apple Valley*, No. 20-cv-499 (PJS/DTS), 2020 WL 1061442 (D. Minn. Mar. 5, 2020) ........................................................................................................................................... 8

*Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008) ............................................. 4

*Duprey v. Conn. Dep't of Motor Vehicles*, 191 F.R.D. 329 (D. Conn. 2000) ................................ 5

*EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003)) ............................................................. 8

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374 (S.D.N.Y. 2016) ................................................................................................................................................... 10

*Hasemann v. Gerber Products Co.*, 331 F.R.D 239 (E.D.N.Y. 2019).......................................... 12

*In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512 (S.D.N.Y. 2002).................................. 6

*In re Namenda Indirect Purchaser Antitrust Litigation*, 338 F.R.D. 527 (S.D.N.Y. 2021) ............ 7

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ......................... 6

*In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ........................................................................... 3

*Latino Officers Ass'n City of N.Y. v. City of New York*, 209 F.R.D. 79 (S.D.N.Y. 2002) ................ 5

*Laumann v. National Hockey League*, 105 F. Supp. 3d 384 (S.D.N.Y. 2015) ............................... 11

*Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996) ............................................. 4

*New Hampshire Indonesian Cmty. Support*, 765 F. Supp. 3d 102 (D.N.H. 2025) .......................... 7

*Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1 (S.D.N.Y. 2024) ................................................................ 6

*R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019) ................................................................ 8

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................................... 6

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) ............................................ 4, 6

*Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025) ............................................................... 1, 12, 13, 14

*United States v. Wong Kim Ark*, 169 U.S. 649 (1898) .................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................................... 9

*Wilson v. Tinicum Tp.*, No. 2:92-cv-07717, 1993 WL 280205 (E.D. Penn. July 20, 1993) ............ 5

**Other Authorities**

Executive Order 14160, 90 F.R. 8449 (Jan. 20, 2025) ............................................................... 2, 10

*Newberg and Rubenstein on Class Actions* (6th ed. 2025) ............................................................ 14

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................................... 9, 11

## INTRODUCTION

Courts across the country have already held that Executive Order No. 14,160 ("the EO" or "the Executive Order") is highly likely to be violative of the Constitution, and the Supreme Court has identified class actions as the appropriate avenue for obtaining broad relief. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2555 (2025). Nonetheless, Defendants cite differing factual circumstances between the named class representatives and other members to claim supposed Rule 23 deficiencies in the putative class Plaintiffs seek. Plaintiffs' provisional class readily satisfies all Rule 23 requirements and offers a quintessential Rule 23(b)(2) class action. This Court should now certify the proposed class and issue class-wide preliminary relief.

## ARGUMENT

I. **THE PROPOSED CLASS IS DEFINITE, ASCERTAINABLE, AND SATISFIES ALL REQUIREMENTS OF RULE 23.**

   A. **Plaintiffs' Proposed Class is Definite and Ascertainable.**

Defendants attempt to obfuscate the proposed class by referencing the factual circumstances of named Plaintiffs, arguing that those differing circumstances will require individual inquiries into class members and make a class action inapt for ascertainability reasons. Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Class

1

Certification ("Opp.") 8-9, ECF No. 59. This contention fails to reflect both the clearly defined parameters of the proposed class and the Executive Order itself.

The birthright citizenship-banning Executive Order by its own terms is explicit about the individuals from whom it strips U.S. citizenship. Children born in the United States will be denied their constitutionally guaranteed United States citizenship if they fall into one of either two categories:

> (1) When that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said persons' birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States Citizen or lawful permanent resident at the time of said person's birth.

Exec. Order No. 14160, 90 Fed. Reg. 8449, 8449 (Jan. 29, 2025) (hereinafter "EO"). The birthright citizenship-banning EO applies to no one outside of these categories (e.g., a child born to an undocumented mother and a U.S. citizen father), and, crucially, applies to all children who fit into either category equally. EO § 2(c).

Plaintiffs' proposed class, in turn, is easily ascertainable. The proposed class definition directly incorporates the two categories of persons the EO applies to by reference. It includes "all persons born in the United States on or after February 19, 2025, who have been or will be denied birthright citizenship because their parents' immigration statuses are the subject of Executive Order 14160." Pls.' Class Cert.

Mem. 20, ECF No. 44-1. This definition readily meets the Second Circuit's ascertainability requirement, which "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). The birthright citizenship-banning EO refers to immigration statuses at a fixed point in time—the moment of a child's birth—and only applies to U.S.-born children for whom both parents fall into one of the two defined categories. These objective criteria create a proposed class with membership falling within well-defined boundaries. Plaintiffs' proposed class is easily ascertainable, as its definition directly references the categories of persons the EO targets.[1]

### B. Plaintiffs Satisfy the Rule 23(a) Requirements.

Defendants wrongfully suggest that "variations within the proposed class" work against the putative class meeting Rule 23(a)'s commonality and typicality requirements. The proposed class members share legal questions about the constitutionality and unlawfulness of the birthright citizenship-banning Executive Order and will suffer the common harm of denial of citizenship. Pls' Class Cert. Mem. 13–15, ECF No. 44-1. Their claims are capable of class-wide resolution, which would be served by enjoining implementation and enforcement of the EO.

---

[1] This Court has previously recognized that the ascertainability requirement may not be a requirement for Rule 23(b)(2) actions. *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 419 n.3 (S.D.N.Y. 2012). Plaintiffs include this discussion to the extent the Court finds that ascertainability is required here.

3

The same is true of the typicality of named class representatives' claims. Plaintiffs share the same injury (denial of U.S. citizenship) that stems from the same conduct by Defendants (enforcement of the unlawful Executive Order) as all other class members. Pls' Class Cert. Mem. 16, ECF No. 44-1. Any factual differences among class members do not defeat typicality, as Plaintiffs' injuries and Defendants' conduct would be the same in all cases.

Defendants attempt to create four groups within the proposed class, suggesting that these sub-groups defeat commonality. They do not. First, courts have routinely recognized factual and legal variations in the circumstances of class members, as commonality requires not that "all class members make identical claims and arguments" but only that "common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992); *see Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("A court may find a common issue of law even though there exists some factual variation among class members' specific grievances."); *see also Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996) ("The unique circumstances of each child do not compromise the common question of whether, as plaintiffs allege, defendants have injured all class members by failing to meet their federal and state law obligations."). Whether class members have temporary legal status or no legal status is immaterial for the commonality requirement, as the birthright citizenship-banning EO treats

4

them equally: all class members will suffer the same harm of losing U.S. citizenship. *See Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The fact that the claims of the proposed class 'stem from the same alleged unconstitutional conduct of the defendants' proves the existence of common questions of law or fact.") (quoting *Wilson v. Tinicum Tp.*, No. 2:92-cv-07717, 1993 WL 280205, at *5 (E.D. Penn. July 20, 1993))

Secondly, Defendants appear to create half of their "distinct groups" by distinguishing between individuals who have already given birth in contrast to those who will give birth in the future. *See* Opp. 10, ECF No. 59.[2] Yet courts have routinely certified classes including future class members when "any equitable relief to which the class would be entitled would be of the sort that would affect present and future claimants in the same way." *Latino Officers Ass'n City of N.Y. v. City of New York*, 209 F.R.D. 79, 90 n.87 (S.D.N.Y. 2002); *Duprey v. Conn. Dep't of Motor Vehicles*, 191 F.R.D. 329, 338 (D. Conn. 2000) ("It is not at all uncommon for a class to include future members, who may generally avail themselves of the same relief available to class members who have already sustained damages."). All proposed class members—whether born to individuals with temporary legal status or not, or to individuals who have already given birth or will do so in the future—present

---

[2] Alleged sub-groups (1) and (3) correspond with children of individuals who have already given birth, while alleged sub-groups (2) and (4) correspond with children of individuals who will give birth in the future.

5

common questions of law and fact and will suffer the same harm: the denial of U.S. citizenship.

As with commonality, the factual differences among class members described by Defendants do not defeat typicality. *See Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 11 (S.D.N.Y. 2024) (finding the typicality requirement to be usually met regardless of minor factual variations) (citing *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)). Instead, typicality is achieved when the claims of the class representatives and the class members are based on similar legal theories and arise from the same course of conduct. *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996)). And contrary to Defendants' suggestion, named class representatives do not need to represent every conceivable factual scenario. *See In re NASDAQ*, 169 F.R.D. at 511 ("Typicality…does not require that the situations of the named representatives and the class members be identical.") (citing *Trief*, 144 F.R.D. at 200). Indeed, the birthright citizenship-banning EO does not distinguish its enforcement between children born to parents in either of its defined categories.[3] Instead, so long as an individual is born to parents

---

[3] There is not one effective date for children born to parents with tourist visas on "a planned one-week stay," another effective date for those born to parents with tourist visas who give birth prematurely and do not intend to return to the United States, and yet another date for children born to student visa holders who have lived in the U.S. for a decade. *See* Opp. 12, ECF No. 59. Nor does the EO purport to create intermediate or differing levels of citizenship for children born to parents in those various factual scenarios. Rather, the EO directs federal agencies to neither

belonging to either one of the EO's proscribed categories, the birthright citizenship-banning Executive Order will affect them in the same way it does all class members: stripping them of U.S. citizenship. As such, typicality is easily satisfied here.

Defendants' arguments concerning adequacy are also without merit. The first prong of adequacy requires that a conflict of interest be "fundamental" and go "to the very heart of the litigation" to defeat class certification. *In re Namenda Indirect Purchaser Antitrust Litigation*, 338 F.R.D. 527, 548 (S.D.N.Y. 2021) (citing *Charron v. Wiener*, 731 F.3d 241, 250 (2d Cir. 2013) (citation omitted)). No such fundamental conflict exists here. As already explained, the named Plaintiffs seek the same relief as other members, and their claims cover the entire class. Meanwhile, Defendants' argument that "subject to the jurisdiction thereof" involves domicile has been soundly rejected by courts. *See United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898); *CASA, Inc. v. Trump*, 763 F. Supp. 3d 723, 739 (D. Md. 2025); *New Hampshire Indonesian Cmty. Support*, 765 F. Supp. 3d 102, 110 (D.N.H. 2025) (holding the same). Defendants fail to identify any other potential conflicts.

Finally, Defendants wrongly argue that the named class representatives cannot adequately represent the class by proceeding in this litigation pseudonymously. For one, courts often permit class representatives to proceed pseudonymously or

---

issue nor recognize documents that would affirm any proposed class member's U.S. citizenship, regardless of the specific factual circumstances of their birth.

anonymously in civil rights actions and in actions against the government. *See, e.g., R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 371–72 (S.D.N.Y. 2019) (finding personal anonymity more readily granted in actions against government entities because "the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights.") (quoting *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)). Furthermore, disclosing the identities of named Plaintiffs risks deportation or other negative effects to their sensitive immigration matters, an extremely severe hardship that weighs in favor of granting anonymity. *Cf. Doe 3 v. Indyke*, No. 24-cv-1204 (AS), 2024 WL 4299757 at *4 (S.D.N.Y. Sept. 26, 2024) (finding that disclosure of even a sexual abuse victim's identity would not create as severe a hardship as disclosing the identity of anonymous class members who are were at risk of "deportation, arrest, and imprisonment."). Lastly, unlike in Rule 23(b)(3) cases, where class members may opt out, putative class members have no way to either opt in or out of a 23(b)(2) class, thus requiring less information about specific class representatives. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see Doe v. City of Apple Valley*, No. 20-cv-499 (PJS/DTS), 2020 WL 1061442, at *3 (D. Minn. Mar. 5, 2020) (recognizing that plaintiffs' status as putative class representatives strengthened their argument for proceeding pseudonymously because "[t]he public interest is not being

8

able to identify any one Plaintiff, but in being able to follow the case to determine how the constitutional issue are resolved.") (quotation omitted).

### C. Plaintiffs Satisfy the Rule 23(b)(2) Requirements.

Like their arguments about Rule 23(a)'s commonality and typicality requirements, Defendants' arguments about Rule 23(b)(2) fail for similar reasons. Through the nationwide birthright citizenship-banning Executive Order, Defendants have acted in a way that applies generally to the entire class, and "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

First, Defendants misunderstand *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and the indivisible nature of injunctive relief it calls for. In *Wal-Mart*, the Supreme Court recognized civil rights cases as "prime examples" of what Rule 23(b)(2) is meant to capture and explained that the relief sought in a 23(b)(2) case must "affect the entire class at once." *Wal-Mart*, 564 U.S. at 361–62 (2011). Such relief occurs when plaintiffs seek "a single injunction or declaratory judgment [that] would provide relief to each member of the class." *Id.* at 360. Here, Plaintiffs are requesting a uniform remedy: injunctive relief that enjoins Defendants from implementing and enforcing the birthright citizenship-banning Executive Order. This relief falls firmly within the category which Rule 23(b)(2) was designed to provide.

9

Defendants are also mistaken in asserting that the children of named Plaintiffs do not require any injunctive relief. *See* Opp. 10, ECF No. 59. The children of Plaintiffs J.V. and D.F. have not received their U.S. passports. J.V. Decl. ¶ 7, ECF No. 45-1; D.F. Decl. ¶ 7, ECF No. 45-2. This is precisely the kind of harm the EO creates for class members in directing federal departments and agencies to not issue citizenship-affirming identity documents. EO § 2(a). Moreover, both Plaintiffs J.V. and D.F. plan to give birth to additional children in the U.S. in the future. J.V. Decl. ¶ 11; D.F. Decl. ¶ 9. Like other class members who are currently pregnant or who will give birth to children impacted by the birthright citizenship-banning EO in the future, their children too will suffer the same harm of losing United States citizenship.

Whether the federal government rejects the validity of already-issued citizenship-affirming documents from state or local authorities, or refuses to issue those documents to class members in the first place, all members at base suffer the same harm from the same EO: the stripping of their constitutionally guaranteed citizenship. An injunction prohibiting Defendants from enforcing the birthright citizenship-banning Executive Order, in turn, will provide a single solution that is applicable to all class members by allowing them to receive and use valid citizenship-affirming documents. *See Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (recognizing the

appropriateness of a Rule 23(b)(2) certification to address the harms caused by a single defendant company against plaintiffs who purchased among ninety misleadingly labeled products). Moreover, Defendants have made no stipulation that an injunction granted to one plaintiff will be observed on a general basis; instead, Defendants will need to be enjoined from enforcing the EO on a class-wide basis to provide relief to any class members. *See Laumann v. National Hockey League*, 105 F. Supp. 3d 384, 396 (S.D.N.Y. 2015) (finding Rule 23(b)(2) class certification necessary when a defendant fails to stipulate that an injunction granted to one plaintiff will lead to a generally applicable injunction in practice).

Lastly, Defendants' arguments about this Court's future merits rulings are inapt here, as Plaintiffs are seeking provisional class certification for purposes of a preliminary injunction. The Supreme Court has rejected the notion that "free-ranging merits inquiries" are appropriate at the certification stage. *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013). The Court may provisionally certify the class here and later modify or amend the order granting class certification as it deems necessary. Fed. R. Civ. P. 23(c)(1)(C).

## II. PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE AND NECESSARY HERE.

Courts routinely grant class certification in conjunction with preliminary relief, and certifying the proposed class is appropriate here. *See Brown v. Giuliani*,

158 F.R.D. 251, 254 (E.D.N.Y. 1994) (granting class certification and preliminary injunction simultaneously); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) (approving provisional class certification for purposes of preliminary injunction proceedings). Granting a provisional class certification is no extreme step either; indeed, there is a well-founded basis for granting such certifications. *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025); *see Hasemann v. Gerber Products Co.*, 331 F.R.D 239, 278 (E.D.N.Y. 2019) (noting that class certification "is always provisional in nature" until the final resolution of the case) (quoting *Carriuolo v. General Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016)). The issue of class certification is fully briefed here, and the Court may issue such provisional certification to provide class members with temporary relief while the constitutionality of the Executive Order is adjudicated.

Defendants' concerns about nonparties are also misplaced. Certifying the proposed class here addresses any concerns about providing relief to nonparties, and the Supreme Court has indicated that a class action is the proper avenue for seeking broad relief. *See CASA*, 145 S. Ct. at 2555. The Court should certify the proposed class and grant preliminary injunctive relief because Plaintiffs easily satisfy Rule 23's requirements, and the class is well-defined and ascertainable. Courts have routinely granted provisional class certifications with preliminary injunctive relief, and doing so is appropriate here.

## III. THE FIRST-FILED PRINCIPLE DOES NOT APPLY HERE.

Defendants' invocation of the first-filed rule overstates the protections of the District of New Hampshire's preliminary injunction order, which itself was based on the certification of a provisional nationwide class. As Defendants accurately note, the District of New Hampshire's class certification is only *provisional*, and may be narrowed or altered in the future. *See* Opp. 18, ECF No. 59; *Barbara v. Trump*, No. 25-cv-244-JL-AJ, 2025 WL 1904338, at *10 (D.N.H. July 10, 2025). Such modification would surely leave putative class members without protection from enforcement of the birthright citizenship-banning EO. Furthermore, Defendants argue that entering a preliminary injunction on behalf of a provisional Rule 23(b)(2) class is inappropriate, yet they simultaneously claim that Plaintiffs' class members need not worry here because they are protected by another preliminary injunction issued under those very circumstances.[4] *See* Opp. 15, 18, ECF No. 59. Should Defendants succeed in their attempts to again narrow the scope of a nationwide injunction, Plaintiffs would be rendered subject to the immediate enforcement of the unlawful EO.

The majority's decision in *Trump v. CASA* unleashed a new reality where plaintiffs must bring related class action lawsuits against executive actions in

---

[4] This comes after the Government refused to commit to obeying any Federal Court of Appeals order holding the EO unlawful except as to the plaintiffs in the suit, even within that Circuit. *CASA*, 145 S. Ct. at 2594-95 (Sotomayor, J., dissenting).

13

separate courts to secure their own rights. *See CASA*, 145 S. Ct. at 2596 (Sotomayor, J., dissenting) (advising the parents of children covered by the Executive Order to promptly file class action lawsuits). While Plaintiffs' case and *Barbara* are related, they are not duplicative. *See Newberg and Rubenstein on Class Actions* § 10:33 (6th ed. 2025) ("[N]either the filing of a class action nor even the grant of a class certification motion has any format effect on litigation elsewhere…the only sure method of coordination is a final judgement in a class suit."). The Government has already diminished the scope of injunctions against this birthright citizenship-banning Executive Order in a related case, and it almost assuredly will behave similarly now. *See CASA*, 145 S. Ct. at 2548–49. An invocation of the first-filed rule is inappropriate and ill-fitting situations like this one where Defendants continue to attack the order they suggest protects Plaintiffs.

## CONCLUSION

For all the foregoing reasons, the Court should certify Plaintiffs' proposed class and enjoin the birthright citizenship-banning EO class-wide.

Dated this 23rd day of July, 2025

Respectfully submitted,

By: /s/ Cesar Z. Ruiz
Cesar Z. Ruiz
Michael Asparrin*
Mariana C. Lopez
Francisca D. Fajana

14

LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
CRuiz@latinojustice.org
MAsparrin@latinojustice.org
FFajana@latinojustice.org
MLopez@latinojustice.org


*Application for admission pending

## WORD CERTIFICATION

I hereby certify that this affirmation complies with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 3,346 words.

Dated this 23rd day of July, 2025

        Respectfully submitted,

        By: /s/ Cesar Z. Ruiz
        Cesar Z. Ruiz
        Michael Asparrin*
        Francisca D. Fajana
        Mariana C. Lopez
        LatinoJustice PRLDEF
        475 Riverside Drive, Suite 1901
        New York, NY 10115
        212.319.3360
        FFajana@latinojustice.org
        CRuiz@latinojustice.org
        Mlopez@latinojustice.org
        Masparrin@latinojustice.org

        *Application for admission pending