UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK IMMIGRATION COALITION, *et al.*,

                     Plaintiffs,

      v.

DONALD J. TRUMP, *et al.*,

                 Defendants.

No. 25 Civ. 1309 (MMG)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

JAY CLAYTON
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

U.S. Department of Justice
Civil Division
1100 L Street N.W.
Washington, DC 20005

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .....................................................................................................................2

    A.    The EO and Plaintiffs' Second Amended Complaint ...............................................2

    B.    Other Litigations Challenging the EO .....................................................................3

ARGUMENT ..........................................................................................................................5

THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT ........................5

    A.    Rule 12(b)(1) and 12(b)(6) Legal Standards............................................................5

    B.    The Organizational Plaintiffs' Claims Fail in Part for Lack of Standing ...............5

        1.    NYIC and RRM Lack Organizational Standing and NYIC Also Lacks
                Representational Standing ..............................................................................6

    C.    The President Should Be Dismissed ..........................................................................9

    D.    The SAC Fails to State a Claim ...............................................................................10

        1.    Plaintiffs Fail to Allege a Cause of Action under the APA .......................10

        2.    Plaintiffs Cannot Sue Directly under the Constitution .............................10

        3.    Plaintiffs' *Ultra Vires* Claim Fails..............................................................11

        4.    Plaintiffs' Claims Fail on the Merits..........................................................12

    E.    The Court Should Dismiss, Stay or Transfer the Case Under the
        First-Filed Rule ......................................................................................................13

CONCLUSION......................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Abuhajeb v. Pompeo*,
    531 F. Supp. 3d 447 (D. Mass. 2021) .......................................................................... 11

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
    626 F.3d 699 (2d Cir. 2010) ...................................................................................... 14

*African Communities Together v. Lyons*,
    No. 25 Civ. 6366 (PKC), 2025 WL 2633396 (S.D.N.Y. Sept. 12, 2025) ............................. 6, 7

*Alsaidi v. Dep't of State*,
    292 F. Supp. 3d 320 (D.D.C. 2018) ............................................................................ 11

*Ancient Coin Collectors Guild v. Customs & Border Prot.*,
    801 F. Supp. 2d 383 (D. Md. 2011) ............................................................................ 12

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ................................................................................................ 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 5

*Baatz v. Columbia Gas Transmission, LLC*,
    814 F.3d 785 (6th Cir. 2016) ..................................................................................... 15

*Barbara v. Trump*,
    Civ. A. No. 25-244-JL-AJ, 2025 WL 1904338 (D.N.H. July 10, 2025) ............................. 4, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 5

*Bukhari v. Deloitte & Touche LLP*,
    No. 12 Civ. 4290 (PAE), 2012 WL 5904815 (S.D.N.Y. Nov. 26, 2012) ............................. 14

*California v. Texas*,
    593 U.S. 659 (2021) .................................................................................................. 6

*Cambranis v. Blinken*,
    994 F.3d 457 (5th Cir. 2021) ..................................................................................... 11

*CASA, Inc. v. Trump*,
    Civ. A. No. 25-00201, 2025 WL 2257625 (D. Md. Aug. 7, 2025) ..................................... 4, 15

*CASA, Inc. v. Trump*,
    No. 25-1153, 2025 WL 654902 (4th Cir. Feb. 28, 2025) ................................................ 4

*Castillo v. Taco Bell of Am., LLC,*
   960 F. Supp. 2d 401 (E.D.N.Y. 2013) ...................................................................... 15

*Citizens for Resp. & Ethics in Wash. v. U.S. Off. of Special Counsel,*
   480 F. Supp. 3d 118 (D.D.C. 2020) .......................................................................... 8

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,*
   868 F.3d 104 (2d Cir. 2017)....................................................................................... 7

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................................................... 6

*Crawford v. Bell,*
   599 F.2d 890 (9th Cir. 1979) ................................................................................... 16

*Dalton v. Specter,*
   511 U.S. 462 (1994) ................................................................................................. 10

*DeVillier v. Texas,*
   601 U.S. 285 (2024) ................................................................................................. 10

*Do No Harm v. Pfizer, Inc.,*
   126 F.4th 109 (2d Cir. 2025) ..................................................................................... 7

*FDA v. Alliance for Hippocratic Medicine,*
   602 U.S. 367 (2024) ........................................................................................... 6, 7, 8

*Findwhat.com v. Overture Servs.,*
   No. 02 Civ. 447 (MBM), 2003 WL 402649 (S.D.N.Y. Feb. 21, 2003)................... 14

*First City Nat. Bank and Trust Co. v. Simmons,*
   878 F.2d 76 (2d Cir.1989)........................................................................................ 14

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ................................................................................................... 9

*Int'l Fed'n of Pro. & Tech. Eng'rs v. United States,*
   934 F. Supp. 2d 816 (D. Md. 2013) ........................................................................ 12

*Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,*
   342 U.S. 180 (1952) ................................................................................................. 14

*Larson v. Domestic & Foreign Com. Corp.,*
   337 U.S. 682 (1949)................................................................................................. 11

*Long Island Radio Co. v. NLRB,*
   841 F.2d 474 (2d Cir. 1988)...................................................................................... 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................ 6

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) .................................................................................. 5

*Mastercard Int'l Inc. v. Lexcel Solutions*,
   No. 03 Civ. 7157 (WHP), 2004 WL 1368299 (S.D.N.Y. June 16, 2004) ............... 14

*Michel v. Petco Animal Supplies Stores*,
   404 F. Supp. 3d 685 (E.D.N.Y. 2017) .................................................................. 16

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ............................................................................ 9

*New Jersey v. Trump*,
   131 F.4th 27 (1st Cir. 2025) .................................................................................. 4

*New York Civil Liberties Union v. New York City Transit Auth.*,
   684 F.3d 286 (2d Cir. 2012) .................................................................................. 6

*Norris v. Phillip Morris Int'l Inc*,
   No. 3:24-cv-1267 (VAB), 2025 WL 1677808 (D. Conn. June 13, 2025) ............... 15

*Ontel Products, Inc. v. Project Strategies Corp.*,
   899 F. Supp. 1144 (S.D.N.Y.1995) ....................................................................... 14

*Open Society Justice Initiative v. Trump*,
   510 F. Supp. 3d 198 (S.D.N.Y. 2021) ................................................................... 12

*Pen Am. Ctr., Inc. v. Trump*,
   448 F. Supp. 3d 309 (S.D.N.Y. 2020) ............................................................ 8, 9, 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ............................................................................................... 12

*Reliance Ins. Co. v. Six Star, Inc.*,
   155 F. Supp. 2d 49 (S.D.N.Y. 2001) .................................................................... 14

*Richards v. Sec'y of State*,
   752 F.2d 1413 (9th Cir. 1985) .............................................................................. 11

*Santana v. Cavalry Portfolio Services, LLC*,
   No. 19 Civ. 3773 (PAE), 2019 WL 6173672 (S.D.N.Y. Nov. 19, 2019) ............... 15

*Spotless Enters. Inc. v. the Accessory Corp.*,
   415 F. Supp. 2d 203 (E.D.N.Y. 2006) .................................................................. 14

*Taylor Energy Co., LLC v. United States,*
Civ. A. No. 20-1720, 2021 WL 1876845 (E.D. La. May 10, 2021) ........................................ 12

*Thomas v. Apple-Metro, Inc.,*
No. 14 Civ. 4120 (VEC), 2015 WL 505384 (S.D.N.Y. Feb. 5, 2015) .................................... 15

*Thompson v. Dep't of Hous. & Urb. Dev.,*
Civ. A. No. 95-0309, 2006 WL 581260 (D. Md. Jan. 10, 2006) ........................................... 12

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ............................................................................................................. 6

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025) ............................................................................................................. 4

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.,*
578 U.S. 590 (2016) ............................................................................................................ 10

*United States v. Sherwood,*
312 U.S. 584 (1941) ............................................................................................................. 5

*United States v. Wong Kim Ark,*
169 U.S. 649 (1898) ............................................................................................................ 13

*Vance v. Terrazas,*
444 U.S. 252 (1980) ............................................................................................................ 11

*Warth v. Seldin,*
422 U.S. 490 (1975) ............................................................................................................. 6

*Washington v. Trump,*
145 F.4th 1013 (9th Cir. 2025) ....................................................................................... 4, 13

*Washington v. Trump,*
No. 25-807, 2025 WL 553485 (9th Cir. Feb. 19, 2025) ........................................................ 4

*Wyler-Wittenberg v. MetLife Home Loans, Inc,*
899 F. Supp. 2d 235 (E.D.N.Y. 2012) ......................................................................... 15, 16

**Statutes**

5 U.S.C. § 704 ..................................................................................................................... 10

8 U.S.C. § 1401(a) ...................................................................................................... 1, 3, 11

8 U.S.C. § 1503 ................................................................................................................... 10

8 U.S.C. § 1503(a) .............................................................................................................. 11

28 U.S.C. § 2201 ................................................................................................................ 11

42 U.S.C. § 1983 ................................................................................................................ 10

*Rules*

Federal Rule of Civil Procedure 12(b)(1) ...................................................................... 5, 13

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 5, 13

*Other Authorities*

Executive Order No. 14159, 90 Fed. Reg. 8443 ................................................................ 2

Executive Order No. 14160, 90 Fed. Reg. 8449 ................................................................ 1

Executive Order No. 14165, 90 Fed. Reg. 8467 ................................................................ 2

## PRELIMINARY STATEMENT

Defendants, by their attorneys, respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC").

The SAC is legally insufficient for several reasons. First, Plaintiffs' challenge to Executive Order No. 14160, "Protecting the Meaning and Value of American Citizenship," 90 Fed. Reg. 8449 (Jan. 20, 2025) (the "Citizenship EO" or "EO"), should be dismissed in part for lack of standing. The two organizational plaintiffs – New York Immigration Coalition ("NYIC") and Rural & Migrant Ministry ("RRM") – fail to establish "organizational standing" because they have not suffered a perceptible impairment of their activities necessary to establish an injury in fact. NYIC also cannot establish "representational standing" based on the claims of its members; NYIC's members are other organizations, not individuals who themselves have standing to sue. Accordingly, there is no subject matter jurisdiction over NYIC's claims.

The SAC also fails to state a claim and/or is barred by sovereign immunity. Plaintiffs cannot challenge the EO under the Administrative Procedure Act ("APA") because the APA only allows for challenges to "final agency action," and the EO was issued by the President who is not subject to the APA. Plaintiffs also purport to assert claims directly under the Citizenship Clause and Equal Protection Clause of the Fourteenth Amendment, but the Constitution does not provide for a private right of action in this manner. And Plaintiffs' *ultra vires* claim based on alleged violations of 8 U.S.C. § 1401(a) also is not proper. Likewise, Plaintiffs' claims against the President of the United States must be dismissed because the Court does not have jurisdiction to enjoin the President.

Finally, Plaintiffs' claims should be dismissed, transferred, or stayed under the first-to-file rule. All of the individual plaintiffs are included within class action complaints which are proceeding

in other federal courts.  Accordingly, this Court should decline to exercise jurisdiction over their claims and dismiss them.

## BACKGROUND

### A.  The EO and Plaintiffs' Second Amended Complaint

On January 20, 2025, President Trump issued the Citizenship EO, which is an integral part of the President's broader effort to address the United States' immigration system and the ongoing crisis at the southern border.  *See, e.g.*, Exec. Order No. 14165, "Securing Our Borders," 90 Fed. Reg. 8467 (Jan. 20, 2025); Proclamation No. 10886, "Declaring a National Emergency at the Southern Border of the United States," 90 Fed. Reg. 8327 (Jan. 20, 2025); Exec. Order No. 14159, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443 (Jan. 20, 2025).  The Citizenship EO seeks to correct the Executive Branch's prior misreading of the Citizenship Clause.  It recognizes that the Constitution and the Immigration and Nationality Act ("INA") provide for birthright citizenship for all persons who are born in the United States and subject to the jurisdiction thereof, and identifies two circumstances in which a person born in the United States is not automatically extended the privilege of citizenship:

> (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Citizenship EO § 1.

Section 2(a) of the EO directs the Executive Branch (1) not to issue documents recognizing U.S. citizenship to persons born in the United States under the conditions described in section 1, and (2) not to accept documents issued by state, local, or other governments purporting to recognize the U.S. citizenship of such persons.  *Id.* § 2(a).  The EO specifies, however, that those directives "apply

only to persons who are born within the United States after 30 days from the date of this order," or February 19, 2025.  *Id.* § 2(b).

With respect to enforcement, the EO directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to take "all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order," and not to "act, or forbear from acting, in any manner inconsistent with this order."  *Id.* § 3(a).  It further directs the heads of all federal agencies to issue public guidance within 30 days (by February 19, 2025) "regarding this order's implementation with respect to their operations and activities."  *Id*. § 3(b).

Plaintiffs filed their initial complaint in this action on February 13, 2025, ECF No. 1, and an amended complaint on March 5, 2025, ECF No. 15.  They moved for a preliminary injunction on March 21, 2025.  ECF No. 19.  On July 9, 2025, Plaintiffs filed motions for, *inter alia*, class certification and permission to file a Second Amended Complaint.  ECF Nos. 44, 46.  The Court granted Plaintiffs' motion to file a Second Amended Complaint on July 14, 2025 (ECF No. 50), and Plaintiffs successfully filed the SAC on July 18, 2025 (ECF No. 60).

The SAC Complaint asserts four causes of action: that the EO violates the Fourteenth Amendment's Citizenship Clause (Claim I), SAC ¶¶ 71-74, and Equal Protection Clause (Count II), SAC ¶¶ 75-80; is *ultra vires* because it conflicts with 8 U.S.C. § 1401(a) (Count III), SAC ¶¶ 81-83; and violates the APA (Count IV), SAC ¶¶ 84-86.  Plaintiffs seek an Order, *inter alia*, declaring the EO to be unconstitutional and contrary to the laws of the United States, and permanently enjoining Defendants from enforcing the EO.  SAC at 36 (Prayers for Relief).

### B.  Other Litigations Challenging the EO

The EO has been challenged in other judicial districts.  *See, e.g.*, *CASA, Inc. v. Trump*, No.

25-1153, 2025 WL 654902 (4th Cir. Feb. 28, 2025) (denying stay of nationwide injunction); *Washington v. Trump*, No. 25-807, 2025 WL 553485 (9th Cir. Feb. 19, 2025) (same); *New Jersey v. Trump*, 131 F.4th 27 (1st Cir. 2025) (same). On March 13, 2025, the Government filed emergency applications in the United States Supreme Court seeking to limit or stay the nationwide injunctions. See *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). On June 27, 2025, the Supreme Court held that the Government was likely to succeed on the merits of its argument that under the Judiciary Act of 1789, federal courts lacked authority to issue universal injunctions. *Id.* at 842. The Supreme Court therefore stayed the preliminary injunctions to the extent they were broader than necessary to provide complete relief to each plaintiff with standing to sue and remanded the cases back to the district courts. *Id.* at 861. Thereafter, a district court judge in the District of New Hampshire provisionally certified a nationwide class of plaintiffs and issued a class-wide preliminary injunction. *See "Barbara" v. Trump*, Civ. A. No. 25-244-JL-AJ, 2025 WL 1904338 (D.N.H. July 10, 2025). On July 23, 2025, the Court of Appeals for the Ninth Circuit affirmed the district court's order in *Washington v. Trump*, to the extent it granted a universal preliminary injunction "to give the States complete relief on their claims." 145 F.4th 1013, 1019 (9th Cir. 2025). On July 25, 2025, a district court judge in the District of Massachusetts declined to narrow the scope of its injunction prohibiting implementation of the EO nationwide. *New Jersey v. Trump*, No. 2:25-cv-10139, ECF No. 25-10139 (D. Mass. July 25, 2025). And, on August 7, 2025, a district court judge in the District of Maryland issued a class-wide preliminary injunction. *See CASA, Inc. v. Trump*, Civ. A. No. 25-00201, 2025 WL 2257625 (D. Md. Aug. 7, 2025).

# ARGUMENT

## THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT

### A.  Rule 12(b)(1) and 12(b)(6) Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988).  On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings," *Makarova*, 201 F.3d at 113, and the plaintiff bears "the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists," *id*.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the non-movant, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B.  The Organizational Plaintiffs' Claims Fail in Part for Lack of Standing

The SAC fails in part for lack of standing.  A mandatory prerequisite to any exercise of judicial power under Article III is the existence of a constitutional "case" or "controversy," without which the

Court lacks jurisdiction to proceed. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024). Establishing standing requires three showings. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, a plaintiff must show a "concrete" ("real," not "abstract") injury-in-fact, which is "particularized" to the plaintiff and not a "generalized grievance." *Alliance*, 602 U.S. at 381. If the injury has not yet actually manifested, it must be "certainly impending," and not speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). And even an alleged actual—*i.e.*, present—injury must be legally cognizable under the American legal tradition. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-26 (2021).

If the plaintiff can show injury-in-fact, then the plaintiff must also show the second element: a causal link between that injury and the allegedly unlawful conduct of the defendant. *Alliance*, 602 U.S. at 382. Finally, the plaintiff must show that the injury caused by defendant's allegedly unlawful behavior is likely redressable by judicial relief. *California v. Texas*, 593 U.S. 659, 671-74 (2021).

### 1. NYIC and RRM Lack Organizational Standing and NYIC Also Lacks Representational Standing

There are two ways in which an organization may demonstrate standing. *African Communities Together v. Lyons*, No. 25 Civ. 6366 (PKC), 2025 WL 2633396, at *6 (S.D.N.Y. Sept. 12, 2025). First, it may have "representational" or "associational" standing to sue on behalf of its members, "'in which case it must show, inter alia, that some particular member of the organization would have had standing to bring the suit individually.'" *Id.* (quoting *New York Civil Liberties Union v. New York City Transit Auth.,* 684 F.3d 286, 294 (2d Cir. 2012)). Second, "an organization can 'have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Under this basis, called "organizational" standing, "'a perceptible impairment of an organization's activities is necessary for there to be an injury in fact.'" *Id.* (quoting *Warth*, 422 U.S.

at 511).

NYIC lacks representational standing because all of its members are constituent organizations, not individuals who could be affected by the EO.  SAC ¶¶ 15 ("NYIC is a member-led coalition of immigrant and refugee organizations . . .," 36-37 (same); Declaration of Murad Awawdeh, President and CEO of NYIC (ECF No. 45-4) ¶ 6.  *See, e.g.*, *Do No Harm v. Pfizer, Inc.,* 126 F.4th 109, 118 (2d Cir. 2025) (organization must show that one of its members would have standing to sue on its own behalf).  Indeed, Plaintiffs do not allege that any member of NYIC has been directly affected by the EO and therefore cannot show that a "particular member of the organization would have had standing to bring the suit individually."  *African Communities*, 2025 WL 2633396, at *6.

Furthermore, NYIC and RMM have not established organizational standing.  An organization may have standing in its own right "if it can show '(i) an imminent 'injury in fact' to itself as an organization (rather than to its members) that is 'distinct and palpable'; (ii) that its injury is 'fairly traceable' to enforcement of the [challenged conduct]; and (iii) that a favorable decision would redress its injuries.'"  *African Communities*, 2025 WL 2633396, at *8 (quoting *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017)).  However, an organization "that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."  *Alliance*, 602 U.S. at 394.  Thus, merely "divert[ing] … resources in response" to government action, or allocating more resources to core mission activities in response to a government action, is not sufficient for standing.  *Id*. at 395.  Likewise, an organization "may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization."  *Id*. at 394 (internal quotation marks and citations omitted).  An organizational plaintiff

must show "far more than simply a setback to the organization's abstract social interests." *Id.* at 394 (internal quotation marks and citations omitted).

Here, neither NYIC nor RMM has shown a perceptible impairment of its activities necessary to establish an injury in fact. NYIC is a "coalition of over 170 immigrant and refugee-rights groups throughout New York." SAC ¶ 36. Its core mission includes "driv[ing] work at the municipal, state, and federal levels to counter anti-immigrant policies, fight against out-of-control immigrant enforcement agencies, [and] strengthen immigrants' fundamental civil rights . . ." https://www.nyic.org/our-work/immigrant-rights/ (last visited Sept. 23, 2025). While NYIC alleges in conclusory terms that it is "diverting resources away from its provision of legal assistance to immigrants" in other contexts "to combat the impacts of the birthright citizenship ban," SAC ¶ 40, that is not sufficient to establish an injury in fact. Litigating the constitutionality of the EO clearly fits within NYIC's core issue-advocacy mission, and NYIC therefore cannot contend that it is injured by doing what it set out to do as an organization. *Alliance*, 602 U.S. at 395; *Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 325 (S.D.N.Y. 2020) (ruling that plaintiff's diversion of resources argument failed "because Defendant's challenged activities have not impeded Plaintiff's core activities, but have refocused and perhaps enlarged them"); *Citizens for Resp. & Ethics in Wash. v. U.S. Off. of Special Counsel*, 480 F. Supp. 3d 118, 128 (D.D.C. 2020) ("[T]he devotion of resources to advocacy for the organization's preferred policy—whether that advocacy is directed at Congress, the courts, or an administrative agency—falls short of the line."). Indeed, courts have made clear that the type of diversion-of-resources harm that NYIC alleges is not sufficient for standing. *See, e.g.*, *Alliance*, 602 U.S. at 394-95 (diversion of resources must impact "core business activities"); *Pen Am.*, 448 F. Supp. 3d at 325-26 (same). Were it otherwise, every organization that responds to a change in federal policy would have standing, and that "expansive theory" is not the law. *Alliance*, 602 U.S. at 395; *see also*

*Pen Am.*, 448 F. Supp. 3d at 325-26 (allocating more resources to a specific core activity "does not establish an injury").

The same is true for RRM.  RRM puts its "mission into action through five main program areas," including its "Immigrant Legal Rights Project."  https://ruralmigrantministry.org/what-we-do-2/ (last visited on Sept. 23, 2025).  The Immigrant Legal Rights Project "assists people in protecting their legal rights.  The Project works hand-in-hand with RMM's Rural Academy of the People and our long tradition of advocacy to utilize popular education as well as impact litigation and legislation to build    capacity    and    ensure    the    just    treatment    of    immigrant    families."  https://ruralmigrantministry.org/what-we-do/immigrant-legal-rights-project/ (last visited on Sept. 23, 2025).  Contesting the constitutionality of the EO thus clearly fits within RRM's core impact litigation mission.  *Alliance*, 602 U.S. at 395; *Pen Am.*, 448 F. Supp. 3d at 325-26.  And RRM does not allege that the EO has caused it to divert resources from its core mission.  *See* SAC ¶¶ 43-47.  As such, RRM cannot establish organizational standing.

Accordingly, NYIC's claims should be dismissed for lack of standing and RRM's organizational standing claim should be dismissed.

### C.  The President Should Be Dismissed

Plaintiffs have named the President as a Defendant but "courts do not have jurisdiction to enjoin [the president] . . . and have never submitted the President to declaratory relief."  *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (citations omitted); *see Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) ("[I]n general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'") (citation omitted); *Pen Am.*, 448 F. Supp. 3d at 327 (same).  Accordingly, the Court lacks jurisdiction to enter Plaintiffs' requested relief against the President and should dismiss him as a defendant in this case.  *See, e.g.*, *Franklin*, 505 U.S. at 802-03;

*Pen Am.*, 448 F. Supp. 3d at 328.

### D. The SAC Fails to State a Claim

In addition to the jurisdictional deficiencies set forth above, the SAC should also be dismissed for failure to plead a viable cause of action.

#### 1. Plaintiffs Fail to Allege a Cause of Action under the APA

Plaintiffs' attempt to challenge the EO under the APA is unavailing. *See* SAC ¶¶ 84-86. The APA only waives sovereign immunity for review of "final agency action." 5 U.S.C. § 704. The EO is not final agency action as it was issued by the President, who is not subject to the APA. *See Dalton v. Specter*, 511 U.S. 462, 469 (1994). Accordingly, until such time as an agency takes an action, determines rights or obligations, or otherwise causes legal consequences in furtherance of the EO, *see, e.g.*, *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016), the APA affords no cause of action.

#### 2. Plaintiffs Cannot Sue Directly under the Constitution

Plaintiffs also cannot challenge the EO directly under the Fourteenth Amendment's Citizenship Clause and Equal Protection Clause. *See* SAC ¶¶ 71-80. The Citizenship and Equal Protection Clauses do not, by themselves, allow Plaintiffs to bring suit. "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). "Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose" (such as 42 U.S.C. § 1983). *Id.*

Moreover, the INA provides a mechanism to challenge citizenship determinations. Pursuant to the INA's comprehensive statutory framework for judicial review, disputes regarding an individual's citizenship are resolved by the individual filing an action for declaratory relief. 8 U.S.C.

§ 1503.  Section 1503 provides that "[i]f any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States," then that person may institute an action under 8 U.S.C. § 1503, in conjunction with 28 U.S.C. § 2201, for a declaratory judgment that he is a U.S. national.  *See id*. § 1503(a).  Under Section 1503, district courts conduct *de novo* proceedings as to the noncitizen's nationality.  *See Vance v. Terrazas*, 444 U.S. 252, 256 (1980); *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985).

Because "Congress intended § 1503(a) to be the exclusive remedy for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national," *Cambranis v. Blinken,* 994 F.3d 457, 466 (5th Cir. 2021), courts have held that this section offers an adequate alternative remedy to APA review.  *See, e.g.*, *Abuhajeb v. Pompeo*, 531 F. Supp. 3d 447, 455 (D. Mass. 2021); *Alsaidi v. Dep't of State*, 292 F. Supp. 3d 320, 326-27 (D.D.C. 2018).  As a result, challenges to an agency's determination that an individual lacks citizenship under the EO should be channeled through Section 1503(a) proceedings rather than through claims brought by the organizational Plaintiffs.

### 3.  Plaintiffs' *Ultra Vires* Claim Fails

Plaintiffs' final cause of action – alleging that the EO violates 8 U.S.C. § 1401(a), which guarantees U.S. Citizenship to "a person born in the United States, and subject to the jurisdiction thereof," and therefore is *ultra vires* – also fails to state a claim.  *See* SAC ¶¶ 81-83.  Whether this type of *ultra vires* cause of action exists is questionable.  The decisions suggesting the existence of *ultra vires* claims against federal officials, *see, e.g.*, *Larson v. Domestic & Foreign Com. Corp.,* 337 U.S. 682, 689-90 (1949), predate amendments to the APA that clarified what agency action can and

11

cannot be subject to judicial review, *see Thompson v. Dep't of Hous. & Urb. Dev.*, Civ. A. No. 95-0309, 2006 WL 581260, at *8 (D. Md. Jan. 10, 2006) ("While *Larson* created an exception to sovereign immunity when federal officers acted *ultra vires*, Section 702 of the APA provides a general waiver of sovereign immunity for all unconstitutional acts where injunctive relief is requested.").  Moreover, the Supreme Court has otherwise rejected actions in equity, like *ultra vires* claims, where Congress has provided for a specific remedial scheme as is the case here.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28 (2015).  Nonetheless, some courts have recognized *ultra vires* claims, stating that "[e]ven if a statute does not provide for judicial review, [w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Ancient Coin Collectors Guild v. Customs & Border Prot.*, 801 F. Supp. 2d 383, 405 (D. Md. 2011) (quotation omitted); *see also, e.g.*, *Open Society Justice Initiative v. Trump*, 510 F. Supp. 3d 198, 214-15 (S.D.N.Y. 2021) (allowing *ultra vires* challenge to an Executive Order).

Even when recognized, however, *ultra vires* claims are generally circumscribed.  *Ultra vires* "review is limited to whether the President has violated the Constitution, the statute under which the challenged action was taken, or other statutes, or did not have statutory authority to take a particular action."  *Ancient Coin Collectors*, 801 F. Supp. 2d at 406.  Indeed, the "modern cases make clear" that an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984) (citation omitted).  And more recent cases indicate that such claims are inappropriate against non-officers, such as the United States and its agencies.  *See Taylor Energy Co., LLC v. United States*, Civ. A. No. 20-1720, 2021 WL 1876845, at *3 (E.D. La. May 10, 2021) (finding *Larson* inapplicable against "the United States and its agencies"); *Int'l Fed'n of Pro. & Tech. Eng'rs v. United States*, 934 F. Supp. 2d 816, 821 (D. Md.

2013).  Accordingly, at a minimum, Plaintiffs' claim against federal agencies is improperly brought as an *ultra vires* claim.

### 4.  Plaintiffs' Claims Fail on the Merits

The Government hereby incorporates the arguments made in its Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction (ECF No. 58).  As set forth therein, text, history, and precedent support the conclusion that the Constitution does not grant American citizenship to, *inter alia*, the children of parents who have circumvented (or outright defied) federal immigration laws.  "[E]ach government ha[s] a right to decide for itself who should be admitted or deemed citizens."  *United States v. Wong Kim Ark*, 169 U.S. 649, 661 (1898) (internal quotation marks and citation omitted).  Congress and the President have decided not to extend birthright citizenship to children of parents who do not have lawful status in this country or only have temporary status, just as citizenship is not extended to children of diplomats or occupying enemies.  *See* ECF No. 58 at 5-23.

### E.  The Court Should Dismiss, Stay or Transfer the Case Under the First-Filed Rule

As argued in Defendants' memorandum of law in opposition to Plaintiffs' motion for class certification (ECF No. 59), in the event that the Court is not inclined to grant Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), then to promote efficiency the Court should exercise its discretion to dismiss, stay, or transfer this case pursuant to the first-filed rule.  This would be consistent with how the Ninth Circuit handled the claims of the individual plaintiffs challenging the EO in *Washington v. Trump*, 145 F.4th at 1019.  There the court ruled that "[b]ecause the Individual Plaintiffs are covered by a certified class action in another federal court, we decline to exercise jurisdiction over their claims and dismiss them."  *Id*.  The same facts and logic apply here.

13

The "first-filed" rule is a well-settled legal doctrine, instructing that "where there are two [or more] competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *First City Nat. Bank and Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989) (quotations and citations omitted). "Deference to the first filing embodies considerations of judicial administration and conservation of resources and recognizes that a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 722 (2d Cir. 2010) (citations and internal quotation marks omitted); *see also Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183 (1952) (first-filed rule promotes "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation"); *Ontel Products, Inc. v. Project Strategies Corp.,* 899 F. Supp. 1144, 1150 (S.D.N.Y.1995) (first-filed rule enables courts to prevent "duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue"). The first-filed rule creates a presumption that the first suit should have priority between two similar actions filed in different fora. *Mastercard Int'l Inc. v. Lexcel Solutions*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004); *accord Reliance Ins. Co. v. Six Star, Inc.,* 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001); *Findwhat.com v. Overture Servs.,* No. 02 Civ. 447 (MBM), 2003 WL 402649, at *4-5 (S.D.N.Y. Feb. 21, 2003).

Application of the first-filed rule requires that the first and subsequently filed case(s) have either identical or substantially similar parties and claims. *See Spotless Enters. Inc. v. The Accessory Corp.,* 415 F. Supp. 2d 203, 205–06 (E.D.N.Y. 2006); *Bukhari v. Deloitte & Touche LLP*, No. 12 Civ. 4290 (PAE), 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012) ("the first-filed rule has been

applied to class action suits filed by different plaintiff classes against the same defendant").  Pursuant to the rule, "a district court has broad discretion to dismiss a lawsuit that is duplicative of a prior action."  *See Castillo v. Taco Bell of Am., LLC,* 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) (citation omitted).  In the alternative, courts may opt to transfer a case to the first-filed district or stay the second case pending resolution of the first-filed case.  *See Wyler–Wittenberg v. MetLife Home Loans, Inc .,* 899 F. Supp. 2d 235, 247–250 (E.D.N.Y. 2012); *Thomas v. Apple-Metro, Inc.*, No. 14 Civ. 4120 (VEC), 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015).

Here, the district court in the District of New Hampshire has already certified a provisional nationwide class and enjoined the EO.  *Barbara*, 2025 WL 1904338, at *4, *12.[1]  Each member of the class that Plaintiffs seek to certify is included within the *Barbara* class and the defendants are substantially the same.  *Id.* at *4.  Further, a district judge in the District of Massachusetts declined to modify the scope of its injunction post-*CASA*.  *New Jersey*, No. 1:25-cv-10139, ECF No. 203.  And a district court judge in the District of Maryland issued a class-wide preliminary injunction.  *See CASA,* 2025 WL 2257625, at *1.

Given that multiple courts have enjoined the EO's application to Plaintiffs, at a minimum, the Court should stay this case pending resolution of the other first-filed cases.  *See County of Santa Clara v. Trump,* No. 5:25-cv-981, ECF No. 44 (N.D. Cal. Aug 19, 2025) (staying proceedings pending resolution of nationwide injunctions issued in other cases challenging the Citizenship EO); *Thien Le v. Trump*, No. 8:25-cv-104, ECF No. 24 (C.D. Cal. July 8, 2025) (granting stay pending further proceedings on remand from the Supreme Court in *Trump v. CASA*); *see also Norris v. Phillip Morris*

---

[1]  That a first-filed class action "has not yet reached the class certification stage does not prevent application of the first-filed rule."  *Santana v. Cavalry Portfolio Services, LLC*, No. 19 Civ. 3773 (PAE), 2019 WL 6173672, at *4 (S.D.N.Y. Nov. 19, 2019); *see also Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (6th Cir. 2016) (first-filed rule applies when "there is substantial overlap with the putative class even though the class has not yet been certified").

*Int'l Inc*, No. 3:24-cv-1267 (VAB), 2025 WL 1677808, at *8 (D. Conn. June 13, 2025) (granting

motion to stay under first-filed rule).  Alternatively, the Court should exercise its discretion to dismiss

or transfer this case.  *See Wyler-Wittenberg,* 899 F. Supp. 2d at 247-250 (transferring nationwide

collective and class action under first-filed rule); *Michel v. Petco Animal Supplies Stores*, 404 F. Supp.

3d 685, 689-90 (E.D.N.Y. 2017) (transferring class action under first-filed rule); *see also Crawford

v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979) ("A court may choose not to exercise its jurisdiction when

another court having jurisdiction over the same matter has entertained it and can achieve the same

result.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint.

Dated:  New York, New York
        September 25, 2025


JAY CLAYTON                                  BRETT A. SHUMATE
United States Attorney                       Assistant Attorney General
Southern District of New York                Civil Division


                                             ALEXANDER K. HAAS
By:    */s/ Jeffrey Oestericher*             Branch Director
       JEFFREY OESTERICHER
       Assistant United States Attorney      BRAD P. ROSENBERG
       Tel.:  (212) 637-2695                 Special Counsel
       Email:  jeffrey.oestericher@usdoj.gov
                                             U.S. Department of Justice
                                             Civil Division
                                             1100 L Street N.W.
                                             Washington, DC 20005

                                             *Counsel for Defendants*

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules.  As measured by the word processing system used to prepare it, this memorandum contains 5065 words.