# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

New York Immigration Coalition, *et al.*,

　　　　　*Plaintiffs*,

　　　　　v.

DONALD J. TRUMP, President of the United States, in his official capacity, *et al.*,

　　　　　*Defendants*.

CIVIL ACTION NO:

**25-cv-01309-MMG**

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

ARGUMENT.......................................................................................................3

I.   **Plaintiffs Have a Direct Cause of Action Against Defendants for Abridgment of Their Constitutional Rights Under the Citizenship Clause and the Equal Protection Guarantee.**.................................3

   a.   Plaintiffs Have a Direct Cause of Action Under the Citizenship Clause. ...4

   b.   Plaintiffs Have a Direct Cause of Action Under the Equal Protection Guarantee of the Fifth Amendment. .................................................6

II.   **Plaintiffs Have Pled Viable Statutory Claims.**............................................8

   a.   Plaintiffs' Cause of Action Under the APA Is Properly Alleged and Ripe for Judicial Review. ...........................................................9

   b.   Plaintiffs Are Not Compelled to Seek Redress Solely Under § 1503 of the INA.................................................................................12

   c.   Plaintiffs Do Not Allege an *Ultra Vires* Claim.........................................14

III.   **Plaintiffs' Claims Are Meritorious.**.........................................................15

   a.   Plaintiffs' Citizenship Clause Claim Is Meritorious.................................15

   b.   Plaintiffs' Equal Protection Guarantee Claim Is Meritorious....................16

   c.   Plaintiffs' Statutory Claims Are Meritorious.............................................17

IV.   **Organizational Plaintiffs Have Standing.**................................................18

V.   **President Trump Is a Proper Defendant for the Constitutional Claims Asserted Against Him.**....................................................................23

VI.   **This Court Need Not Dismiss, Transfer, or Stay This Action.** ............24

CONCLUSION.................................................................................................27

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Abigail All. for Better Access to Dev. Drugs v. Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006)..............................................................................................................21

*Abuhajeb v. Pompeo*, 531 F.Supp.3d 447 (D. Mass. 2021)....................................13

*African Communities Together v. Lyons*, No. 25-cv-6366 (PKC), 2025 WL 2633396 (S.D.N.Y. Sept. 12, 2025). .......................................................................21

*Afroyim v. Rusk*, 387 U.S. 253 (1967). ...................................................... 15, 16, 17

*Alsaidi v. United States Dep't of State*, 292 F.Supp.3d 320 (D.D.C. 2018)............13

*Am. Council of Learned Societies v. McDonald*,  Nos. 25 Civ. 3657 (CM) (BCM), 25 Civ. 3923 (CM) (BCM), 2025 WL 2097738 (S.D.N.Y. July 25, 2025). ........15

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015). .......................4, 12

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). .....................................................5

*Barbara v. Trump*, No. 1:25-cv-244-JL-AJ (Sept. 5, 2025)....................................26

*Barbara v. Trump*, No. 25-cv-244-JL-AJ, 2025 WL 1904338 (D.N.H., July 10, 2025). ........................................................................................................................5

*Bell v. Hood*, 327 U.S. 678 (1946)............................................................................4

*Bolling v. Sharpe*, 347 U.S. 497 (1954).................................................................6, 7

*Bronx Household of Faith v. Bd. of Educ. of City of New York*, 492 F.3d 89 (2d Cir. 2007). .......................................................................................................................10

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409 (S.D.N.Y. 2012). .......................................................................................................................19

*Cambranis v. Blinken*, 994 F.3d 457 (5th Cir. 2021). .............................................13

*CASA v. Trump*, No. 8:25-cv-00201-DLB (D. Md. Oct. 3, 2025)..........................26

*Casa v. Trump*, No. CV DLB-25-201, 2025 WL 1952521 (D. Md. July 16, 2025). ................................................................................................................................24

*CASA, Inc. v. Trump*, 763 F.Supp.3d 723 (D. Md. 2025)............................... 4, 6, 12

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018)..............................10

*Clinton v. Jones*, 520 U.S. 681 (1997)....................................................................23

*Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599 (2020).................................25

*DeVillier v. Texas*, 601 U.S. 285 (2024)...................................................................8

*Doe 1 v. Trump*, 275 F.Supp.3d 167 (D.D.C. 2017)...............................................11

*Doe v. Trump,* 766 F.Supp.3d 266 (D. Mass. 2025)................................... 5, 12, 18

*Doe v. Trump*, No. 25-1169, 2025 WL 2814730 (1st Cir. Oct. 3, 2025). ... 4, 12, 16, 17

*First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989). ........25

*Food and Drug Admin. v. All. for Hippocratic Medic.*, 602 U.S. 367 (2024).........22

*Franklin v. Massachusetts*, 505 U.S. 788 (1992). ....................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010). ..............13

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).........................................22

*Jones v. United States Postal Serv.*, 488 F.Supp.3d 103 (S.D.N.Y. 2020). .............7

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952)...........25

*Knight First Amend. Inst. at Columbia Univ. v. Trump*, 302 F.Supp.3d 541 (S.D.N.Y. 2018)...........................................................................................23

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936). ........................................................25

*League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F.Supp.3d 135 (D.D.C. 2025). ..........................................................................................9

*Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99 (2d Cir. 1999).............14

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)........................................6

*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976). ......................17

*McCray v. Biden*, 574 F.Supp.3d 1 (D.D.C. 2021)..................................................9

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F.Supp.3d 149 (D.N.H. 2025). ......18

*Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F.Supp.3d 20 (D.D.C. 2017). .21

*New Hampshire Indonesia Cmty. Support. v. Trump*, 765 F.Supp.3d 102 (D.N.H. 2025). ..................................................................................................5, 18

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011). ........................................................21

*NTEU v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974). ...................................................23

*Orr v. Trump*, 778 F.Supp.3d 394 (D. Mass. 2025). ...............................................7

*Oyama v. California*, 332 U.S. 633 (1948)............................................................17

*Perez v. Abbott*, 253 F.Supp.3d 864 (W.D. Tex. 2017)..........................................20

*Rescue Army v. Mun. Ct. of City of Los Angeles*, 331 U.S. 549 (1947). ................10

Rusk v. Corts, 369 U.S. 367 (1962)........................................................................13

*Sexual Minorities Uganda v. Lively*, 960 F. Supp. 302 (D. Mass. 2013)...............20

*Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008)...............................................10

*State of New Jersey v. Trump*, No. 1:25-cv-10139-LTS (D. Mass. Sept. 22, 2025). ..................................................................................................................26

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)..........................................13

*Trop v. Dulles*, 356 U.S. 86 (1958). ..........................................................................16
*Trump v. Barbara*, No. 25-365. ...............................................................................26
*Trump v. CASA*, 606 U.S. 831 (2025). .....................................................................25
*Trump v. Washington*, No. 25-364. ...........................................................................26
*United States v. Windsor*, 570 U.S. 744 (2013). ...........................................................7
*Washington v. Trump*, 145 F.4th 1013 (2025). .................................................. 15, 16
*Yale New Haven Hosp. v. Becerra*, 56 F.4th 9 (2d Cir. 2022). ..............................15

## Statutes

5 U.S.C. § 702. ........................................................................................................9
5 U.S.C. § 706(2)(B). ...................................................................................... 8, 11, 18
8 U.S.C. § 1401(a). ......................................................................................... 9, 12, 17
8 U.S.C. § 1503(a). ......................................................................................... 8, 13, 14
8 U.S.C. § 1503(b) ....................................................................................................14

## Other Authorities

Jennifer Van Hook et al., *Repealing Birthright Citizenship Would Significantly Increase the Size of the U.S. Unauthorized Population*, Migration Policy Institute (May 2025). .........................................................................................................22

## Rules

Fed. R. Civ. P. 12(b)(1). ............................................................................................3
Fed. R. Civ. P. 12(b)(6). .......................................................................................3, 14

# INTRODUCTION

Defendants do not dispute that individual Plaintiffs, J.V., D.F., and M.P., have standing to challenge the constitutionality and statutory infirmity of Executive Order 14160, purporting to ban birthright citizenship. Nor could they. Individual Plaintiffs are mothers whose immigration statuses are targeted by the birthright citizenship-banning Executive Order and whose U.S.-born children would be stripped of citizenship, and its attendant privileges and immunities, were the unlawful Executive Order in effect. Nor do Defendants dispute that organizational Plaintiff Rural & Migrant Ministry has associational standing.

Although Plaintiffs have standing to litigate this case, Defendants urge this Court to dismiss the case because they claim a) the Constitution affords no direct cause of action; b) the statutory claims are either not ripe for adjudication, must be channeled exclusively through a nationality proceeding, or fail under a non-existent *ultra vires* claim; c) the claims lack merit; d) organizational Plaintiff New York Immigration Coalition lacks standing; e) the President is not a proper defendant; and f) the case should be stayed, dismissed, or transferred.

Defendants are wrong. None of these contentions warrant dismissal.

*First*, Plaintiffs have equitable causes of action against Defendants for unconstitutional violations that confer subject matter jurisdiction on this Court. Courts have long had equitable powers to enjoin unconstitutional action by federal

officials. This Court unquestionably has jurisdiction to enjoin Defendants' unconstitutional Executive Order.

*Second*, the birthright citizenship-banning Executive Order is a final agency action ripe for judicial review under the Administrative Procedure Act ("APA") because it unambiguously directs Defendant agency officers to take a specific, unconstitutional course of action, offering them no discretion to do otherwise. Further, Plaintiffs do not seek a declaration that their children are nationals of the United States and as such need not pursue a nationality proceeding to vindicate their constitutional right. And crucially, nowhere in Plaintiffs' Second Amended Complaint do they allege that a violation of the APA or INA is *ultra vires*. That non-existent claim cannot constitute grounds for dismissal.

*Third*, Plaintiffs' claims for relief are meritorious because they are grounded on well-established law. Birthright citizenship is enshrined in the Citizenship Clause of the Fourteenth Amendment to the U.S. Constitution, and a century-old Supreme Court precedent—*Wong Kim Ark*—makes abundantly clear that birthright citizenship is guaranteed to all U.S.-born children of immigrants regardless of parental status. Another longstanding Supreme Court decision—*Oyama v. California*—establishes that denying a right of citizenship because of parental alienage or national origin is at odds with the equal protection guarantee. Plaintiffs' statutory claims mirror their Citizenship Clause claim and are also meritorious.

*Fourth*, organizational Plaintiff New York Immigration Coalition ("NYIC") has associational standing to advance this case. About eighteen individual members of NYIC's constituent organizations are injured by the birthright citizenship ban and at least one of NYIC's member organizations has standing in its own right.

*Fifth*, the President is not exempt from the longstanding tradition of suit against the Executive for unconstitutional conduct.

*Sixth*, this Court need not stay, dismiss, or transfer this action because Plaintiffs' unadjudicated equal protection claim distinguishes this case from other pending cases with rulings construing the birthright citizenship ban.

Lastly, Plaintiffs' Second Amended Complaint pleads facts sufficient to demonstrate each claim for relief. Defendants point to no specific factual deficiencies. Because this Court has subject matter jurisdiction to hear Plaintiffs' constitutional and statutory claims and those claims are factually well supported, Plaintiffs ask that the Court deny Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## <u>ARGUMENT</u>

I. **Plaintiffs Have a Direct Cause of Action Against Defendants for Abridgment of Their Constitutional Rights Under the Citizenship Clause and the Equal Protection Guarantee.**

Defendants contend that Plaintiffs have no direct cause of action against them for deprivations of rights under the Citizenship Clause of the Fourteenth Amendment

3

and the equal protection guarantee of the Fifth Amendment. *See* Defs.' Br. Supp. Mot. Dismiss. 10, ECF No. 70. Defendants are mistaken. Quintessentially, Plaintiffs have equitable causes of action against Defendants for unconstitutional violations.

   a. <u>Plaintiffs Have a Direct Cause of Action Under the Citizenship Clause.</u>

The "ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The "Supreme Court consistently has 'sustain[ed] the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution.'" *CASA, Inc. v. Trump*, 763 F.Supp.3d 723, 730 (D. Md. 2025) (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)) (alteration in original). As the First Circuit recently ruled, "under *Armstrong*," Plaintiffs "have [an] equitable cause[] of action to challenge the [birthright citizenship-banning] EO, its enforcement, and its implementation for violating . . . the Citizenship Clause" of the Fourteenth Amendment. *Doe v. Trump*, No. 25-1169, 2025 WL 2814730, at *4 (1st Cir. Oct. 3, 2025). Other courts have also examined Defendants' contention that Plaintiffs do not have a cause of action against them for unconstitutional conduct violative of the Citizenship Clause and found the argument wanting. *See, e.g.*, *CASA*, 763 F.Supp.3d at 731 (finding that plaintiffs have a direct cause of action under the Citizenship Clause); *Doe v. Trump,* 766 F.Supp.3d 266,

4

277 (D. Mass. 2025) (finding defendants' contention that "no plaintiff has a valid cause of action under the Citizenship Clause . . . meritless."); *Barbara v. Trump*, No. 25-cv-244-JL-AJ, 2025 WL 1904338, at *13 (D.N.H., July 10, 2025) (deciding, without questioning plaintiffs' cause of action, "that the Executive Order likely 'contradicts the text of the Fourteenth Amendment and the century-old untouched precedent that interprets it.'" (quoting *New Hampshire Indonesia Cmty. Support. v. Trump*, 765 F.Supp.3d 102, 109 (D.N.H. 2025)).

Here, as in *CASA*, *Doe*, and *Barbara*, Plaintiffs' Second Amended Complaint pleads factual allegations sufficient to demonstrate that the birthright citizenship ban violates the Citizenship Clause.[1] Individual Plaintiffs are mothers whose immigration statuses are targeted by the birthright citizenship ban and whose U.S.-born children would be subjected to the unlawful ban were it in effect.[2] *See* Pls.' Second Am. Compl. ("SAC") ¶¶ 29–35, ECF No. 60. About eighteen individual members of organizational Plaintiff NYIC's constituent organizations

---

[1] To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, Plaintiffs need only plead factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs' factual allegations easily scale that requirement.

[2] At the time of filing the Second Amended Complaint, SAC, ECF No. 60, individual Plaintiff M.P. was an expectant mother. She gave birth on September 16, 2025. *See* Updated M.P. Decl. Ex. A, at ¶ 4. For a statement of facts, Plaintiffs respectfully refer the Court to previously filed memoranda of law, Pls.' Mem. L. Supp. Mot. Prelim. Inj.7–13, ECF No. 20 and Pls.' Suppl. Br. Supp. Mot. Prelim. Inj. 3–5, ECF No. 45.

and at least one member of organizational Plaintiff RMM also are injured by the birthright citizenship ban. *Id.* at ¶¶ 36–47.

The birthright citizenship Executive Order ("EO") "flouts the plain language of the Fourteenth Amendment to the United States Constitution, conflicts with binding Supreme Court precedent, and runs counter to our nation's 250-year history of citizenship by birth." *CASA*, 763 F.Supp.3d at 743. Because Plaintiffs plead facts sufficient to defeat Defendants' Rule 12(b)(6) motion, and this Court has subject matter jurisdiction pursuant to Rule 12(b)(1) over Plaintiffs' first cause of action (Claim I) for violation of the Citizenship Clause of the Fourteenth Amendment, the Court should deny Defendants' Motion to Dismiss.[3]

     b.  <u>Plaintiffs Have a Direct Cause of Action Under the Equal Protection Guarantee of the Fifth Amendment.</u>

Defendants also are not inoculated from suit for discriminatory conduct in violation of the equal protection guarantee. "As long ago as 1896, [the Supreme] Court declared the principle 'that the constitution of the United States, in its present form, forbids, so far as the civil and political rights are concerned, discrimination by the *general government*, or by the states, against any citizen because of his race.'" *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (internal citation omitted) (emphasis

---

[3] Where, as here, the Court has equitable powers to adjudicate Plaintiffs' constitutional claims, Rule 12(b)(1) dismissal is improper. That rule permits dismissal "when the district court lacks the statutory or constitutional power to adjudicate" a claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

added). In *Bolling*, the Court ruled, for the first time, that the guarantee of equal protection "impose[d]" no "lesser duty on the Federal Government" than on state governments. *Id.* at 500. The Court clarified that the equal protection guarantee of the Fourteenth Amendment was applicable to the federal government through the Due Process Clause of the Fifth Amendment. *Id.*

Since *Bolling*, the Supreme Court has consistently reaffirmed that "[t]he liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013). Consequently, courts routinely hold the federal government accountable in equity for infringement on the equal protection guarantee of the Fifth Amendment. *See, e.g.*, *Orr v. Trump*, 778 F.Supp.3d 394, 414 (D. Mass. 2025) (finding "plaintiffs are likely to succeed on the merits of their Fifth Amendment equal protection claim" against the federal government for a discriminatory sex-based passport procurement policy); *Jones v. United States Postal Serv.*, 488 F.Supp.3d 103, 134 (S.D.N.Y. 2020) (concluding "Plaintiffs have demonstrated a substantial likelihood of success on their Fifth Amendment equal protection claim" against the U.S. Postal Service). As *Bolling* and

7

its progeny make clear, Defendants' specious contention that Plaintiffs have no direct cause of action for their equal protection claim lacks merit.[4]

Plaintiffs' Second Amended Complaint pleads factual allegations sufficient to demonstrate that the birthright citizenship ban violates the equal protection guarantee of the Fifth Amendment, *see* SAC ¶¶ 48–60, ECF No. 60, and as this Court has subject matter jurisdiction to hear Plaintiffs' second cause of action (Claim II) for violation of the Equal Protection Clause, the Court should deny Defendants' Motion to Dismiss.

## II. **Plaintiffs Have Pled Viable Statutory Claims.**

Defendants make three contentions about Plaintiffs' statutory claims. One, they assert that Plaintiffs' fourth cause of action (Claim IV) alleging a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(B), is not ripe for judicial review because the birthright citizenship ban is not a final agency action. Two, they say Plaintiffs' sole recourse for a violation is pursuant to § 1503(a) of the Immigration and Naturalization Act ("INA")—8 U.S.C. § 1503(a). Three, they purport to argue Plaintiffs' third cause of action (Claim III) alleging a violation of

---

[4] Defendants' reliance on *DeVillier v. Texas*, 601 U.S. 285 (2024), is unavailing. *DeVillier* was an action for monetary compensation under the Takings Clause of the Fifth Amendment. *Id.* at 287. There, the Supreme Court recognized that the Takings Clause provides a "substantive rule of decision for [an] equitable claim[]" but may not establish a cause of action for damages. *Id.* at 292. Here, Plaintiffs do not assert a claim for damages. Pertinently, if the Fifth Amendment affords a substantive right for equitable relief for a claim under the Takings Clause, *a fortiori*, it permits a cause of action for a claim for equitable relief under its equal protection guarantee. Besides, as previously set forth, *Bolling* and its progeny make that abundantly clear.

the INA—8 U.S.C. § 1401(a)—raises an *ultra vires* claim. Defs.' Br. 10–13, ECF No. 70. Each contention is unfounded. Plaintiffs take them in turn.

     a.  <u>Plaintiffs' Cause of Action Under the APA Is Properly Alleged and Ripe for Judicial Review.</u>

Defendants assert that Plaintiffs fail to allege a cause of action under the APA because the birthright citizenship ban is not a final agency action and therefore unripe for judicial review. Defs.' Br. 8, ECF No. 70. To the contrary, the EO is ripe for review because it unambiguously directs Defendant agency officers to take a specific, unconstitutional course of action, offering them no discretion to do otherwise.

To begin, § 702 of the APA expressly authorizes "a person suffering legal wrong because of agency action . . . [to seek] judicial relief thereof." 5 U.S.C. § 702. This provision unequivocally affords Plaintiffs a direct right of action to challenge agency action infringing on their legal rights. Further, as the APA permits, when the President orders unlawful action, as was done here, "'the proper course is to seek to enjoin a member of the executive branch from carrying out the executive order at issue.'" *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F.Supp.3d 135, 173 (D.D.C. 2025) (quoting *McCray v. Biden*, 574 F.Supp.3d 1, 11 (D.D.C. 2021)).

Here, Defendants' assertion that the President is not an agency subject to the APA is irrelevant to determining the validity of Plaintiffs' APA claim. Plaintiffs

explicitly exclude Defendant Trump from Claim IV. Pls.' SAC ¶¶ 84–86, ECF No. 60. Instead, Claim IV is brought against Defendants Noem, Rubio, Bondi, Oz, and Bisignano in their official capacities as executive officers of Defendant agencies. These agencies and their officers can be enjoined under the APA from enforcing an executive order compelling unlawful action. *Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (Stevens, J., concurring)).

Defendants' ripeness argument is also flawed. When "constitutional issues are presented 'in clean-cut and concrete form, unclouded by any serious problem of construction'" they are ripe for review. *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 492 F.3d 89, 114 (2d Cir. 2007) (quoting *Rescue Army v. Mun. Ct. of City of Los Angeles*, 331 U.S. 549, 584 (1947)). "Whether a dispute is ripe for judicial decision turns on two factors: '(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 388 (2d Cir. 2018) (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008)).

Here, the EO meets the two-part ripeness test. First, it unambiguously orders agencies to refrain from issuing citizenship documents to categories of people born on U.S. soil. These categories are described in the EO with particularity. The President, even years prior to his assumption of office in January 2025, consistently made clear statements about his intention to end birthright citizenship. *See* SAC

¶¶ 48–54, ECF No. 60. No course of agency action taken to comply with the EO would leave Plaintiffs' legal rights intact. Plaintiffs present to the Court the purely legal question of whether the action agencies are directed to take in the EO is unlawful and may be set aside as violative of 5 U.S.C. § 706(2)(B).

Second, as Plaintiffs argued in their Memorandum of Law and Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Injunction, they will be irreparably harmed by the implementation and enforcement of the birthright citizenship ban. *See* Pls.' Mem. L. Supp. Mot. Prelim. Inj. 31–33, ECF No. 20; Pls.' Suppl. Br. Supp. Mot. Prelim. Inj. 9–12, ECF No. 45. The hardship to Plaintiffs of withholding court intervention is acute. The birthright citizenship ban is thus ripe for judicial intervention.[5] Because this Court has subject matter jurisdiction under Rule 12(b)(1) to hear Plaintiffs' APA claim, it should deny Defendants' Motion to Dismiss.

---

[5] Defendant agencies' implementation memoranda regarding the birthright citizenship ban provide an independent basis for finding that the EO is a final agency action reviewable under the APA. For example, on July 25, 2025, the U.S. Citizenship and Immigration Services (USCIS) under Defendant Department of Homeland Security (DHS) issued an implementation plan to "prepar[e] . . . to implement the E.O. in the event that it is permitted to go into effect." U.S. Citizenship & Immigr. Servs., Implementation Plan (July 25, 2025). The USCIS implementation plan unambiguously demonstrates DHS's intent to proceed with implementing the unlawful EO. No language in the implementation plan indicates that the agencies are still determining whether to comply with the Executive Order or raising questions as to its constitutionality. *See Doe 1 v. Trump*, 275 F.Supp.3d 167, 194 (D.D.C. 2017) (vacated on other grounds) (explaining that "the Court must and shall assume that the directives of the Presidential Memorandum will be faithfully executed" by the relevant agencies (internal citations omitted)). The implementation plans constitute final agency action and render this cause of action ripe for judicial review.

b.  Plaintiffs Are Not Compelled to Seek Redress Solely Under § 1503 of the INA.

Plaintiffs also have a cause of action under 8 U.S.C. § 1401(a). Under *Armstrong*, 575 U.S. at 327, Plaintiffs have an "equitable cause[] of action to challenge the EO . . . and its implementation for violating § 1401(a)." *Doe*, 2025 WL 2814730 at *4. No law restricts Plaintiffs' ability to bring a claim under § 1401(a).

Defendants' INA argument rests on the notion that § 1503(a) provides an exclusive mechanism for Plaintiffs to challenge infringement on their right to citizenship. Defs.' Br. 11, ECF No. 70. This interpretation is misguided, as § 1503(a) does not bar judicial action to vindicate a constitutionally guaranteed right, and the plain text of § 1503(a) does not contemplate the exclusion of other remedies.

*First*, § 1503(a) does not apply here. "The plaintiffs are not seeking a judgment declaring their children to be nationals of the United States after denial of a particular right or privilege." *CASA*, 763 F.Supp.3d at 731 (internal quotations and citations omitted). "The text of the INA does not indicate that § 1503(a) is the exclusive remedy for challenging the denial of a right to citizenship under the Fourteenth Amendment." *Id.* Other courts have reached the same result. *See, e.g.*, *Doe v. Trump*, 766 F.Supp.3d at 277 ("[D]efendants [cannot] short-circuit this lawsuit by pointing to a narrow provision of the INA providing an avenue for a 'national of the United States' to challenge discrete denials of rights or privileges. . . .

12

That statute does not facially create an exclusive remedy for such claims . . . ." (quoting 8 U.S.C. § 1503(a))).[6]

*Second*, the plain text of § 1503(a) does not preclude other remedies for disputes regarding individual determinations of citizenship. "Provisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (alteration in original) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)). Defendants have pointed to no evidence that Congress intended § 1503(a) to serve as the exclusive remedy for these matters.

Moreover, the Supreme Court found in *Rusk v. Cort* that §§ 1503(b) and 1503(c), analogous subsections of the INA, are not the exclusive mechanisms for asserting one's citizenship when abroad. 369 U.S. 367, 375 (1962). Both §§ 1503(a) and 1503(b) state, "If any person . . . claims a right or privilege as a national of the

---

[6] The cases that Defendants cite for support cover discrete issues of denying one's passport, or some other "right or privilege" based on existing citizenship laws. *See, e.g.*, *Cambranis v. Blinken*, 994 F.3d 457 (5th Cir. 2021) (deciding whether the plaintiff's APA claims for denial of a passport were precluded by 1503(a)); *Abuhajeb v. Pompeo*, 531 F.Supp.3d 447, 455 (D. Mass. 2021) (deciding that 1503(a) provided an adequate an exclusive remedy for two siblings denied passports under the Child Citizenship Act); *Alsaidi v. United States Dep't of State*, 292 F.Supp.3d 320 (D.D.C. 2018) (deciding that Plaintiff must bring a claim under 1503(a) for denial of a passport renewal under the well-established exception to the Citizenship Clause for children of diplomats).

13

United States and is denied such right by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person *may . . .*" 8 U.S.C. §§ 1503(a), (b) (emphasis added). As the opening language of § 1503(a) almost exactly mirrors that of § 1503(b), it should receive similar interpretive treatment.

Because § 1503(a) does not provide an exclusive remedy for relief, this Court should deny Defendants' Motion to Dismiss.

    c.  <u>Plaintiffs Do Not Allege an *Ultra Vires* Claim.</u>

Defendants fail to identify anything in Plaintiffs' complaint that asserts an *ultra vires* claim. Defs.' Br. 11–13, ECF No. 70. Their contention that the non-existent claim should be dismissed is confounding. Under Fed. R. Civ. P. 12(b)(6), this Court is limited to considering allegations and facts set out in the complaint in considering Defendants' motion to dismiss. *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (clarifying that "a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken'"). Plaintiffs allege four causes of action against Defendants in their complaint, none of which are claims that Defendants have acted *ultra vires*. SAC ¶¶ 71 – 86, ECF No. 60. In fact, the term *ultra vires* is nowhere mentioned in Plaintiffs' complaint. *See generally* SAC, ECF

14

No. 60. Because an *ultra vires* cause of action is not before this court, Defendants'

12(b)(6) motion on this ground must fail.[7]

## III. **Plaintiffs' Claims Are Meritorious.**

Defendants' assertion that Plaintiffs' claims lack merit is erroneous. *See* Defs.'

Br. 12, ECF No. 70. Each of Plaintiffs' claims is grounded in well-established law.

### a.  Plaintiffs' Citizenship Clause Claim Is Meritorious.

As set forth in Plaintiffs' Memorandum of Law and Supplemental Brief in

Support of Plaintiffs' Motion for a Preliminary Injunction, the birthright citizenship

ban is unconstitutional. *See* Pls.' Mem. L., ECF 20; Pls.' Suppl. Br., ECF 45. It defies

the "plain text and ordinary meaning of the Fourteenth Amendment, controlling

precedent interpreting the Citizenship Clause, drafting history, and most post-

ratification public understanding . . . of the Citizenship Clause." *Washington v.

Trump*, 145 F.4th 1013, 1035 (2025).

"Citizenship is no light trifle to be jeopardized any moment [Defendants]

decide[] to do so." *Afroyim v. Rusk*, 387 U.S. 253, 267–68 (1967). Defendants' novel

---

[7] To the extent that Defendants' argument can be understood to claim that Claim III alleging a violation of 8 U.S.C. § 1401(a) is impliedly an *ultra vires* claim, as argued *supra*, section I(a), the Citizenship Clause confers birthright citizenship. Nothing in § 1401(a), which mirrors the Citizenship Clause, grants Defendants any power to infringe the Constitution. An *ultra vires* claim here, therefore, would simply be misplaced. *See, e.g.*, *Am. Council of Learned Societies v. McDonald*, Nos. 25 Civ. 3657 (CM) (BCM), 25 Civ. 3923 (CM) (BCM), 2025 WL 2097738, at *33 (S.D.N.Y. July 25, 2025) ("The [executive] must 'plainly act[] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" (alteration in original) (quoting *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 26-27 (2d Cir. 2022))). *See also* section III(c), *infra*, arguing that Plaintiffs' § 1401(a) claim is meritorious.

interpretation of the Citizenship Clause's phrase—"subject to the jurisdiction thereof"—is unconvincing. Defs.' Br. 12, ECF No. 70 (citing Defs.' Mem. L. Opp. Pls.' Mot. Prelim. Inj. 5–23, ECF No. 58). After an exhaustive review of Defendants' strained interpretation, the First Circuit concluded "[w]hen the smoke clears . . . any denial of citizenship on the grounds set forth in the EO would, in light of *Wong Kim Ark*, contravene the Citizenship Clause." *Doe*, 2025 WL 2814730, at *31–32. Because "the Supreme Court has repeatedly recognized that the children of undocumented immigrants [or those with temporary immigration status like the Plaintiffs] are citizens if born within the territory of the United States," Plaintiffs' Citizenship Clause claim passes constitutional muster. *Washington*, 145 F.4th at 1034.

> b.  <u>Plaintiffs' Equal Protection Guarantee Claim Is Meritorious.</u>

Plaintiffs' equal protection claim, applicable to Defendants under the Fifth Amendment, is equally meritorious for the reasons presented in previous filings. Pls.' Mem. L., ECF No. 20 and Plts.' Suppl. Br., ECF No. 45. "Once acquired, this Fourteenth Amendment citizenship [can]not . . . be shifted, canceled, or diluted at the will of the Federal Government." *Afroyim*, 387 U.S. at 262. And "[w]hen [, as here] the Government acts to take away the *fundamental right of citizenship*, the safeguards of the Constitution should be examined with special diligence." *Trop v. Dulles*, 356 U.S. 86, 103 (1958) (emphasis added). Defendants' birthright

citizenship EO "impermissibly interferes with the exercise of a fundamental right" and thus is subject to strict judicial scrutiny—an exacting standard that Defendants cannot meet. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).

The EO not only burdens a fundamental right—citizenship by birth—but also makes arbitrary distinctions on account of parental alienage or national origin, violating the equal protection guarantee. *See Oyama v. California*, 332 U.S. 633, 646 (1948) ("Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality.") (internal citation omitted). The Fourteenth Amendment protects every citizen against "forcible destruction of his citizenship, whatever his creed, color . . . race[,]" parental alienage, or national origin. *Afroyim*, 387 U.S. at 268. Because Defendants' birthright citizenship ban infringes the fundamental right to citizenship guaranteed by the Citizenship Clause and discriminates on account of parental alienage and national origin, Plaintiffs' equal protection claim stands on solid ground.

c.  <u>Plaintiffs' Statutory Claims Are Meritorious.</u>

Plaintiffs' statutory claims are also well grounded.

*First*, under the INA, 8 U.S.C. § 1401(a), the U.S.-born children described in the EO "are entitled to birthright citizenship." *Doe*, 2025 WL 2814730, at *15; *see also New Hampshire Indonesian Cmty. Support, et al. v. Trump*, No. 25-1348, 2025

17

WL 2814705, at *2 (1st Cir. 2025) (affirming plaintiffs' likelihood of success on their § 1401 claim). The plain text of § 1401(a) borrows from the Citizenship Clause and is coterminous with the Clause. Section 1401(a) "supports a related but distinct claim upon which the plaintiffs are likely to succeed" on their claim that the EO is unlawful. *Doe*, 766 F.Supp.3d at 283. Like the *Doe* plaintiffs, because Plaintiffs' § 1401(a) claim is likely to succeed on the merits, it stands on firm footing.

*Second*, under the APA, 5 U.S.C. § 706(2)(B), an agency action that is contrary to a constitutional right must be set aside. A § 706(2)(B) violation is analytically similar to the relevant constitutional provision. *See, e.g., Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F.Supp.3d 149, 197 (D.N.H. 2025) ("An analysis of whether agency action violates the APA because it is contrary to constitutional right mirrors the analysis of whether the agency action violates the relevant constitutional provision.") (citations omitted). Because it is firmly established that the birthright citizenship ban contravenes the Citizenship Clause, it follows that it also violates § 706(2)(B). Accordingly, this Court should deny Defendants' Motion to Dismiss.

IV. **Organizational Plaintiffs Have Standing.**

Defendants here do not challenge the standing of individual Plaintiffs J.V., D.F., or M.P. Because the individual Plaintiffs have standing, this case will proceed. Nor do Defendants dispute organizational Plaintiff RMM's associational standing.

Defs.' Br. 7, ECF No. 70. Instead, they claim that RMM has not shown organizational standing. *Id.* at 9. As Defendants agree, there are two ways for an organization to demonstrate standing—associational standing to sue on behalf of its members *or* organizational standing to seek relief for injury to itself. *Id.* at 6. Because RMM need not show organizational standing, like the individual Plaintiffs, it too can prosecute this case.

This leaves organizational Plaintiff NYIC. Defendants' contention that it lacks standing is incorrect. Plaintiffs' Second Amended Complaint pleads facts sufficient to demonstrate that organizational Plaintiff NYIC has associational standing. SAC ¶¶ 36–42, ECF No. 60. Also, as Plaintiffs previously argued, *see* Plts.' Mem. L. 18–20, ECF No. 20; Plts.' Suppl. Br. 4–5, ECF No. 45, Plaintiff NYIC meets the test for associational standing. Defendants' primary objection to NYIC's standing is that its members are themselves organizations. That is an insufficient reason to deny NYIC associational standing.

Courts have routinely conferred associational standing on entities that do not necessarily have individuals as members. This Court, for example, found that the Brooklyn Center for Independence of the Disabled had "sufficient *indicia* of membership" as a "'services provider[] managed and directed by persons with disabilities for the purpose of serving persons with disabilities.'" *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 417 (S.D.N.Y. 2012)

19

(emphasis added); *see also* Pls.' Reply Br. Supp. Mot. Prelim. Inj. 11-12 ECF No. 62. Other courts have conferred associational standing on entities comprised of constituent membership organizations that have individual members who have been directly impacted by a challenged action. *See, e.g.*, *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 302, 326 (D. Mass. 2013) (granting associational standing to an "umbrella organization" comprising constituent organizations whose individual members had suffered harm); *Perez v. Abbott*, 253 F.Supp.3d 864, 930 n.82, 934 (W.D. Tex. 2017) (finding associational standing for a task force "based on the individual standing of members of its constituent organizations").

Here, Plaintiff NYIC is composed of constituent member organizations whose individual members are expectant couples who will be harmed if the EO takes effect. Decl. of Pl. New York Imm. Coal. ¶ 9, ECF No. 22. NYIC and its members "have served more than twenty expectant parents whose statuses are targeted by the birthright citizenship ban" and who will suffer harm as a result. *Id.* At least two of NYIC's constituent member organizations "have members who are expectant mothers and fathers without permanent immigration status," who are thus harmed by the ban. *Id.*

Further, at least one of NYIC's member organizations has standing in its own right to challenge the EO. An organization has standing to sue in its own right if it can show "(i) an imminent 'injury in fact' to itself as an organization (rather than to

20

its members) that is 'distinct and palpable'; (ii) that its injury is 'fairly traceable' to enforcement of the [challenged conduct]; and (iii) that a favorable decision would redress its injuries." *African Communities Together v. Lyons*, No. 25-cv-6366 (PKC), 2025 WL 2633396, at *8 (S.D.N.Y. Sept. 12, 2025) (indirectly quoting *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)). For an "injury in fact," there need only be "a perceptible impairment of an organization's activities . . . through some perceptible opportunity cost expended by the plaintiff." *Id.* at *8 (internal citations and quotation marks omitted). The Second Circuit has held that "even 'scant evidence'" that an organization has "expended resources to assist its members" impacted by a challenged policy, even if "only a few . . . [members] are counseled by [the organization] in a year," demonstrates a perceptible opportunity cost. *Id.* (citing *Nnebe v. Daus*, 644 F.3d at 156–57); *see also Abigail All. for Better Access to Dev. Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (rejecting the argument that reallocating resources from one part of an organization's mission to another is not harm); *Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F.Supp.3d 20, 28 (D.D.C. 2017) (same).

In their Second Amended Complaint, Plaintiffs explicitly named Afghans for a Better Tomorrow (AFBT) as the NYIC member organization that has itself suffered an injury in fact due to the birthright citizenship EO. SAC ¶ 39, ECF No. 60; AFBT Decl. ¶ 13, ECF No. 45-5. After the unlawful EO was passed, for example,

AFBT expended some of its finite resources to help its impacted members navigate the meaning of the EO and understand their rights. *Id.* AFBT continues to counsel members on an ad-hoc basis as they reach out with concerns, by phone and at in-person events. *Id.* At least twelve of AFBT's members "are targeted and harmed by the birthright citizenship ban," as expectant parents without permanent lawful status. *Id.* at ¶ 11. AFBT's reallocation of resources to assist these and similarly situated members is directly tied to the birthright citizenship ban and a favorable judgment would allow AFBT to redirect resources to its core services.

It is consistent with the foregoing that Plaintiff NYIC has associational or representational standing to challenge the birthright citizenship EO because a number of its constituent member organizations and their own members will suffer harm.[8]

---

[8] Although NYIC need not also show organizational standing, it has suffered perceptible injury for which it can seek relief. While NYIC is an advocacy organization, it also provides services to immigrants, including free immigration legal services. NYIC Decl. ¶ 8, ECF No. 22. The birthright citizenship ban impacts the legal services NYIC provides, as it changes the risk calculus for non-citizens and "sow[s] confusion" in contradicting the Citizenship Clause's plain text. Jennifer Van Hook et al., *Repealing Birthright Citizenship Would Significantly Increase the Size of the U.S. Unauthorized Population*, Migration Policy Institute (May 2025). This confusion also interferes with NYIC's duty to deliver accurate briefing to its members. NYIC Decl. ¶ 14, ECF No. 45-4. These impacts inhibit NYIC's mission to "transform the lives of all New Yorkers." *Id.* at ¶ 6. This is akin to Plaintiff HOME in *Havens Realty Corp. v. Coleman* an issue-advocacy organization and operator of a housing counseling service. 455 U.S. 363, 368 (1982). Defendant Havens gave HOME's employees false information that interfered with HOME's counseling services. *Havens*, 455 U.S. at 368, 379. The Supreme Court found that "Havens's actions directly affected and interfered with HOME's core business activities" and granted HOME standing. *Food and Drug Admin. v. All. for Hippocratic Medic.*, 602 U.S. 367, 395 (2024).

## V. President Trump Is a Proper Defendant for the Constitutional Claims Asserted Against Him.

Defendants wrongly argue that the President may never be enjoined; in fact, the very case that Defendants rely on says the opposite. *See Franklin v. Massachusetts*, 505 U.S. at 802 ("We have left open the question whether the President might be subject to a judicial injunction . . . [W]e need not decide whether injunctive relief against the President was appropriate[.]"). Where, as here, the constitutionality of the President's actions is challenged, *Franklin* held that courts may review such action. *Id.* at 801. ("[T]he President's actions may still be reviewed for constitutionality[.]"). Indeed, the Supreme Court in *Franklin* found that "the District Court should have evaluated whether injunctive relief against the President was available[.]" *Id.* at 803. Such review would not be proper if it were impossible for the President to ever be subject to a judicial injunction.

Subsequent courts, including this Court, have routinely found that the President is not insulated from appropriate judicial process. *See, e.g.*, *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 302 F.Supp.3d 541, 577–78 (S.D.N.Y. 2018) ("Defendants suggest that we categorically lack authority to enjoin the President, a proposition we do not accept."); *Clinton v. Jones*, 520 U.S. 681, 703 (1997) ("[T]he President is subject to judicial process in appropriate circumstances."); *NTEU v. Nixon*, 492 F.2d 587, 609 (D.C. Cir. 1974) (finding there is "no immunity established under any case known to this Court [that] bars every

suit against the President for injunctive, declaratory or mandamus relief"). Finally, Plaintiffs do not name the President in Claims III and IV because he is not subject to those statutory claims and instead have only named him as a proper defendant for violations of constitutional clauses.

## VI.    **This Court Need Not Dismiss, Transfer, or Stay This Action.**

The Court should permit this case to proceed parallel to related cases, as Defendants' "first-to-file" argument fails and a stay, transfer, or dismissal is wholly inappropriate. Plaintiffs have previously addressed many of the arguments Defendants reargue here. *See generally* Pls.' Opp. Defs.' Mot. Stay, ECF No. 35.

Plaintiffs incorporate those arguments here and make two additional points. First, Defendants contend that this Court should follow the lead of the Ninth Circuit in *Washington v. Trump* and dismiss Plaintiffs' claims based on the "first-to-file" rule. Defs.' Br. 20, ECF No. 70. Defendants conveniently ignore the birthright citizenship cases that have proceeded despite the issuance of nationwide classes in other courts. *See, e.g.*, *Casa v. Trump*, No. CV DLB-25-201, 2025 WL 1952521, *6 (D. Md. July 16, 2025) (issuing an indicative ruling in favor of a nationwide class preliminary injunction nearly one week after the court in *Barbara v. Trump* granted a preliminary injunction and provisional class certification).

Second, where issues of national importance are at stake, as they are here, this Court should reject Defendants' first-to-file argument. [9] The Supreme Court has stressed that issues percolating in district courts are necessary to aid the high Court in reaching decisions that impact the entire nation. *Trump v. CASA*, 606 U.S. 831, 876 (2025) ("One of this Court's roles, in justiciable cases, is to the resolve major legal questions of national importance and ensure uniformity of federal law.") (Kavanaugh, J., concurring). And as Justice Gorsuch has noted, a preferable system involves "a process that permits the airing of competing views that aids [the Supreme Court's] own decisionmaking process." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Further, Defendants continue to contest the very protections that they claim warrant a dismissal, transfer, or stay of this action. Defendants have appealed the

---

[9] The cases Defendants rely on are inapposite. Those cases are highly fact-based and far removed from cases challenging government policies with widespread impact. *See, e.g.*, *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (applying the first-to-file doctrine where the same parties were in front of two courts hearing related actions regarding the payment of promissory notes); *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952) (applying the doctrine to a case where the same parties were involved in related litigation regarding a patent violation).

class-wide preliminary injunctions that they claim protect Plaintiffs. Notice of Appeal, *CASA v. Trump*, No. 8:25-cv-00201-DLB (D. Md. Oct. 3, 2025), ECF No. 141; Notice of Appeal, *Barbara v. Trump*, No. 1:25-cv-244-JL-AJ (Sept. 5, 2025), ECF No. 70. They have also appealed the scope of a nationwide preliminary injunction for states, including the state of New York. Notice of Appeal, *State of New Jersey v. Trump*, No. 1:25-cv-10139-LTS (D. Mass. Sept. 22, 2025), ECF No. 210. As of this filing, and as it was when Plaintiffs filed their Opposition to Defendants' Motion to Stay, courts still have only granted preliminary relief and none have delivered an opinion that binds this Court on the merits. A stay would, therefore, severely prejudice Plaintiffs. Pls.' Opp. to Stay 5, ECF No. 35. And although Defendants have submitted petitions for certiorari in *Trump v. Washington*, No. 25-364, and *Trump v. Barbara*, No. 25-365, the Supreme Court has not yet determined whether it will take up the case. Thus, a stay is inappropriate.

Finally, Plaintiffs have an interest in challenging unconstitutional policies. Plaintiffs' equal protection claims, as previously argued, were not resolved by rulings issued thus far. *See* Pls.' Opp. to Stay 9–10, ECF No. 35 at 9-10. For these reasons, the Court should deny Defendants' request for a stay, transfer, or dismissal based on the "first-to-file" principle.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Dated 9th day of October, 2025

Respectfully submitted,

By: /s/ Francisca D. Fajana
Francisca D. Fajana
Cesar Z. Ruiz
Mariana C. Lopez
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
FFajana@latinojustice.org
CRuiz@latinojustice.org
MLopez@latinojustice.org

27

## **WORD CERTIFICATION**

I hereby certify that this affirmation complies with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 6,634 words.

Dated 9th day of October, 2025

Respectfully submitted,

By: /s/ Mariana C. Lopez
Mariana C. Lopez
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212.319.3360
MLopez@latinojustice.org